UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | |
| | : | **Chapter 11** |
| **USG CORPORATION** | : | |
| **a Delaware corporation, et al.,** | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | **Case No. 01-2094(JKF)** |

------------------------------------------------------x

| | | |
|---|---|---|
| **USG CORPORATION, et al.,** | : | |
| | : | |
| **Movant** | : | |
| | : | |
| **v.** | : | |
| | : | **Civil Action No. 04-1559 (JFC)** |
| **OFFICIAL COMMITTEE OF** | : | **Civil Action No. 04-1560 (JFC)** |
| **ASBESTOS PERSONAL INJURY** | : | |
| **CLAIMANTS, et al.,** | : | **Hearing:     6/13/05   2:00 p.m.** |
| **Respondents.** | : | |
| | : | **RE: D.I. 11 in C.A. No. 04-1560 (JFC)** |

------------------------------------------------------x

**RESPONSE OF THE STATUTORY COMMITTEE OF EQUITY SECURITY
HOLDERS TO THE JOINT STATEMENT OF THE ASBESTOS PERSONAL INJURY
CREDITORS COMMITTEE AND THE LEGAL REPRESENTATIVE FOR FUTURE
ASBESTOS CLAIMANTS REGARDING DISCOVERY IN ADVANCE OF HEARING**

**WEIL, GOTSHAL AND MANGES LLP**

| | | |
|---|---|---|
| Martin J. Bienenstock | David A. Hickerson | Ralph I. Miller |
| Judy G.Z. Liu | M. Jarrad Wright | 200 Crescent Court, |
| John J. Rapisardi | 1501 K Street, N.W. | Suite 300 |
| 767 Fifth Avenue | Suite 100 | Dallas, TX 75201 |
| New York, NY 10153 | Washington, D.C. 20005 | Telephone: (214) 756-7700 |
| Telephone: (212) 310-8000 | Telephone: (202) 682-7000 | Facsimile: (214) 746-7777 |
| Facsimile:  (212) 310-8007 | Facsimile: (202) 857-0940 | |

**MORRIS, NICHOLS, ARSHT & TUNNELL**

| | |
|---|---|
| Robert J. Dehney | 1201 North Market Street, |
| Gregory W. Werkheiser | 18th Floor |
| Daniel B. Butz | P.O. Box 1347 |
| Curtis S. Miller | Wilmington, DE 19899-1347 |
| | Telephone: (302) 658-9200 |
| | Facsimile: (302) 658-3989 |

Proposed Counsel for the Statutory Committee of Equity Security Holders

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ......................................................... 2

    A.    The Governing Standards Relating to Estimation ..................................... 4

        1.    Estimation of Asbestos Personal Injury Claims Requires Consideration of Factors That Have Skewed the Debtors' Claims History. ................................................................ 4

        2.    Federal Procedural Law, and Federal Bankruptcy Law Governs the Claims Estimation Process. ..................................... 7

    B.    The Scope Of Discovery ....................................................... 11

        1.    New Evidence of Suspect Medical Diagnoses Underlying Claims ................................................................... 13

        2.    The Impact of Recent State Law Reform Measures on Asbestos Personal Injury Claims. ................................. 14

## TABLE OF AUTHORITIES

**Page**

### CASES

*Addison v. Langston (In re Brints Cotton Marketing, Inc.),* 737 F.2d, 1338
(5th Cir. 1984)...................................................................................................10

*In re A.H. Robins Co.*, 88 B.R. 742 (E.D. Va. 1988), *aff'd*, 880 F.2d 694,
702 (4th Cir. 1989).............................................................................................7

*A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) ...............................12

*In re Asbestos Prods. Liab. Litig. (No. VI)*, Civil Action No. MDL 875 (E.D.
Pa.)........7, 8

*Avellino v. M. Frenville Co. (In re M. Frenville Co.)*, 744 F.2d 332 (3d
Cir. 1984) ..........................................................................................................9

*Bittner v. Borne Chemical Co.*, 691 F.2d 134 (3d Cir. 1982)..........................6, 7

*Butner v. United States*, 440 U.S. 48 (1979)......................................................9

*In re Eagle-Picher Industries, Inc.*, 189 B.R. 681 (Bankr. S.D. Ohio 1995)......6

*In re: G-I Holdings Inc.*, 2005 WL. 758193 (Bankr. D.N.J. Feb. 1, 2005) .......12

*Grogan v. Garner*, 498 U.S. 279 (1991)............................................................9

*Harold's Automobile Parts, Inc. v. Mangialardi*, No. 2004-IA-01308-SCT
(Sup. Ct. Miss. Aug. 26, 2004) .......................................................................16

*In re Johns-Manville Corp.*, No. 82 B 11656 (Bankr. S.D.N.Y. Oct. 29,
2004.................................................................................................................10

*Owens Corning v. Credit Suisse First Boston*, 322 B.R. 719 (D. Del.
2005) ............................................................................................................5, 8

*Pacitti v Macy's*, 193 F.3d 766 (3rd Cir. 1999) ...............................................12

*Patterson v. Shumate*, 504 U.S. 753 (1992)......................................................9

*Raleigh v. Illinois Department of Revenue*, 530 U.S. 15 (2000) ........................9

*Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156
(1946)................................................................................................................9

# TABLE OF AUTHORITIES

Page

## STATUTES

28 U.S.C. § 157.................................................................................................................12

Fed. R. Civ. P. 26...........................................................................................................12

Miss. Code Ann. § 11-11-3...........................................................................................17

Miss. Code Ann. § 11-1-65............................................................................................17

Ohio H.B. 292, 125th Ohio Gen. Assembly 19-S.B. 15, 79th Leg., Reg. Sess. § 2
      (Tex. 2005).............................................................................................................15

Tex. Civ. Prac. & Rem. Code Ann. § 41.003 ................................................................17

Tex. Civ. Prac. & Rem. Code Ann. § 90.003 ...........................................................15, 16

## REPORTS

Dr. Joseph Gitlin, et al., *Comparison of "B" Readers Interpretations of
      Chest Radiographs for Asbestos Related Changes*, 11 J. Acad. Radiol.
      843 n.8 (2004).......................................................................................................13

## PRELIMINARY STATEMENT

The Statutory Committee of Equity Security Holders (the "Equity Committee") respectfully submits this response to the joint request by the Asbestos Personal Injury Creditors Committee and the Legal Representative for Future Asbestos Claimants (collectively the "Asbestos Claimants") for discovery in advance of the hearing on issues to be considered in estimation (C.A. No. 04-1560: D.I. 11).  On April 21, 2005, the U.S. Trustee appointed the Equity Committee in the chapter 11 cases of USG Corporation ("USG") and its debtor subsidiaries and affiliates (collectively with USG, the "Debtors").  Weil, Gotshal & Manges LLP and Morris, Nichols, Arsht & Tunnell, the undersigned attorneys, have been recently engaged to represent the Equity Committee, pending approval by the United States Bankruptcy Court for the District of Delaware of such engagement.

As set forth below, it is the position of the Equity Committee that it is appropriate for all discovery in the estimation proceeding to commence and proceed concurrently.  The Asbestos Claimants propose to conduct one-sided discovery, whereby only they would be permitted to pursue discovery at this time.  There is no justification for such a discriminatory approach.  Indeed, it is apparent that the Asbestos Claimants seek to procure a ruling in the guise of a discovery dispute that would dictate the result in this estimation proceeding.  Specifically, the Asbestos Claimants seek to confine this Court to an analysis of the Debtors' claims history, with a motive of preventing the Court from considering all of the evidence the Equity Committee and the Debtors will present that proves the prevalence of bogus claims that taint the claims history data, and identifies the changes in state law that render nonmeritorious the bulk of the asbestos

personal injury claims to be estimated.  Additionally, the Asbestos Claimants seek to

prevent the parties and the Court from ever getting a fair sample of actual asbestos

claims.  The Court should not allow the Asbestos Claimants to continue to hide the

evidence that will prove the vast majority of the claims are without merit.  Accordingly,

the Equity Committee requests that the Court enter a scheduling order and allow all

discovery by all parties with respect to estimation to commence at the appropriate time.

Additionally, the Equity Committee submits this response to address the

Asbestos Claimants' mischaracterizations of the relevant case law relating to estimation

proceedings.  As we set forth below, the governing legal standards fully contemplate that

courts conducting estimation proceedings can and should consider a wide range of

evidence.  Moreover, as a result of the commencement of the Debtors' chapter 11 cases,

the asbestos personal injury claims to be estimated will now be resolved in federal courts,

not in state courts, and it is perfectly appropriate for the Court to establish the procedural

and evidentiary criteria by which the asbestos claims will be estimated.  Indeed, the

recent decision in the Owens Corning case, which the Asbestos Claimants

mischaracterize, reflects the court's determination that factors that skewed the debtors'

claim history should be taken into account in the estimation process.  Among the factors

that will need to be evaluated in this context are state procedural devices that will not

apply in the federal courts where these claims will now be resolved, new evidence of

fraudulent medical data that has been submitted in support of claims against asbestos

defendants, as well as recent changes in state laws that curtail the ability of claimants

who have no evidence of physical impairment to file claims.  The Owens Corning court

allowed discovery, heard evidence and relied upon a number of such factors in striking

over $4 billion off the Asbestos Claimants Committees' expert's valuation. The Equity

Holders intend to and are entitled to take discovery on these and other issues in this case.

## DISCUSSION

A.    The Governing Standards Relating to Estimation.

1.    Estimation of Asbestos Personal Injury Claims Requires
Consideration of Factors That Have Skewed the Debtors' Claims
History.

The Asbestos Claimants incorrectly assert that the Court is limited to considering

the Debtors' claims history in reaching an estimation of the asbestos personal injury

claims. See Asbestos Claimants Br. at 1, 5. The case law demonstrates that courts

consider whether the debtors' claims history has been skewed by factors that will not be

replicated in the future. Thus, while the Asbestos Claimants cite the recent decision

issued in the estimation proceeding in the Owens Corning chapter 11 cases, nowhere do

the Asbestos Claimants inform this Court that the claims estimation in that case was not

based upon a simple extrapolation from the debtor's historical claims data. Rather, the

examination of historical claims and litigation history of Owens Corning was merely the

starting point from which the court made adjustments to correct for a number of factors

that otherwise influenced the historical claims data. Accordingly, after discussing the

litigation history, the court stated:

> It does not necessarily follow, however, that it is safe to
> assume that these historical results can properly be
> extrapolated into the future. As the Banks have
> convincingly demonstrated, some of the past results have
> been skewed by factors which can and should be avoided in
> the future. The question to be resolved is the extent to
> which adjustments should be made to historical values to
> account for these probable changes.

*Owens Corning v. Credit Suisse First Boston,* 322 B.R. 719 at 722-723 (D. Del. 2005).[1]

The court then listed a number of historical factors that were unlikely to be repeated in

the future, and should be taken into account in the estimation.  The following are among

the factors the court found unlikely to be repeated, after full discovery and presentation of

testimony at trial:

- Venue-shopping by plaintiffs filing lawsuits in jurisdictions noted for "runaway" jury verdicts;
- Mass-screenings of asbestos related disease "triggering thousands of claims by persons who had never experienced adverse symptoms;"
- Erroneous X-ray interpretations by Suspect B-Readers;
- Over-payment to "Unimpaired" Claimants;
- Group lawsuits in which the "group would include both persons with mesothelioma or other serous diseases, and persons with minimal proof of liability and minimal or no symptoms. In such instances, the presence of the serious cases tended to result in higher verdict or settlements for the unimpaired cases;"
- The inclusion of punitive damage awards which Judge Fullam held to be accorded lower priority under the Bankruptcy Code and which he believed would not be allowed "to deter tortious conduct which ended more than twenty years ago."

*Id.* at 723.

In reaching its estimate in Owens Corning, the court permitted broad

discovery and testimony into all relevant issues concerning estimation.  That approach

emphasizes that in this case, the Court should not prematurely place limitations on

discovery.  Rather, the Court should avail itself of the opportunity to examine all of the

relevant evidence affecting estimation and the proper use of claims history in these cases.

---

[1] In reiteration of this point, the court stated in its April 13, 2005 order, "in short, I have attempted to arrive at an estimate which appropriately reflected the differences between what has already occurred, and what is likely to happen in the future." Owens Corning April 13, 2005 Order at 2.

The Asbestos Claimants also rely heavily on *In re Eagle-Picher*

*Industries, Inc.*, 189 B.R. 681 (Bankr. S.D. Ohio 1995), Asbestos Claimants Br. at 8, in

an attempt to bolster their argument that only the debtors' claims history is relevant.  But

this decision does not hold or suggest that a bankruptcy court estimating future claims

must rigidly extrapolate from pre-bankruptcy settlement values even if the bases for

settling claims have changed.  That issue was not even raised, much less decided, and the

*Eagle-Picher* court simply stated that for estimation purposes the sound approach is to

"*begin* with what is known" about prepetition history.  189 B.R. at 686 (emphasis

added).[2]  Nothing in *Eagle-Picher* would preclude this Court from taking into account

factors that may have skewed the debtors' claims history and would affect the estimation

of the number of future claims likely to be asserted against USG, or the value of those

claims.  In any event, Third Circuit precedent, *Bittner v. Borne Chemical Co.*, 691 F.2d

134 (3d Cir. 1982), empowers this Court to use whatever methods are best suited to

estimating USG's liability.  In *Bittner*, the Third Circuit held that "we are persuaded that

Congress intended the procedure [in conducting an estimation] to be undertaken initially

by the bankruptcy judges, using whatever method is best suited to the contingencies at

---

[2] The Asbestos Claimants also rely on the statement in *Eagle-Picher* that claims should be valued as of "the date of the filing of the petition."  *Id.* at 682.  The bankruptcy court made this statement – unsupported by citation to any authority – in the context of applying a discount rate as of the petition date, rather than the date a trust would actually be established, *id.*, an undisputed point here.  Additionally, the court valued claims "as of the date of filing" because it determined in that case, again without citation to authority, that it would be appropriate to use settlement values "for claims close to the filing date of the bankruptcy case" to project future values.  *Id.* at 691.

issue. The principal consideration must be an accommodation to the underlying purposes of the Code." 691 F.2d at 135.[3]

   2.   Federal Procedural Law, and Federal Bankruptcy Law Governs the Claims Estimation Process.

The asbestos claims subject to estimation in this proceeding will be resolved in the federal system, not in a state court. Accordingly, federal procedures, not state procedures, will apply to proceedings to resolve the asbestos claims. A federal court is entitled to administer proceedings before it – whether they be estimation proceedings or claims resolution proceedings governed by state substantive law – employing those procedures and administrative devices it believes are necessary and appropriate. This is exactly what Judge Weiner has done in the cases pending before him – including diversity cases where state substantive law applies – in the Federal Asbestos Multi District Litigation (the "MDL"), *In re Asbestos Prods. Liab. Litig. (No. VI)*, Civil Action No. MDL 875 at 1 (E.D. Pa.) (imposing those rules and requirements, including dismissing claims, which the court believed were necessary to weed out illegitimate claims.)

In the MDL, all federal asbestos cases are transferred for all pre-trial proceedings to Judge Weiner in the District Court for the Eastern District of

---

[3] The Asbestos Claimants also rely on *In re A.H. Robins Co.*, 88 B.R. 742 (E.D. Va. 1988), *aff'd*, 880 F.2d 694, 702 (4th Cir. 1989), Asbestos Claimants' Br. at 7, which also undermines, rather than supports, their position. In *A.H. Robins*, the district court established a bar date by which all Dalkon Shield claimants had to submit a detailed questionnaire. 880 F.2d at 699. The various experts in that case then performed estimations relying on information contained in those questionnaires. The estimation methodology found to be most credible in *A. H. Robins* did not rely simply on the debtor's claims history, but established basic medical standards designed to eliminate bogus medical claims.

Pennsylvania. Judge Weiner has adopted a mechanism which ensures that only people with actual disease and impairment are compensated by imposing an inactive docket in nonmalignant unimpaired asbestos cases. Under an inactive docket, a court does not consider unimpaired claims and tolls the limitations period, ensuring that if that person does subsequently develop an impairment he or she has preserved the right to sue. Unimpaired claims are not compensated or litigated; a case only becomes "active" if the claimant later becomes impaired. *In re Asbestos Prods. Liab. Litig. (No. VI)*, Civil Action No. MDL 875 at 1 (E.D. Pa. Sept. 8, 1992) (Admin. Order No. 3). Judge Weiner's order required submission of written medical opinions to support claims of an asbestos-related disease. *Id.* Additionally, Judge Weiner subsequently dismissed, without prejudice, claims for which the plaintiffs could not establish an impairment and tolled the statute of limitations for those claims. *In re Asbestos Prods. Liab. Litig. (No. VI)*, Civil Action No. MDL 875 (E.D. Pa. Oct. 16, 1997).

In 2002, Judge Weiner took the further step of dismissing, without prejudice, claims that resulted from mass asbestos screenings.[4] *In re Asbestos Prods. Liab. Litig. (No. VI)*, Civil Action No. MDL 875 at 1-2 (E.D. Pa. Jan. 8, 2002) (Admin. Order No. 8) (the "MDL Order 8"). Judge Weiner administratively dismissed these claims because "the filing of mass screening cases is tantamount to a race to the courthouse and has the effect of depleting funds, some already stretched to the limit, which would otherwise be available for compensation to deserving plaintiffs." MDL

---

[4] As found by Judge Fullam in the Owens Corning case, mass screenings have occurred when "labor unions, attorneys, and other persons with suspect motives caused large numbers of people to undergo X-ray examinations (at no cost), thus triggering thousands of claims by persons who had never experienced adverse symptoms." *Owens Corning*, 322 B.R. at 723.

Order 8 at 2.  The treatment of these mass screening cases – many of which are diversity cases governed by state substantive law – establishes that it is entirely appropriate – indeed, required – to apply federal procedural law to the estimation and resolution of such claims.

While *Raleigh v. Illinois Department of Revenue,* 530 U.S. 15 (2000), *Grogan v. Garner,* 498 U.S. 279 (1991), and *Butner v. United States*, 440 U.S. 48 (1979) hold that applicable nonbankruptcy law (usually state law)[5] governs the validity of claims, the Asbestos Claimants ignore that under section 502(c) of the Bankruptcy Code, the Court must apply federal bankruptcy law "for purposes of allowance." *See Avellino v. M. Frenville Co. (In re M. Frenville Co.),* 744 F.2d 332, 337 & n.8 (3d Cir. 1984). Another Supreme Court case cited by the Asbestos Claimants, Asbestos Claimants' Br. at 5, *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156 (1946), makes this clear:

> In determining what claims are allowable and how a debtor's assets shall be distributed, a bankruptcy court does not apply the law of the state where it sits. . . . [B]ankruptcy courts must administer and enforce the Bankruptcy Act as interpreted by this Court in accordance with authority granted by Congress to determine how and what claims shall be allowed under equitable principles.

*Id.* at 162-63.

*Addison v. Langston (In re Brints Cotton Marketing, Inc.),* cited by the Asbestos Claimants, Asbestos Claimants' Br. at 5, makes the same point:

> [w]hatever the merits under state law of [the creditors'] view *absent bankruptcy*, the creditors' contention

---

[5] Applicable nonbankruptcy law includes both state and federal law, where appropriate. *See, e.g., Patterson v. Shumate*, 504 U.S. 753, 758 (1992).

> overlooks that, while state law ordinarily determines what
> claims of creditors are valid and subsisting obligations, a
> bankruptcy court is entitled … to determine how and what
> claims are allowable for bankruptcy purposes, in order to
> accomplish the statutory purpose of advancing a ratable
> distribution of assets among the creditors.

737 F.2d, 1338, 1341 (5th Cir. 1984) (emphasis added).  These cases establish that

federal bankruptcy law applies to determine which claims are allowable and the treatment

to which they are entitled.

    In this case, it is likely that virtually all of the asbestos claims will be

resolved in a federal bankruptcy trust under this Court's supervision.  Accordingly, it is

entirely appropriate for this Court to consider how much money would be required to pay

allowable, legitimate claims under responsible trust rules, and to fashion such procedures

as the Court deems necessary to weed out illegitimate or unmeritorious claims.[6]  This

common sense approach is consistent with Judge Wolin's Order in this case which stated

"in an asbestos bankruptcy, the Court will, within the constraints of the law, reject

unsubstantiated claims, bogus medical evidence and fanciful theories of causation.  The

Court will protect those who have been truly harmed."  (February 19, 2003 Order at 4).

The court in Owens Corning issued a similar pre-trial ruling, stating:

> It bears emphasis that the task is to determine what amount
> of money will be necessary, and sufficient, to cover Owens

---

[6] This is the same approach that has recently been adopted by the Manville Trust through amendments to the trust distribution procedures (TDP).  The Manville Trust implemented new medical criteria for impairment and now regulates the proof required for impairment. The new Manville TDP exclude the claims from unreliable mass screening firms by requiring physical examinations by the same physicians that make the diagnosis of asbestos related disease.  The result has been a decline by over 80% in the number of claims filed.  *See* Letter of Rober Falise, Chairman and Managing Trustee of Johns Manville Personal Injury Trust to Hon. Jack Weinstein and Hon. Burton Lifland, filed in *In re Johns-Manville Corp.*, No. 82 B 11656 (Bankr. S.D.N.Y. Oct. 29, 2004).

> Corning's liability to claimants in the real world in which
> such claims will be resolved [and] to structure a program of
> payments which, to the extent possible, ***recognizes only
> legitimate claims,*** and accords priority to the claims of all
> creditors.

Memorandum and Order, dated November 22, 2004 (emphasis added). (Attached hereto
as Exhibit A.)

In this regard, it is noteworthy that the Debtors assert that they intend to
present evidence that "certain categories of claimants have sustained no compensable
harm or, based on their alleged asbestos exposures, likely cannot establish that U.S.
Gypsum's products are responsible for any claimed injuries." Debtors' Br. at 2.
Additionally, it cannot be denied that given the realities surrounding asbestos claims
litigation, asbestos defendants have settled large numbers of unmeritorious consolidated
claims to avoid being overwhelmed with administrative and litigation costs. It is
therefore important to determine the extent to which historically USG settled
unmeritorious claims when confronted with mass consolidations of asbestos cases.

B.    The Scope Of Discovery.

The Asbestos Claimants' request for one-sided discovery should be
denied. Rather, comprehensive mutual discovery is appropriate in this case in order to
allow the Court to consider all of the evidence the Equity Committee and the Debtors
intend to offer proving that the Debtors' claims history is infected with bogus claims.
Indeed, at this early stage of this estimation proceeding, and before any discovery has
been conducted, the need for an examination of factors that have skewed these Debtors'
claims history, and of significant differences in procedures – as well as reforms in state
laws – that will dramatically impact the way claims will be treated is apparent. The

Court should reject the Asbestos Claimants' attempt to prevent an inquiry into these areas that is vital to an accurate estimate.

The Court's authority to estimate the asbestos claims includes the authority to order discovery in connection with the estimation process. The Court is within its power pursuant to 28 U.S.C. § 157 to estimate claims for purposes of allowance in the interests of plan confirmation. *See, A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1012 (4th Cir. 1986). Because the reference has been withdrawn with respect to estimation in this case, this Court has direct authority to allow claims, establish requirements for asserting claims, and to order discovery of classes of claims. Additionally, given that the current estimation proceeding is a contested matter, Bankruptcy Rule 9014 incorporates Fed. R. Civ. P. 26, which allows broad discovery. *E.g., Pacitti v Macy's*, 193 F.3d 766, 778 (3rd Cir. 1999) ("It is well recognized that the federal rules allow broad and liberal discovery.") In the G-I Holdings case, the court recently ordered that mutual discovery would commence, including discovery with respect to unimpaired claimants. *In re: G-I Holdings Inc.* 2005 WL 758193 at 35-36 (Bankr. D.N.J. Feb. 1, 2005).

Furthermore, while the Debtors have not yet moved for the imposition of a bar date for asbestos personal injury claims, the Debtors have an absolute right to a bar date pursuant to Bankruptcy Rule 3003(c)(3).[7] Bankruptcy Rule 3003(c)(3) further requires that all claimants with disputed claims file an official proof of claim form with supporting documentation to be eligible to participate in distributions from the debtor's

---

[7] Bankruptcy Rule 3003(c)(3) states that "the court *shall* fix and for cause shown may extend the time within which proofs of claim or interest may be filed." (Emphasis added).

estate. Bankruptcy Rule 3003(c)(2). With this context in mind, it is obvious that Congress intended for those contemplating objections to a claim to have access to information concerning that claim. The Equity Committee should not be penalized for proceeding with discovery in the absence of a bar date. The discovery for the estimation proceeding would only be a small fraction of the supporting documentation and other information that claimants would otherwise be required to supply with their claims forms if there were a bar date. In fact, the Debtors have only requested data for a small sample of the asbestos claims to conduct a statistical study, rather than commencing a court-established bar date procedure.

    1.   New Evidence of Suspect Medical Diagnoses Underlying Claims.

One example of the type of discovery that will be needed is the effect on the Debtors' claims history of the filing of asbestos personal injury claims that are not supported by legitimate medical evidence. Since the time that USG commenced these chapter 11 cases, new evidence has surfaced which casts very serious doubts on the validity of the medical evidence submitted to support claims of asbestosis for thousands of claimants against numerous asbestos defendants. This evidence includes a recently-published study conducted at Johns Hopkins Medical Institutions. In that independent, blinded, peer reviewed study by Dr. Joseph Gitlin, et al., *Comparison of "B" Readers Interpretations of Chest Radiographs for Asbestos Related Changes*, 11 J. Acad. Radiol. 843 n.8 (2004) (the "Johns Hopkins Study"), the Johns Hopkins team found significant overreading of nonmalignant asbestosis in a sample of X-rays which had previously been reviewed by doctors retained by plaintiffs' attorneys. Significantly, the Johns Hopkins Study discovered that only 4.5% of the claims were positive for asbestos related disease,

even though the plaintiff's lawyer-selected doctors had interpreted 96% of the cases as positive.

Additionally, evidence from the recent Owens Corning trial revealed that a handful of doctors whose medical reviews were questionable accounted for the majority of the claims filed against Owens Corning. Moreover, the New York Times has recently reported that the U.S. Attorney for the Southern District of New York has opened a grand jury investigation into the practices of certain doctors who were simultaneously diagnosing people with silica and asbestos related disease. (Attached hereto as Exhibit B.) Evidence of substantial numbers of inaccurate diagnoses of asbestos related disease, resulting in payment of large numbers of nonmeritorious claims in USG's claims history, would have a considerable impact upon this estimation proceeding.[8] As Judge Wolin noted earlier in this case, such bogus claims should be rejected and disallowed to protect those who would be truly harmed. (February 19, 2003 Order at 4.)

2.   The Impact of Recent State Law Reform Measures on Asbestos Personal Injury Claims.

It cannot be seriously disputed that recent State law reform measures which significantly curtail the past practices of the asbestos bar of filing huge numbers of claims where the claimants have no evidence of any physical impairment will require modifications to the Debtors' claims history data. The impact of these state law reforms will have an enormous impact on weeding out nonmeritorious claims. As an example,

---

[8] Data on distorted medical diagnoses is just one illustration of the type of discovery that is essential for a rational analysis. Additionally, discovery will be needed to quantify the appropriate adjustments for aging of the claimant population, correction of anomalous filing patterns, absence of product identification evidence, allocation of incomplete claims files to appropriate disease categories, and other factors.

one asbestos defendant, Georgia-Pacific Corporation, reported in its 10-Q for the first

quarter of 2005 that "[d]uring the first quarter of 2005, the number of new asbestos

claims filed against us declined sharply from the same period in 2004, due in part to the

effect of tort reform legislation enacted in Mississippi and Texas and recent decisions of

the Mississippi Supreme Court relating to venue and jurisdiction." Georgia-Pacific

Corporation 10-Q for the Quarterly Period ended on April 2, 2005 at 20.

      Ohio was once among the leading states for asbestos lawsuits. Notably,

however, last year Ohio enacted a statute which denies unimpaired claimants any

compensation. *See* Ohio H.B. 292, 125th Ohio Gen. Assemb. 19-20 (2004). This statute

also effectively bans mass-screening, by requiring that evidence supporting an asbestos-

related impairment must be made by a treating physician who has or had a doctor-patient

relationship with the claimant. *Id.* The new statute also prohibits the use of medical

reports from doctors who spend more than 25% of their professional practice time

providing consulting or expert service in connection with actual or potential tort actions.

*Id.*

      Texas, another state historically responsible for a large percentage of

asbestos filings, last week enacted similar reforms. The new Texas law establishes

medical criteria differentiating between individuals with nonmalignant asbestos-related

disease with and without "functional impairment." S.B. 15, 79th Leg., Reg. Sess. § 2

(Tex. 2005) (to be codified at Tex. Civ. Prac. & Rem. Code Ann. § 90.003). In claims

involving individuals with no functional impairment, defendants now may file a motion

to dismiss if claimants do not provide proof of impairment. *Id.* Moreover, the new

statute prohibits the massive joinder of claims that have often overwhelmed defendants

by requiring that all parties must agree to joinder of claims relating to more than one exposed person for a single trial. *Id.* The new Texas statute is a significant change in law from the historical manner in which asbestos litigation has progressed in a state that has long been responsible for a substantial amount of the asbestos litigation nationwide. Indeed, the Texas and Ohio statutes requiring proof of impairment are not alone, but rather are part of a national trend.[9] Any estimation of USG's asbestos liability without discovery and argument regarding the impact of such statutes would deny the Court the opportunity to consider the current reality of asbestos litigation.

Other states have seen judicial reforms that eliminate mass-consolidations arising from the joinder of numerous out-of-state claims to a few in-state claims. In Mississippi, another of the highest-volume jurisdictions, the state Supreme Court recently addressed a case involving the joinder of 264 plaintiffs suing 137 named defendants. Approximately 220 of the plaintiffs claiming asbestos exposure (at approximately 600 workplaces) were unable to identify any in-state employment or injury. The Mississippi Supreme Court ordered the severance of the cases, calling the joinder a "perversion of the legal system." *Harold's Auto Parts, Inc. v. Mangialardi*, No. 2004-IA-01308-SCT (Sup. Ct. Miss. Aug. 26, 2004). Additionally, Mississippi passed legislation in 2004 that requires each plaintiff in a multi-plaintiff case to establish venue independently, which will curtail the practice of joining a group of improperly venued plaintiffs to one properly

---

[9] Similarly, in recent weeks, both Florida and Georgia have passed and enacted, respectively, statutes which prohibit a party from bringing a civil action for damages related to asbestos exposure in nonmalignant cases in the absence of "prima facie evidence of physical impairment" resulting from a medical condition for which exposure to asbestos was a substantial contributing factor.

venued plaintiff. Miss. Code Ann. § 11-11-3.[10] As with new laws requiring proof of

impairment, discovery into the impact of such legislative changes in joinder and venue in

jurisdictions which have historically driven asbestos litigation will be extremely

important for purposes of estimation.

## CONCLUSION

For the reasons set forth herein the Court should deny the Asbestos

Claimants' request for one-sided discovery, and establish a scheduling order that allows

for discovery by all parties to commence and proceed concurrently.


Date: May 26, 2005                              Respectfully submitted,

**MORRIS, NICHOLS, ARSHT &
TUNNELL**

Robert J. Dehney (No. 3578)
Gregory W. Werkheiser (No. 3553)
Daniel B. Butz (No. 4227)
Curtis S. Miller (No. 6258)
1201 North Market Street,
18th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

---

[10] Both Texas and Mississippi have enacted other important statutes which change how cases are litigated. For example, Mississippi has placed much lower caps on punitive damage awards than had previously existed. Miss. Code Ann. § 11-1-65. Texas has amended its law to limit punitive damages to cases where the jury was unanimous in imposing them. Tex. Civ. Prac. & Rem. Code Ann. § 41.003.

**WEIL, GOTSHAL & MANGES LLP**

Martin J. Bienenstock
Judy G.Z. Liu
John J. Rapisardi
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

-and-

David A. Hickerson
M. Jarrad Wright
1501 K Street, N.W., Suite 100
Washington, D.C. 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

-and-

Ralph I. Miller
200 Crescent Court, Suite 300
Dallas, TX 75201
Telephone: (214) 756-7700
Facsimile: (214) 746-7777

Proposed Counsel for the Statutory
Committee of Equity Security Holders