**8**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

In re:

THE BABCOCK & WILCOX COMPANY, et al.,

DEBTOR(S)

CIVIL ACTION

No.: 00-0558
Bankruptcy Case
No.: 00-10992

SECTION: "R" (5)

### DEBTORS' JOINT MOTION FOR ENTRY OF A CASE MANAGEMENT ORDER(S) RESPECTING PROCEDURES GOVERNING THE DEBTORS' FIRST OMNIBUS OBJECTIONS TO ASBESTOS RELATED CLAIMS

## I.    INTRODUCTION

Contemporaneous with this motion, the Debtors have filed their first omnibus objections to asbestos personal injury claims and asbestos property damages claims (the "First Omnibus Objections").

The Debtors have taken this action at this juncture in order to facilitate the proceedings for confirmation of a plan that are before the Bankruptcy Court. In particular, on May 7, 2002, the Debtors filed their Amended Plan which sets forth a fully developed and articulated structure for the Debtors' emergence from Chapter 11 and payment in full of all asbestos claims before the Debtors' equity holder receives any value. One of the central premises of the Amended Plan is that the allowance of putative asbestos claims for both personal injury and property damages will be deferred until after confirmation.

On May 8, 2002 the Bankruptcy Court elected to terminate the Debtors' exclusive right to file a plan and directed the Asbestos Claimants Committee ("ACC") and Future Claimants Representative ("FCR") to file any competing plan within 60 days. The Debtors expect that an ACC/FCR Plan will be predicated upon the proposition that the Debtors' asbestos liability renders the Debtors insolvent. In order for a Court to rule on that proposition, the Bankruptcy

USG B 0109

Fee_____
Process_____
X  Dktd _____
___ CtRmDep_____
Dec.No. _____

Court or District Court will, of necessity prior to confirmation, have to address the key defenses of the Debtors as to their actual liability for asbestos claims. Such an inquiry is required, in particular, by the "fair and equitable" principle imbedded in Section 1129(b) of the Bankruptcy Code which precludes, without the consent of the Debtors' equity holder, funding a trust for payment of asbestos claims whose value exceeds the value of such claims.

Accordingly, the Debtors have filed the First Omnibus Objections so as to place before the Courts the issue of how best to address their defenses to asbestos liability, and in order to assure that the liability issue is addressed in connection with any confirmation proceedings. The purpose of this motion is to seek the direction of the Courts on how to proceed with the First Omnibus Objections.

Direction from the Courts on the Debtors' omnibus objections to asbestos personal injury claims is particularly timely. Since the beginning of this case, the fundamental issue has been the determination of the Debtors' liability for asbestos personal injury claims. As discussed in Section III below, the Debtors have proposed three alternative approaches for resolution of their putative asbestos liability as set forth in the: (1) the Proposed Litigation Protocol, filed before the District Court on October 18, 2001 and subsequent related filings ("Litigation Protocol"); (2) the Debtors' Memorandum on Estimation and Application of Estimation Procedures to These Cases, filed before the District Court on February 28, 2002 (the "Estimation Brief"); and (3) Debtors' Amended Plan of Reorganization as of May 7, 2002 filed with the Bankruptcy Court (the "Amended Plan"). In summary, these three alternative approaches contemplate the following:

*First*, as proposed in the Litigation Protocol, after examining the asbestos personal injury claims filed by the July 30, 2001 Bar Date set by the District Court, the Debtors have

USG B 0110

identified several categories of objections to asbestos personal injury claims. These objections are classified under the three general categories of (1) facially deficient proofs of claims (such as duplicate claims); (2) claims for which B&W cannot be liable under the law because, for instance, there is no evidence that a B&W boiler caused the claimant's injury or because the claim is barred by such defenses as the statute of repose; and (3) claims in which the medical evidence set forth is not sufficient to sustain a claim against B&W under principles of science or law. Under the Litigation Protocol, Debtors propose that they file objections to certain exemplar claims in whatever order the District Court sets forth. If the Debtors are successful on the exemplar claim objections, the Debtors will then file omnibus objections for similarly situated claims, thus providing each claimant the opportunity for full notice and hearing.

*Second*, the Debtors submitted their Estimation Brief in response to the District Court's request that the parties submit further briefing on estimation, and specifically, what purpose estimation would serve, what statutory and legal bases exist for estimation, and whether or not there is any method to combine the proposed Litigation Protocol with an estimation proceeding. In the Estimation Brief, the Debtors demonstrated that the tool of "estimation" requires, in the first instance, a finding as to the Debtors' underlying liability on account of putative asbestos claims, and the validity of the Debtors' core defenses to such liability. That examination is governed by the Bankruptcy Code, the Federal and Bankruptcy Rules of Procedure, and the Federal Rules of Evidence. Further, in response to the District Court's request, the Debtors proposed a hybrid procedure consistent with the Bankruptcy Code and Rules. That procedure contemplates a balance between on the one hand, immediate prosecution of omnibus objections to the allowance

USG B 0111

of claims where the relevant legal and factual issues are apparent from the face of the proof of claim itself, and, on the other hand, application of estimation in connection with categories of the Debtors' putative asbestos liability that may raise evidentiary issues outside the proof of claim, but are governed by resolution of certain legal issues that will have a broad reach. Thus, the Debtors would provide for the resolution by omnibus objection of claims such as those that are facially deficient or fail to even allege any connection between an asserted injury and B&W, which are straightforward to litigate and have potential impact on as many as 150,000 claimants. Concurrently, the District Court could hold proceedings pursuant to the Federal Rules of Evidence, including *Daubert* rulings and independent scientific panel findings, that would address issues common to large numbers of claims as to which such evidentiary proceedings are applicable. Based on these proceedings, and in light of its findings, the District Court could then seek to estimate the amount of the Debtors' asbestos personal injury liability.

*Third*, the Debtors submitted the Amended Plan. The Amended Plan envisions the creation of an asbestos personal injury trust that will process objections to the claims pursuant to court-approved trust distribution procedures, which track the liability filters set forth in the Litigation Protocol. Under the approach embedded in the Amended Plan, and unlike the approach contemplated by either the Litigation Protocol or Estimation Brief, the Courts would not need to address the Debtors' objections to their liability for particular claims prior to confirmation, and would not need to value the Debtors' asbestos liability for purposes of applying the "fair and equitable" principle and sizing the Debtors' funding of a trust dedicated to paying asbestos claims. Rather the Court would

4

only be required to approve, as part of the confirmation order, the trust distribution procedures set forth in the Amended Plan.

Ultimately, the approach that the District Court chooses for resolving the Debtors' objections to its asbestos personal injury claims will govern the form and manner of the Debtors' evidentiary support to the omnibus objections as well as the manner and timing of hearing those objections. The Debtors, therefore, respectfully request that the Courts hold a hearing to instruct the Debtors as to how they should proceed with the omnibus objections.

## II.    PRELIMINARY JURISDICTIONAL ISSUE

This motion to the District Court and Bankruptcy Court for a case management order or orders respecting procedures governing the Debtors' First Omnibus Objections is made jointly before both Courts because the Debtors believe that the subject matter of the motion may affect matters for which the District Court has not withdrawn the reference. In particular, on April 17, 2000, the District Court granted the Debtors' request to withdraw the reference as to certain asbestos related claims. *See Order and Reasons re Debtors' Motion for Partial Withdrawal of the Reference with Respect to the Resolution of Personal-Injury Tort Claims* ("Withdrawal of Reference Order").   It appears from the language of that order that the scope of the withdrawal of reference only covered asbestos personal injury claims. Notwithstanding this fact, the District Court's subsequent bar date orders applied to both asbestos personal injury claims and asbestos property damages claims, as well as certain other claims against the Debtors. While the Debtors believe that the asbestos personal injury claims are most economically handled by the District Court, the Debtors believe that the asbestos property damages claims can better be handled by the Bankruptcy Court and are the type of claim typically viewed as within the province and expertise of the Bankruptcy Court. In particular, because the number of asbestos property

USG B 0113

damages claims is small and the Bankruptcy Court has jurisdiction to render final rulings with respect to those claims, the Debtors recommend that their proposed procedures set forth herein for addressing objections to the asbestos property damages claims be adopted by, and proceed before, the Bankruptcy Court.

### III.    OVERVIEW OF CLAIMS PROCEDURES TO DATE

B&W filed for protection under Chapter 11 of the Bankruptcy Code in response to the increasingly apparent inadequacies of the tort system to provide a reasonable vehicle for meeting the challenges posed by escalating asbestos-related claims. While B&W had successfully settled most claims using insurance proceeds for years prior to the bankruptcy filings, sharply escalating demands for, and costs of, settlement of claims culminated in the Debtors' filing for Chapter 11 relief on February 22, 2000 as the only means of squarely meeting the growing number and size of asbestos claims lodged against them.

### A.    Withdrawal of Reference

Concurrently with the filing of the voluntary petition, the Debtors filed a Motion for Partial Withdrawal of the Reference with Respect to Resolution of Personal Injury Tort Claims as to certain issues related to the determination of the asbestos liability because existing law indicated that the Bankruptcy Court did not have the jurisdiction to address personal injury claims.

The District Court, after hearing, entered the Withdrawal of Reference Order on April 17, 2000, and withdrew the reference as to the following matters:  (1) motions to set a bar date; (2) motions related to procedure for notifying claimants; (3) motions regarding forms of proof of claims; and (4) motions for summary judgment on threshold liability together with all scheduling and discovery matters relating thereto.   The Withdrawal of Reference Order specifically withdraws the reference for asbestos personal injury claims only.

USG B 0114

**B.    Establishment of Bar Dates**

On June 1, 2000, the Debtors filed a motion with the District Court seeking to establish a bar date for certain types of claims. After extensive briefing by the ACC and a hearing, the District Court entered an order establishing July 30, 2001 as a bar date as to the following claims: (1) asbestos personal injury claims; (2) asbestos property damages claims; (3) derivative asbestos claims; and (4) Apollo/Parks Township Radiation Claims. The District Court deferred to the Bankruptcy Court as to the bar date for those asbestos claims that were allegedly settled before the Petition Date ("Settled Claims") and the Bankruptcy Court established March 29, 2001 as the bar date for such Settled Claims.

**C.    Specified Proof of Claim Form**

In connection with the July 30, 2001 bar date, the District Court approved a detailed, questionnaire-type form, specifically tailored for asbestos personal injury claimants and a streamlined form containing slight modifications to the Official Form 10, for all other claimants subject to the bar date, with a special supplement for Apollo/Parks Township claimants. *Order Regarding Debtors' Motion for Entry of an Order Establishing A Bar Date; Approving the Proof of Claim Forms; and Approving the Form and Manner of Notice* (dated October 30, 2000). The specialized proof of claim forms were designed to minimize the need for discovery and required claimants to set forth the basic legal elements and facts to support their claims.

**D.    Results of the Notice Procedure**

In connection with the Bar Date, the Debtors engaged in a massive, court-approved noticing campaign. In addition to providing notice to known claimants, the Debtors, with the aid of a legal notice expert, effected publication notice broadly to unknown claimants in the United States and overseas by using several different media such as newspapers, magazines, trade publications, television (network and cable) and the internet.

USG B 0115

As a result of the Debtors' court approved efforts, the Debtors received the following proof of claims: (i) over 220,000 claims alleging asbestos personal injury damages; (ii) approximately 60,000 related party proof of claims; (iii) approximately 200 asbestos property damages claims; (iv) over 49,000 purportedly Settled Claims; and (v) approximately 570 Apollo/Parks Township Claims.

## IV.     RELIEF REQUESTED

**A.      The Debtors' Proposals and Recommendation for Resolution of Asbestos Personal Injury Claims**

### 1.     *The Litigation Protocol*

In an effort to provide a manageable but comprehensive process for resolving the multitude of asbestos personal injury claims, on October 18, 2001, the Debtors filed, with the District Court, the Litigation Protocol for resolution of these claims. In the Litigation Protocol and subsequent filings,[1] which are still under advisement, the Debtors proposed specific procedures that will enable the District Court to rule on the ultimate question of allowance or disallowance of a substantial majority of the asbestos personal injury claims. The Debtors continue to believe that the best and most efficient procedure for determining these threshold liability issues for all purposes in these Cases is as previously outlined in B&W's Litigation Protocol.

The Litigation Protocol is modeled on the Settled Claims omnibus objection procedure, which has been extremely successful in the Bankruptcy Court. In resolving the Settled Claims, the Bankruptcy Court adopted the "categorical approach," under which B&W files objections to certain exemplar claims fitting within certain categories, followed by an omnibus objection for

---

[1] *See also B&W's Supplemental Brief in Further Support of Its Proposed Litigation Protocol*, filed on January 7, 2002.

USG B 0116

similarly situated claims within that same category. This process is still ongoing, but to date, B&W has efficiently and fairly resolved more than 37,000 out of 49,000 of the alleged Settled Claims, with the Debtors agreeing to allow approximately 8,500 claims, and the Bankruptcy Court disallowing over 29,000 claims as Settled Claims -- thousands of which were voluntarily withdrawn by claimants following hearings on similarly situated "exemplar" claims. In essence, the Debtors envision that claims resolutions as set forth in the Litigation Protocol would follow these steps:

Step 1: The Court sets a schedule of which category of objections it will hear in what order and establishes time frames for hearings and filings of the appropriate pleadings.

Step 2: The Court rules on exemplar objections in each category.

Step 3: After the ruling on exemplar objections, the Debtors file omnibus objections to the particular category. If necessary, the Debtors file summary judgment motions in support of the omnibus objections and/or seek common-issue trials pursuant to omnibus objections and court rulings in full compliance with due process, the Bankruptcy Code, the Bankruptcy Rules, the Federal Rules of Civil Procedure and the Federal Rules of Evidence. If the initial liability filters as set forth in the Litigation Protocol are applied, the Debtors believe that the majority of submitted claims will be disallowed on a reasonably prompt basis and well in advance of any confirmation hearings on the Plan.

2. *The Estimation Process*

Alternatively, in their Estimation Brief and at the District Court's request, the Debtors proposed a hybrid procedure, taking into account estimation proceedings. The District Court has taken this proposal under advisement as well. The Debtors envision that claims resolution as set forth in the Estimation Brief would follow these steps:

USG B 0117

Step 1:  The Debtors will notice for hearing objections to exemplar claims in those categories where the Debtors believe that a ruling can occur without much evidentiary debate because the substance of the objection is apparent from the face of the claim form itself.  Those categories would include (i) claims which fail to satisfy even the minimum standards of proof of claim contemplated by the District Court's August 25, 2000 Bar Date Order (such as duplicate claims, paid claims, employee claims and claims that fail to set forth even rudimentary facts supporting a cause of action including medical information, medical records or exposure or work site data); and (ii) claims that should be disallowed based on information directly set forth in the claim form (including claims that allege exposure where no B&W boiler was present and claims subject to such defenses as the government contractor defense, the statute of repose defense and failure to show impairment).

Step 2:  After ruling on the exemplar objections, the Debtors will notice for hearing omnibus objections to those similarly situated claimants.

Step 3:  Concurrently with Steps 1 or 2, or after, the Court would proceed with resolving key evidentiary issues that will ultimately affect other broad categories of claims.  Such issues include determination of minimal evidentiary standards for establishing occupational exposure, diagnosis of an asbestos related disease, exposure to a B&W boiler, and issues related to B&W's conduct.

Step 4:  Following resolution of steps 1-3, the Court may conduct estimation hearings based on a realistic population of viable asbestos personal injury claims.

**3.    *The Amended Plan***

As noted above, the Debtors believe that the fairest and best method for addressing their putative asbestos liability is through application of the Litigation Protocol because that mechanism would provide certainty as to the Debtors' liability and the ultimate rights of the

USG B 0118

various creditors and equity constituencies in these cases. Nevertheless the Debtors have been mindful of the Courts' concern that the approach contemplated by the Litigation Protocol could impose a burden on the Courts' dockets. Accordingly, in an effort to accommodate that concern the Debtors set forth in the Amended Plan an approach which would not require valuation of the Debtors asbestos liability prior to confirmation. Thus, the Amended Plan fully puts all of the Debtors' equity at risk to satisfy all claims in full before the Debtors' equity holder can realize any value on account of that equity. This is done by interposing a new entity between the Debtors and their shareholder that would be responsible for channeling all of the Debtors' available assets, including insurance rights, to the payment of asbestos and other claims treated under the Amended Plan. Accordingly, if the approach to claims allowance set forth in the Amended Plan is adopted, the District Court would not engage in either the objection process contemplated by the Litigation Protocol or the hybrid process contemplated by the Estimation Brief. Rather confirmation of the Amended Plan would only require that the trust distribution procedures set forth in the Amended Plan be approved.

4.    *The ACC/FCR Plan*

The procedures that will address the Debtors' putative asbestos liability, however, may also be affected by a plan that the Debtors' expect the ACC and FCR to file on or about July 9, 2002 as a result of the Bankruptcy Court's decisions to terminate the Debtors' exclusive right to file a plan. In particular, the Debtors' expect that an ACC/FCR plan would be predicated on the contention of the FCR and ACC that Debtors' asbestos liability renders the Debtors insolvent. Such an ACC/FCR Plan cannot be confirmed without a finding prior to confirmation as to the value of the liability, which, of course, could only be made after either complete prosecution prior to confirmation of the Debtors' objections to claims consistent with the Litigation Protocol, or through a proper estimation proceeding prior to confirmation that fully complied with the

11                                                          USG B 0119

applicable rules for estimation set forth in the Bankruptcy Code, the Bankruptcy and Federal Rules of Procedure, and the Federal Rules of Evidence.  In the Estimation Brief, the Debtors have explained that the rules of estimation require that in such an estimation proceeding the District Court must make specific findings as to the merits of the Debtors' defenses and the existence of the Debtors' actual liability on account of such claims.[2]

### 5. *Debtors' Recommendation*

The Debtors recommend that the procedures contemplated by the Litigation Protocol offer the best and fairest mechanism for resolving the Debtors' putative liability on account of asbestos personal injury claims, and recommend that the District Court enter a case management order respecting the Debtors' first omnibus objections to such claims consistent with the Litigation Protocol.

### B. Debtors' Proposal for Resolution of Asbestos Property Damage Claims

The Debtors believe that the Withdrawal of Reference Order, by its plain language, did not include asbestos property damage claims, notwithstanding the fact that the District Court did set a bar date for asbestos property damages claims. *See Withdrawal of Reference Order*.  Given the fact that the Bankruptcy Court has the jurisdiction to render final judgments with respect to property damages claims, the Debtors submit that the Bankruptcy Court, which routinely rules on omnibus objections, should be the proper court to resolve these objections.

---

2    The Debtors' omnibus objections filed herewith also have the effect, pursuant to sections 502(a) and 1126(a) of the Bankruptcy Code, of rendering all claims subject to such objections ineligible to vote to accept either the Debtors' Plan or a competing plan unless such claims are temporarily allowed for voting purposes pursuant to Bankruptcy Rule 3018(a).  The debtors would urge the Courts to apply the same procedures for addressing such temporary  allowance as is applied in connection with the final allowance of such claims in accordance with the Debtors' recommendations herein.

USG B 0120

As set forth in the Debtors' First Omnibus Objections to Asbestos Property Damages Claims, the majority of purported asbestos property damages claims submitted are actually asbestos personal injury claims submitted for which a duplicate asbestos personal injury claim was filed. After these claims are disallowed, the Debtors believe that there are fewer than sixty actual asbestos property damage claims that the Bankruptcy Court will need to resolve. As such, the number of claims at issue make the asbestos property damage claims ripe for resolution under customary and straightforward omnibus objection hearing procedures.[3]

### C.    Notice

The Debtors have not served copies of the omnibus objection on individual claimants pending instruction from the Courts on how to proceed with hearings on these objections. The Debtors respectfully request that the Courts direct them on the manner and method of service on the claimants. Specifically, the Debtors propose that at such time as a hearing is set on the omnibus objections, (1) such service be made on the claimant by serving a copy of the objection plus any supporting affidavits relied on by the Debtors at the address of any attorney identified in the proof of claim representing the claimant, or if no such attorney is identified, then at the address of the claimant as shown on the proof of claim; and (2) that the Debtors not be required to serve on each claimant the full list of all claimants subject to the omnibus objection which is the subject of such hearing.

---

[3]    Similar to the asbestos personal injury claims, the Debtors believe that several defenses are available based on the face of the submitted proofs of claims, such as failure to establish a nexus to a B&W boiler or the running of the statute of limitation or repose, which resolution can occur quickly.

USG B 0121

## V.    CONCLUSION

In accordance with the foregoing, the Debtors request that a case management order or orders be entered for proceeding with the omnibus objections to the asbestos personal injury claims and the asbestos property damage claims.  In connection with that request, the Debtors recommend that the District Court enter a case management order for resolution of the asbestos personal injury claims that tracks the proposals set forth in the Debtors' Litigation Protocol. Debtors further request that the Bankruptcy Court enter a case management order for resolution of the asbestos property damage claims by setting the omnibus objection on its calendar for hearing. As to both sets of omnibus objections, the Debtors have withheld either mailing notice to affected claimants, or submitting evidentiary support, but will be prepared to do so pursuant to any case management orders entered by these Courts.  Finally, the Debtors request that in connection with such case management order(s), the Court(s) direct the Debtors as to the appropriate manner and persons upon whom the omnibus objections should be served as set forth herein.

Respectfully submitted,

By:

KIRKLAND & ELLIS


David M. Bernick
John Donley
Theodore L. Freedman
200 E. Randolph Drive
Chicago, Illinois 60601

- and-

14

USG B 0122

HELLER, DRAPER, HAYDEN,
PATRICK & HORN, L.C.C.
Jan M. Hayden (#6672)
William H. Patrick, III (#10359)
Warren Horn (#14380)
Tristan Manthey (#24539)
650 Poydras Street, Suite 2500
New Orleans, LA  70240-6103
Telephone:  504-568-1888
Telephone:  504-522-0949
Co-counsel for Debtors

USG B 0123