13

# *Annotated* MANUAL FOR COMPLEX LITIGATION THIRD

2003

DAVID F. HERR

THOMSON
WEST

USG B 0233

*21.493 Sampling/Opinion Surveys*[257]

Statistical methods may often be useful to estimate, to specified levels of accuracy, the characteristics of a "population" or "universe" of events, transactions, attitudes, or opinions by observing those characteristics in a relatively small segment or "sample" of the population. The use of acceptable sampling techniques, in lieu of discovery and presentation of voluminous data from the entire population, may produce substantial savings in time and expense. In some cases, sampling techniques may provide the only practicable means to collect and present relevant data.[258][102]

The choice of appropriate methods will depend on the purpose to be accomplished. A distinction must be drawn between sampling for the purpose of generating data about a population to be offered for its truth, and sampling in the nature of polling to measure opinions, attitudes, and actions by a population.

In the case of the former, the reliability and validity of estimates about the population derived from sampling are critical. The methods used must conform to generally recognized statistical standards. Relevant factors include whether:
- the population was properly chosen and defined;
- the sample chosen was representative of that population;
- the data gathered were accurately reported; and
- the data were analyzed in accordance with accepted statistical principles.

Laying the foundation for such evidence will ordinarily involve expert testimony and, along with disclosure of the underlying data and documentation, should be taken up by the court well in advance of trial. Even if the court finds deficiencies in the proponent's showing, the court may receive the evidence subject to argument going to its weight and probative value.[259]

Sampling for the purpose of establishing the characteristics of a population must be distinguished from sampling (e.g., opinion polls or surveys) for the purpose of questioning individuals about such matters as their observations, actions, attitudes, beliefs, or motivations. Such sampling is not intended to establish the truth of an objective fact, but rather to provide evidence of public perceptions. The four factors listed above are relevant to assessing the admissibility of a survey, but need to be applied in light of the particular purpose for which the survey is offered. In addition, assessment of the validity of a survey should take into account whether:
- the questions asked were clear and not leading;
- the survey was conducted by qualified persons following proper interview procedures; and
- the process was conducted so as to ensure objectivity (e.g., was the survey conducted in anticipation of litigation and by persons connected with the parties or counsel or aware of its purpose in the litigation?).

---

257. For a more detailed discussion of the use of surveys, see Reference Manual on Scientific Evidence (Federal Judicial Center 1994).

258. For example, in *In re* Shell Oil Refinery, 136 F.R.D. 588 (E.D. La. 1991), a statistical expert profiled the compensatory damage claims of the class members to assist the jury in fixing the amount of punitive damages.

259. *See* E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1292 (9th Cir. 1992); McNeilab, Inc. v. American Home Prods. Corp., 848 F.2d 34, 38 (2d Cir. 1988).

USG B 0234

**21.494**
.49 Special Problems

**21. Pretrial Procedures**
FJC Text

When sampling or survey evidence is proposed to be offered, parties may want to consider whether details of the proposed sampling or survey methods should not be disclosed to the opposing parties before the work is done (including the specific questions that will be asked, the introductory statements or instructions that will be given, and other controls to be used in the interroga[103]tion process). Objections can then be raised promptly and corrective measures taken before the survey is completed. A meeting of the parties' experts can expedite the resolution of problems affecting admissibility.

Objection is sometimes raised that an opinion survey, although conducted according to generally accepted statistical methods, involves impermissible hearsay. When the purpose of a survey is to show what people believe—but not the truth of what they believe—the results are not hearsay.[260] In the rare situation where an opinion survey involves inadmissible hearsay, experts may nevertheless be allowed to express opinions based on the results of the survey.[261]

*21.494 Extraterritorial Discovery*

Discovery directed at witnesses, documents, or other evidence located outside the United States will often create problems, since many countries view American pretrial discovery as inconsistent with or contrary to their laws, customs, and national interests.[262] The need for evidence located outside the United States should be explored early in the proceedings to allow for the extra time that may be required to obtain it and consider ways to minimize cost and delay, or to develop alternate methods of proof when the evidence cannot be obtained. For example, the parties may achieve substantial savings by paying a willing deponent to come the United States or, if permitted by the laws of the host country, conducting short depositions telephonically.

The following factors may affect whether, to what extent, and in what manner foreign discovery is conducted:

- **Laws of the United States.** The procedures for obtaining evidence from other countries are prescribed by (1) the Federal Rules of Civil Procedure, particularly Rule 28(b) (depositions in a foreign country);[263] (2) statutes, particularly 28 U.S.C. § 1781 (transmittal of letter rogatory or request), § 1783 (subpoena of person in a foreign country), and § 1784 (contempt); and (3) international agreements, particularly the

---

260. *See* Fed. R. Evid. 801(c), 803(3).

261. *See* Fed. R. Evid. 703.

262. In civil law jurisdictions in which the gathering and presentation of evidence is under the control of the courts and not the litigants, taking a deposition may be considered the performance of a judicial act by another sovereign. In addition, many common law jurisdictions disfavor discovery requests directed at obtaining material other than evidence to be presented at trial. *See, e.g.*, Rio Tinto Zinc Corp. v. Westinghouse Elec. Corp., [1978] 1 All E.R. 434 (H.L. 1977); Extraterritorial Discovery in International Litigation 24 (PLI 1984).

263. *See also* Fed. R. Civ. P. 44(a)(2) (authentication of foreign official record). This rule must be read in conjunction with the 1981 Hague Convention Abolishing the Requirements of Legalization for Foreign Public Documents, October 5, 1981 (entered in force for the United States on October 15, 1981), 527 U.N.T.S. 189, T.I.A.S. No. 10072, *reprinted* following the rule; *see also* 28 U.S.C. §§ 1740, 1741, 1745.

USG B 0235