# EXHIBIT 2

# Cooley Godward LLP

ATTORNEYS AT LAW

Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA
94306-2155
Main      650 843-5000
Fax       650 857-0663

www.cooley.com

SCOTT D DEVEREAUX
(650) 843-5152
devereauxsd@cooley.com

Broomfield, CO
720 566-4000
Reston, VA
703 456-8000
San Diego, CA
858 550-6000
San Francisco, CA
415 693-2000

August 4, 2005

Walter Slocombe, Esq.
Nate Finch, Esq.
Caplin & Drysdale, Chartered
399 Park Avenue
New York, NY 10022-4614

Ken Pasquale, Esq.
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

Scott L. Baena, Esq.
Jay Sakalo, Esq.
Bilzin Sumberg Dunn Baena Price & Axelrod LLP
2500 First Union Financial Center
200 S. Biscayne Blvd., Suite 2500
Miami, FL 33131-2336

Jane Parver, Esq.
Andrew A. Kress, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

David Hickerson
Peter Friedman
Weil Gotshal and Manges
1501 K Street NW
Washington, D.C. 20005

**Re:     In re USG - - Debtor's Sampling Plan,
Questionnaire and Deocument Discovery**

Dear Counsel:

Enclosed please find a written description of the method that Debtor's propose for conducting limited discovery from a sample of 1,000 present personal injury claimants. In limiting the sample to 1,000 claimants, Debtor's propose what we believe is a highly efficient way of getting this necessary information. We also attach a draft of the questionnaire that Debtor's propose sending to the 1,000 claimant sample. We have made our best effort to streamline the questions so as to seek only the information that the Court will need to conduct a proper estimation. This document is provided, at this time, in draft form. Further, minor changes in form and content will be made over the next week or so. While counsel for the ACC and FCR have objected to the need to even consider merits evidence in estimation, the Court has indicated that she will, in fact, consider such evidence. In assessing the impact that those scientific, merits arguments will have on the necessary size of a personal injury trust, the Court will need a base of information about those scientific issues from the claimants. As a result, I would urge counsel to set aside their wholesale objections to collecting information from any claimant and, instead, make constructive comments for implementing the proposal.

# Cooley Godward LLP

August 4, 2005
Page Two

Also, in our last telephone conference, the subject of documents that the ACC and FCR intend to seek from the Debtors in discovery was raised. While I have received no discovery requests to date, we understand the documents of interest relate largely to: (1) composition, identification and sales of any asbestos-containing products by Debtors; and (2) the Debtors' experience in the tort system, generally, and participation in the CCR and ACF, specifically. Next week, we are making available for review in Chicago approximately 100 boxes of documents relating primarily to the first category of documents -- asbestos-containing products information. Please make arrangements with me to review these documents as soon as possible so that document review does not cause a delay in our discovery schedule. In addition, we have collected approximately 60-70 boxes relating to category 2 -- tort system experience -- which we are reviewing currently and will produce as we are able over the coming weeks. Please also send me any document requests you believe appropriate to further move this process forward.

Very truly yours,

Scott D. Devereaux
538932 v1/HN

## Summary of Personal Injury Claims Estimation Sampling Plan

Statistical sampling is a method of using established mathematical formulas to validly infer characteristics of an overall population by examining representative "samples," or subgroups, of that population.   Statistical sampling methods are useful when examining the entire population would be impossible, impracticable, or highly inefficient and costly. Here, for example, there were approximately 150,000 claims pending against Debtors at the time they filed their bankruptcy petition. Examining every one of those claimants to determine key characteristics germane to the issues that Debtors expect to raise in this action (e.g., whether or to what degree a claimant was exposed to any of Debtors' products that contained chrysotile asbestos, whether a claimant's radiographic readings and pulmonary functions tests indicate they are impaired by asbestosis), would be costly and unduly time consuming.  By defining a representative sample of claimants and by collecting data from that sample, accurate conclusions can be drawn about the overall claimant population that will assist the Court in evaluating the impact of Debtors' various defenses.

Debtors propose to take discovery from a sample of approximately 1000 present personal injury claimants using a standardized set of written questions.  This discovery will compile key information from this sample, including, without limitation, the claimants' occupational history (including whether the claimant worked in the construction industry), medical history, claimed disease and asbestos litigation history. A copy of Debtors' draft questionnaire is attached as Exhibit A.

In a stratified sampling plan, the overall sample is divided into separate sub-samples taken from subgroups of the population.  From this sample, the parties can draw

-1-

statistically valid conclusions regarding key characteristics of the population as a whole as well as subgroups within that population. Using stratified sampling, valid conclusions regarding the characteristics of subgroups of the claimant population, such as claimants with specific claimed diseases, can be drawn (*e.g.*, what percentage of asbestosis claimants were exposed to a minimum level of chrysotile asbestos necessary to cause asbestosis).

Debtors propose to stratify the overall sample of 1000 into separate sub-samples corresponding to each category of disease claimed (as recorded in the CCR database). Debtors propose to sample 200 mesothelioma claimants, 200 lung cancer claimants, 200 asbestosis claimants, and 200 other cancer claimants. Within each disease category, debtors propose to sample 100 claimants who are identified in the CCR database as having worked in the construction industry and 100 claimants who did not.

To account for the fact that a significant number of claimants in the CCR database failed to report any specific disease, Debtors also propose to include a sub-sample of 200 such claimants. Claimants in the "unknown/unstated" disease category will be allocated to the appropriate disease category once claims forms containing this information are returned by claimant. This claim form information may also be used to calibrate any disease category information imputed to unknown/unstated diseases in the CCR database.

Using a sample size of 200 claimants per disease category will ensure that, within any specific sub-sample, it can be concluded with 95% confidence that any given characteristic of the sampled population will be within 7% of that within the actual population.

Debtors propose to identify claimants to be sampled using a stratified systematic

- 2 -

sample with random start method, further described as follows:

(1)    Each of the approximately 150,000 claimants in the CCR database will be sorted into 10 groups corresponding to the 5 disease categories subdivided by occupational category (*i e* , occupational history in construction or non-construction), with claimants in each group sorted alphabetically by state of residence.

(2)    For each of the 10 disease category/occupational history groups  a sampling ratio $n$ will be determined to produce a total stratum size sample of 100.   (For example, if the stratum size was 20,000, the sampling ratio $n$ would be 200 because by selecting every 200th plaintiff from the stratum, you would end up with a sample of 100).  A sub-sample for each disease/occupational history category will then be constructed by sampling every $n$th individual, beginning with a start selected at random.

(3)    Individual claimants are sampled in this fashion until an overall sample of 1000 is constructed.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| USG CORPORATION, | : | |
| a Delaware corporation, et al., | : | Jointly Administered |
| | : | Case No. 01-2094 (JKF) |
| Debtors. | : | |
| | : | |
| USG CORPORATION, et al., | : | |
| | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| OFFICIAL COMMITTEE OF ASBESTOS PERSONAL | : | Civil Action No. 04-1559 (JFC) |
| INJURY CLAIMANTS, OFFICIAL COMMITTEE OF | : | Civil Action No. 04-1560 (JFC) |
| UNSECURED CREDITORS, OFFICIAL | : | |
| COMMITTEE OF ASBESTOS PROPERTY | : | |
| DAMAGE CLAIMANTS AND LEGAL | : | |
| REPRESENTATIVE FOR FUTURE CLAIMANTS, | : | |
| | : | |
| Respondents. | : | |

## DEBTORS' STANDARD QUESTIONNAIRE TO
## SELECT PERSONAL INJURY ASBESTOS CLAIMANTS

| COOLEY GODWARD LLP | RICHARDS, LAYTON, & FINGER, P.A. | JONES DAY |
|---|---|---|
| Stephen C. Neal (CA 170085) | Daniel J. DeFranceschi (DE No. 2732) | David G. Heiman (OH 0038271) |
| Scott D. Devereaux (CA 146050) | Paul N. Heath (DE No. 3704) | Brad B. Erens (IL 6206864) |
| 3000 El Camino Real | P.O. Box 551 | North Point |
| Five Palo Alto Square | One Rodney Square | 901 Lakeside Avenue |
| Palo Alto, CA 94306 | Wilmington, Delaware 19899 | Cleveland, Ohio 44114-1190 |
| Tel: (650) 843-5000 | Tel: (302) 651-7700 | Tel: (216) 586-3939 |

*Counsel for Debtors*

Answer separately and truthfully in writing each of the questions in this Questionnaire in accordance with the Questionnaire's Definitions and Instructions. Read the entire Questionnaire carefully before completing it. Your completed Questionnaire must be returned no later than thirty (30) days from the day you received it. Make sure that you and your attorney, if you have one, sign the last page of the Questionnaire under oath. Completion of this Questionnaire is mandatory under Federal Rules of Civil Procedure, Rules 26 and 33, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026 and 7033.

| DEFINITIONS |
| --- |

The words in CAPITALS in the Questionnaire are defined as follows:

1.  The INJURED PARTY is the person who allegedly has or had a medical condition caused by asbestos exposure, including but not limited to MESOTHELIOMA, LUNG CANCER, OTHER CANCER, PLEURAL PLAQUES, DIFFUSE PLEURAL THICKENING, ASBESTOSIS, or other non-malignant asbestos-related condition.

2.  The PERSONAL REPRESENTATIVE OF THE INJURED PARTY is the person or entity that is filing the claim on behalf of the INJURED PARTY if the INJURED PARTY is legally incompetent or deceased. This person or entity may be, for example, the INJURED PARTY's legal guardian, executor, or administrator. This person or entity is not the attorney representing the INJURED PARTY or the attorney representing the PERSONAL REPRESENTATIVE OF THE INJURED PARTY.

3.  The CLAIMANT is either the INJURED PARTY or, if the INJURED PARTY is legally incompetent or deceased, the PERSONAL REPRESENTATIVE OF THE INJURED PARTY.

4.  DEBTORS are any or all of the following corporations: USG Corporation, United States Gypsum Company, USG Interiors, Inc., USG Interiors International, Inc., L&W Supply Corporation, Beadex Manufacturing, LLC, B-R Pipeline Company, La Mirada Products Co., Inc., USG Industries, Inc., USG Pipeline Company, and Stocking Specialists, Inc.

5.  US GYPSUM is United States Gypsum Company. For a description of the businesses of US GYPSUM and the other DEBTORS and a listing of the types of products they manufactured or sold that may have contained asbestos, see Appendix C to this Questionnaire.

6.  PLEURAL PLAQUES is a non-malignant, circumscribed or localized area of fibrous material appearing in the lining of the lung or the chest wall.

7.  DIFFUSE PLEURAL THICKENING is a diffuse (as opposed to circumscribed or localized) area of fibrosis appearing in the lining of the lung or the chest wall.

8.  ASBESTOSIS is diffuse fibrosis (or scarring) on both lungs caused by the inhalation of asbestos fibers.

9.  LUNG CANCER is a malignant tumor of the lungs.

10. MESOTHELIOMA is a malignant tumor of the pleura, which is the thin membrane or lining surrounding the lung (pleural mesothelioma). It may also be a malignant tumor of the lining of the abdominal cavity (peritoneal mesothelioma).

11. OTHER CANCER is any cancer other than LUNG CANCER or MESOTHELIOMA and includes but is not limited to colon cancer, laryngeal (voicebox) cancer, esophageal cancer, pharyngeal (throat) cancer, stomach cancer, breast cancer, ovarian cancer, liver cancer, brain cancer, lymphoma (cancer of the lymph nodes (or tissues)), and prostate cancer.

12. FORCED VITAL CAPACITY (FVC) describes the total amount of air that can be forcibly and quickly exhaled after inhaling as much air as possible.

13. FORCED EXPIRATORY VOLUME (FEV₁) describes the volume of air that can be forced from the lungs in one second of effort.

14. TOTAL LUNG CAPACITY (TLC) represents the total amount of air that can be taken into the lungs, including the air that cannot be exhaled.

15. DIFFUSION CAPACITY (DLCO or $D_{co}$) measures the exchange of oxygen from the air to the blood stream.

| INSTRUCTIONS |
| --- |

1. Read carefully the entire Questionnaire and the Definitions and Instructions <u>before completing the Questionnaire</u>. It is important to read the entire Questionnaire at least once <u>before completing it</u> because you may need to photocopy some sections prior to filling them out so that you can submit multiple copies of the sections. See Instruction No. 4, below.

2. Type or print your answers to each question neatly and legibly using black or blue ink. Use capital letters and avoid contact with the edge of the character boxes. Mark check boxes with an "X" (example at right). ☒ Do not use a felt-tip pen, do not write outside the boxes or blocks, and do not bend or fold the pages of the Questionnaire. Do not distribute this Questionnaire to others for their completion because each Questionnaire has a unique identifying number for each CLAIMANT.

3. Be complete, accurate, and truthful in your answers to the questions asked. This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your claim. The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both. 18 U.S.C. §§ 152 & 3571.

4. If you cannot fit all information in any particular section or page, make a copy of that page <u>before filling it out</u> and add the necessary information to the copied page(s). Attach as many additional pages as needed.

5. Submit with the Questionnaire copies of any and all medical reports or records that show, support, conflict with, or otherwise relate to a diagnosis or lung function analysis of the INJURED PARTY alleged in Part 2 of the Questionnaire, including but not limited to:

    A. Physical exam results;
    B. Pathology reports;
    C. Diagnostic tests or reports;
    D. Laboratory tests;
    E. Letters or other written statements from a doctor or medical clinic;
    F. Radiographic evaluations, such as x-rays or CT Scans; and
    G. Pulmonary function test (PFT) reports, including:
        (i) Spirogram tracings;
        (ii) FORCED VITAL CAPACITY (FVC);
        (iii) FORCED EXPIRATORY VOLUME (FEV1);
        (iv) TOTAL LUNG CAPACITY (TLC); and
        (v) DIFFUSION CAPACITY (DLCO or $D_{co}$).
    H. Written statements by a doctor or medical clinic regarding the cause or potential cause of a diagnosis.

    You may submit photocopies of these medical reports or records instead of the original reports or records.

6. If the INJURED PARTY is deceased, submit the Death Certificate with the Questionnaire. If this Questionnaire is being filed by the PERSONAL REPRESENTATIVE OF THE INJURED PARTY, submit with the Questionnaire written evidence of your authority to act on behalf of the INJURED PARTY.

7. If the INJURED PARTY or the PERSONAL REPRESENTATIVE OF THE INJURED PARTY responded to interrogatories or were deposed in a lawsuit filed by or on behalf of the INJURED PARTY for asbestos-related personal injury, submit with the Questionnaire a copy of any and all such interrogatory responses and depositions. If a written claim, including but not limited to a proof of claim form, was submitted by or on behalf of the INJURED PARTY for asbestos-related personal injury in another bankruptcy case or against a trust established pursuant to a plan of reorganization or liquidation in another bankruptcy case, submit with the Questionnaire a copy of any and all such written claims. See Part 9 of the Questionnaire.

8. If in Part 4 you identify a co-worker or other person upon whom you rely for your belief that the INJURED PARTY was exposed to an asbestos-containing product of US GYPSUM or another DEBTOR, and if that co-worker or other person was deposed in any asbestos-related personal injury action, submit with the Questionnaire a copy of any and all such depositions. See Part 4 of the Questionnaire.

9.  In Parts 4-7 of the Questionnaire, you are asked to provide Standard Occupational Classification Codes and Standard Industrial Classification Codes.  For a list of these codes, refer to Appendices D and E, respectively, to the Questionnaire.

10. Make sure that the INJURED PARTY or the PERSONAL REPRESENTATIVE OF THE INJURED PARTY completes and signs both the Authorization To Disclose Health Information Pursuant to HIPPA contained in Appendix A and the Authorization for Release of Earnings Information and Employment Records From the Social Security Administration contained in Appendix B.  You do not need to complete the Request for Social Security Earnings Information Form (Form SSA-7050-F4) that is included in Appendix B with the Authorization.  This form is only for your reference.  You need only complete and return the Authorization on the first page of Appendix B.

11. Make sure that the CLAIMANT and the attorney of the CLAIMANT, if any, signs the Questionnaire.  Make a copy of your completed Questionnaire for your records and submit the original Questionnaire and all supporting documentation to the following address:

   **If by mail:**
   Rust Consulting, Inc. Return Address
   P.O. Box XXXX
   Faribault, MN 55021-XXXX

   **If by hand or overnight delivery:**
   Rust Consulting, Inc.
   201 S. Lyndale Ave.
   Faribault, MN 55021

   Place your Questionnaire in the mail or hand or overnight deliver it no later than thirty (30) days after the day you received this Questionnaire.  Do not submit your Questionnaire by facsimile, telecopy, or other electronic transmission.  Do not send your Questionnaire to DEBTORS or DEBTORS' counsel.

PART 1: IDENTIFYING INFORMATION

Provide identifying information regarding the Injured Party, the Personal Representative of the Injured Party, and the Claimant's attorney, if any.

A. Injured Party – the person who allegedly has or had a medical condition caused by asbestos exposure.

1. Full Name:

Last

First    MI

2. Other Names Used:
   (Including maiden name)

Last

First    MI

3. Social Security Number:

4. Gender:    Male ☐    Female ☐

5. Date of Birth:  (month) / (day) / (year)

6. The Injured Party Is:    Living ☐    Deceased ☐    (If deceased, enclose the death certificate.)

   a. If deceased, date of death:  (month) / (day) / (year)

   b. If deceased, was death asbestos-related?    Yes ☐    No ☐

7. If the Injured Party is living, provide that person's:

   a. Mailing Address:

   Street/P.O. Box

   City    State    Zip

   b. Daytime Phone Number:  ( )   -

**PART 1: IDENTIFYING INFORMATION (Continued)**

B. PERSONAL REPRESENTATIVE OF THE INJURED PARTY (**not** filing attorney) – If the INJURED PARTY is legally incompetent or deceased, and has a PERSONAL REPRESENTATIVE other than, or in addition to, his/her attorney, provide the following information for the PERSONAL REPRESENTATIVE submitting the claim. **(Enclose written evidence of your authority to act on behalf of the INJURED PARTY.)**

1. Name of PERSONAL REPRESENTATIVE:

   Last

   First                                                                                                                  MI

2. PERSONAL REPRESENTATIVE'S

   Social Security Number:

3. Relationship to INJURED PARTY:

   The PERSONAL REPRESENTATIVE is the INJURED PARTY'S:

   (Guardian, Administrator, Brother, etc.)

4. PERSONAL REPRESENTATIVE'S
   a. Mailing Address:

      Street/P.O. Box

      City                                                      State                 Zip

   b. Daytime Phone Number:

      (        )        –

C. Attorney – If the CLAIMANT is represented by an attorney, provide the following information.

1. Attorney Name:

   Last

   First                                                                                                                  MI

2. Email Contact Information:

3. Name of Law Firm:

   (Print full name)

4. Firm Address:

   Street/P.O. Box

   City                                                      State                 Zip

5. Phone Number:        (        )        –

   Fax Number:        (        )        –

| PART 2:  ASBESTOS-RELATED AND OTHER INJURIES |
|---|

Provide information about the INJURED PARTY's asbestos-related personal injury.

1.  Has the INJURED PARTY been diagnosed with cancer?    Yes ☐    No. ☐

2.  If "Yes", identify the type of cancer that was diagnosed for the INJURED PARTY and the date of diagnosis.  Refer to the definitions of LUNG CANCER, MESOTHELIOMA, and OTHER CANCER on page 1 of this Questionnaire.

LUNG CANCER ☐    Date of Diagnosis: ☐☐ / ☐☐☐☐
                                   (month)    (year)

MESOTHELIOMA ☐    Date of Diagnosis: ☐☐ / ☐☐☐☐
                                   (month)    (year)

OTHER CANCER ☐    Date of Diagnosis: ☐☐ / ☐☐☐☐
                                   (month)    (year)

If OTHER CANCER, describe.

3.  Has the doctor who made the diagnosis of cancer stated that the cancer in question was caused by asbestos exposure?    Yes ☐    No ☐

4.  Has the INJURED PARTY been diagnosed with a non-malignant asbestos-related condition?    Yes ☐    No ☐

5.  If "Yes", identify the type of non-malignant asbestos-related condition that was diagnosed for the INJURED PARTY and the date of diagnosis.  Refer to the definitions of PLEURAL PLAQUES, DIFFUSE PLEURAL THICKENING, and ASBESTOSIS on page 1 of this Questionnaire.

PLEURAL PLAQUES ☐    Date of Diagnosis: ☐☐ / ☐☐☐☐
                                      (month)    (year)

DIFFUSE PLEURAL THICKENING ☐    Date of Diagnosis: ☐☐ / ☐☐☐☐
                                              (month)    (year)

ASBESTOSIS ☐    Date of Diagnosis: ☐☐ / ☐☐☐☐
                                  (month)    (year)

OTHER Non-Malignant Asbestos-Related Condition ☐

If Other Non-Malignant Asbestos-Related Condition, describe.

PART 2:  ASBESTOS-RELATED AND OTHER INJURIES (Continued)

6.  Has the doctor who made the diagnosis of non-malignant asbestos-related condition stated that the condition in question was caused by asbestos exposure?    Yes ☐    No ☐

7.  Provide information regarding the Injured Party's most recent lung function test results.

    a.  Forced Vital Capacity (FVC): ☐

        Test Date: ☐☐ / ☐☐ / ☐☐☐☐    Result: ☐ . ☐ ☐ L    % of Predicted: ☐ ☐ %
              Month     Day     Year

    b.  Forced Expiratory Volume (FEV₁): ☐

        Test Date: ☐☐ / ☐☐ / ☐☐☐☐    Result: ☐ . ☐ ☐ L    % of Predicted: ☐ ☐ %
              Month     Day     Year

    c.  Total Lung Capacity (TLC): ☐

        Test Date: ☐☐ / ☐☐ / ☐☐☐☐    Result: ☐ . ☐ ☐ L    % of Predicted: ☐ ☐ %
              Month     Day     Year

    d.  Diffusion Capacity (DLCO or D$_{co}$): ☐

        Test Date: ☐☐ / ☐☐ / ☐☐☐☐    Result: ☐ . ☐ ☐ L    % of Predicted: ☐ ☐ %
              Month     Day     Year

8.  Provide information regarding the Injured Party's most recent ILO x-ray reading.

    Reading Date: ☐☐ / ☐☐ / ☐☐☐☐    Results: ☐ . ☐
             Month   Day    Year

9.  a.  Has the Injured Party been diagnosed with any other lung condition?    Yes ☐    No ☐

        Another lung condition includes but is not limited to:

        (i) chronic obstructive pulmonary disease (including emphysema and chronic bronchitis)
        (ii) asthma,
        (iii) pneumonia,
        (iv) interstitial lung disease (idiopathic pulmonary fibrosis),
        (v) silicosis,
        (vi) effusion (fluid around the lung (pleural cavity)), and
        (vii) congestive heart failure (fluid in the lung) (lung edema)

    b.  If "Yes", describe the other lung condition.

        [ ]

10. Attach to this Questionnaire copies of any and all medical reports or records that show, support, conflict with, or otherwise relate to a diagnosis or lung function analysis identified in this Part, including but not limited to:

    a.  Physical exam results;
    b.  Pathology reports;
    c.  Diagnostic tests or reports;
    d.  Laboratory tests;
    e.  Letters or other written statements from a doctor or medical clinic;
    f.  Radiographic evaluations, such as x-rays or CT Scans;
    g.  Pulmonary function test (PFT) reports, including:
        i)  Spirogram tracings;
        ii)  Forced Vital Capacity (FVC);
        iii)  Forced Expiratory Volume (FEV₁);
        iv)  Total Lung Capacity (TLC); and
        v)  Diffusion Capacity (DLCO or D$_{co}$).
    h.  Written statements by a doctor or medical clinic regarding the cause or potential cause of a diagnosis.

    You may submit photocopies of these medical reports or records instead of the original reports or records.

**PART 2: ASBESTOS-RELATED AND OTHER INJURIES (Continued)**

11. Provide information regarding the doctor(s) who made any diagnosis or performed any exam or test identified in this Part. If there are multiple doctors, photocopy this section and attach additional pages.

   a. Doctor's Name:

Last

First              MI

   b. Doctor's Address:

Street/P.O. Box

City          State     Zip

   d. Doctor's Diagnosis:

   e. Doctor's Exam(s) or Test(s):

**PART 3: SMOKING HISTORY OF THE INJURED PARTY**

1. Has the INJURED PARTY ever smoked cigarettes, cigars, or pipes?   Yes ☐  No ☐

   Mark the box(es) that apply and provide the information requested.

| | Age when First Started Smoking | Date, if any, When Completely Stopped Smoking | |
|---|---|---|---|
| Cigarettes: ☐ | ☐ Age Started | ☐ / ☐ Month / Year | Packs per Day: ☐ . ☐ * (#) |
| Cigars: ☐ | ☐ Age Started | ☐ / ☐ Month / Year | Cigars per Day: ☐ (#) |
| Pipes: ☐ | ☐ Age Started | ☐ / ☐ Month / Year | Pipes per Day: ☐ (#) |

   *  Indicate fractional packs as appropriate, e.g., three and one-half packs would be entered as 3.5.

2. Has the INJURED PARTY ever used chewing tobacco or snuff?   Yes ☐  No ☐

   Mark the box(es) that apply and provide the information requested.

| | Age when First Started Using | Date, if any, When Completely Stopped Using | |
|---|---|---|---|
| Chewing Tobacco: ☐ | ☐ Age Started | ☐ / ☐ Month / Year | Number of times per Day: ☐ (#) |
| Snuff: ☐ | ☐ Age Started | ☐ / ☐ Month / Year | Number of times per Day: ☐ (#) |

---

**PART 4:  OCCUPATIONAL EXPOSURE TO PRODUCTS OF UNITED STATES GYPSUM COMPANY OR ANY OTHER DEBTOR**

---

Provide information about the INJURED PARTY's occupational exposure to asbestos-containing products that were manufactured or sold by US GYPSUM or any other DEBTOR. In Appendix C to the Questionnaire, you will find a description of the businesses of US GYPSUM and the other DEBTORS and a listing of the types of products they manufactured or sold that may have contained asbestos.

1.  Did the INJURED PARTY have occupational exposure to an asbestos-containing product manufactured or sold by US GYPSUM or another DEBTOR?                                                   Yes ☐      No ☐

   If "Yes," complete the remainder of this Part as instructed.

   If "No", continue to Part 5.

2.  Did the INJURED PARTY have occupational exposure to more than one asbestos-containing product manufactured or sold by US GYPSUM or another DEBTOR?                                       Yes ☐      No ☐

   If "Yes", photocopy this Part and complete the Part for each Product exposed to.

3.  Product Exposed To:  | | | | | | | | | | | | | | | | | | | | | | | | |

   (one product per page)

   Brand Name:  | | | | | | | | | | | | | | | | | | | | | | | | |

   Manufacturer of Product:  | | | | | | | | | | | | | | | | | | | | | | | | |

   Distributor of Product:  | | | | | | | | | | | | | | | | | | | | | | | | |

   Why you believe the product exposed to was a DEBTOR's product and not another manufacturer's:

   | |

   If you rely on a co-worker of the INJURED PARTY or on another person for your belief that the INJURED PARTY was exposed to a DEBTOR's product, provide that person's name:

   | | | | | | | | | | | | | | | | | | | | | | | | |

   Last

   | | | | | | | | | | | | | | | | | | | | | | | | | MI

   First

   If you rely on a co-worker or other person, has this person been deposed in any asbestos-related personal injury action?                        Yes ☐      No ☐

   If the co-worker or other person has been deposed, attach to this Questionnaire a copy of any and all such depositions.

4.  Was the INJURED PARTY exposed to the product in more than one occupation? (Use the Standard Occupational Classification Codes listed in Appendix D.)                                     Yes ☐      No ☐

   If "Yes", photocopy this Part and complete the Part for each occupation.

5.  Occupation during exposure (Use the Standard Occupational Classification Codes listed in Appendix D.)     ☐☐   Specify if "Other" ☐

6.  Industry during exposure (Use the Standard Industrial Classification Codes listed in  Appendix E.)       ☐☐   Specify if "Other" ☐

**PART 4: OCCUPATIONAL EXPOSURE TO PRODUCTS OF UNITED STATES GYPSUM COMPANY OR ANY OF THE DEBTORS (Continued)**

7.  a.  Provide the date range and frequency of product exposure in the listed occupation and industry.  In addition, for each exposure, describe the exposure type as A, B, C or D as follows:

   (A) a worker who personally worked with asbestos-containing products of US Gypsum or Debtors;
   (B) a worker in a room where other workers were personally working with asbestos-containing products of US Gypsum or Debtors;
   (C) a worker on a floor where other workers were personally working with asbestos-containing products of US Gypsum or Debtors; or
   (D) a worker at a site where other workers were personally working with asbestos-containing products of US Gypsum or Debtors.

   Choose the category that best describes the Injured Party's type of exposure and choose only one category.

   b.  If exposure was not continuous, provide all separate date ranges and frequencies of exposure.  Start with the first date of exposure and finish with the last date of exposure.  If there are more than three date ranges of exposure, photocopy this section before completing it and attach additional pages.  For each exposure, describe the exposure type as A, B, C, or D per the Instructions to Question 7.a.  Choose the category that best describes the Injured Party's type of exposure and choose only one category.

| Date Range of Exposure: | Exposure Type: | Frequency of Exposure During this Date Range: |
|---|---|---|
| From: [ ] [ ] / [ ] [ ] [ ] [ ]  Month   Year  To: [ ] [ ] / [ ] [ ] [ ] [ ]  Month   Year | Indicate A, B, C or D per Instructions above.  [ ] | Day(s) per month [ ] [ ]  Hour(s) per Day [ ] |
| Date Range of Exposure:  From: [ ] [ ] / [ ] [ ] [ ] [ ]  Month   Year  To: [ ] [ ] / [ ] [ ] [ ] [ ]  Month   Year | Exposure Type:  Indicate A, B, C or D per Instructions above.  [ ] | Frequency of Exposure During this Date Range:  Day(s) per month [ ] [ ]  Hour(s) per Day [ ] |
| Date Range of Exposure:  From: [ ] [ ] / [ ] [ ] [ ] [ ]  Month   Year  To: [ ] [ ] / [ ] [ ] [ ] [ ]  Month   Year | Exposure Type:  Indicate A, B, C or D per Instructions above.  [ ] | Frequency of Exposure During this Date Range:  Day(s) per month [ ] [ ]  Hour(s) per Day [ ] |

8.  Description of job duties:

9.  Description of how Product was used at the site(s):

10. If the exposure(s) listed in response to the above questions was/were at a construction site, state the percentage of time such exposure(s) occurred at residential and commercial sites:

   Residential: [ ] [ ] [ ]  %   Commercial: [ ] [ ] [ ]  %   = 100 %

---

**PART 5: OCCUPATIONAL EXPOSURE TO OTHER ASBESTOS-CONTAINING PRODUCTS**

---

Provide information about the INJURED PARTY's occupational exposure to asbestos-containing products that were not manufactured or sold by US Gypsum or another DEBTOR.

1.  Did the INJURED PARTY have occupational exposure to an asbestos-containing product that was not manufactured or sold by US GYPSUM or another DEBTOR?

    Yes ☐    No ☐

    If "Yes," complete the remainder of this Part as instructed.

    If "No", continue to Part 6.

2.  Did the INJURED PARTY have occupational exposure to more than one asbestos-containing product that was not manufactured or sold by US GYPSUM or another DEBTOR?

    Yes ☐    No ☐

    If "Yes", photocopy this Part and complete the Part for each Product exposed to.

3.  Product Exposed To:    ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

    (one product per page)

    Brand Name:    ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

    Manufacturer of Product:    ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

    Distributor of Product:    ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

4.  Was the INJURED PARTY exposed to the product in more than one occupation? (Use the Standard Occupational Classification Codes listed in Appendix D.)

    Yes ☐    No ☐

    If "Yes", photocopy this Part and complete the Part for each occupation.

5.  Occupation during exposure (Use the Standard Occupational Classification Codes listed in Appendix D.)    ☐☐☐   Specify if "Other" ☐

    If the INJURED PARTY was exposed to the Product in more than one occupation, photocopy this Part and complete the Part for each occupation.

6.  Industry during exposure (Use the Standard Industrial Classification Codes listed in Appendix E.)    ☐☐☐   Specify if "Other" ☐

---

PART 5:  OCCUPATIONAL EXPOSURE TO OTHER ASBESTOS-CONTAINING PRODUCTS (Continued)

---

7.  a.  Provide the date range and frequency of product exposure in the listed occupation and industry.  In addition, for each exposure, describe the exposure type as A, B, C or D as follows:

    (A)  a worker who personally worked with asbestos-containing products;
    (B)  a worker in a room where other workers were personally working with asbestos-containing products;
    (C)  a worker on a floor where other workers were personally working with asbestos-containing products; or
    (D)  a worker at a site where other workers were personally working with asbestos-containing products.

    Choose the category that best describes the INJURED PARTY's type of exposure and choose only one category.

  b.  If exposure was not continuous, provide all separate date ranges and frequencies of exposure.  Start with the first date of exposure and finish with the last date of exposure.  If there are more than three date ranges of exposure, photocopy this section before completing it and attach additional pages.  For each exposure, describe the exposure type as A, B, C, or D per the instructions to Question 7.a.  Choose the category that best describes the INJURED PARTY's type of exposure and choose only one category.

| Date Range of Exposure: | Exposure Type: | Frequency of Exposure During this Date Range: |
|---|---|---|
| From: [ ] / [ ]  Month  Year  To: [ ] / [ ]  Month  Year | Indicate A, B, C or D per instructions to Question 7.a.  [ ] | Day(s) per month [ ]  Hour(s) per Day [ ] |
| Date Range of Exposure: | Exposure Type: | Frequency of Exposure During this Date Range: |
| From: [ ] / [ ]  Month  Year  To: [ ] / [ ]  Month  Year | Indicate A, B, C or D per instructions to Question 7.a.  [ ] | Day(s) per month [ ]  Hour(s) per Day [ ] |
| Date Range of Exposure: | Exposure Type: | Frequency of Exposure During this Date Range: |
| From: [ ] / [ ]  Month  Year  To: [ ] / [ ]  Month  Year | Indicate A, B, C or D per instructions to Question 7.a.  [ ] | Day(s) per month [ ]  Hour(s) per Day [ ] |

8.  Description of job duties:

9.  Description of how Product was used at the site(s):

10.  If the exposure(s) listed in response to the above questions was/were at a construction site, state the percentage of time such exposure(s) occurred at residential and commercial sites:

    Residential:  [ ] %   Commercial:  [ ] %   = 100 %

PART 6:  OCCUPATIONAL HISTORY

Provide the complete occupational history of the INJURED PARTY.  Include all jobs in which the INJURED PARTY worked at least a month, including any summer jobs worked during the first twenty (20) years of life, and conclude with any current employment. For Occupation Codes, use the Standard Occupational Classification Codes listed in Appendix D.  For Industry Codes, use the Standard Industrial Classification Codes listed in Appendix E.  If the INJURED PARTY has had more jobs than can fit on this page, photocopy the page before filling it out as many times as needed and complete the additional pages.

**1.  Employer Name:**

**Employer Address:**

Street

City                                  State          Zip

**Years Worked:**

From: [  ][  ] / [  ][  ][  ][  ]    To: [  ][  ] / [  ][  ][  ][  ]
       Month        Year                    Month        Year

**Occupation Code:**  [  ][  ]  **Specify if "Other"**

**Industry Code:**  [  ][  ]  **Specify if "Other"**

**2.  Employer Name:**

**Employer Address:**

Street

City                                  State          Zip

**Years Worked:**

From: [  ][  ] / [  ][  ][  ][  ]    To: [  ][  ] / [  ][  ][  ][  ]
       Month        Year                    Month        Year

**Occupation Code:**  [  ][  ]  **Specify if "Other"**

**Industry Code:**  [  ][  ]  **Specify if "Other"**

**3.  Employer Name:**

**Employer Address:**

Street

City                                  State          Zip

**Years Worked:**

From: [  ][  ] / [  ][  ][  ][  ]    To: [  ][  ] / [  ][  ][  ][  ]
       Month        Year                    Month        Year

**Occupation Code:**  [  ][  ]  **Specify if "Other"**

**Industry Code:**  [  ][  ]  **Specify if "Other"**

| PART 7:  OTHER EXPOSURE TO ASBESTOS |
|:---:|

1. a. Was the Injured Party exposed to asbestos outside the Injured Party's occupation?

   Yes ☐    No ☐

   b. Was the Injured Party exposed to asbestos through another person (the "Source Individual")?

   Yes ☐    No ☐

   If you checked "yes" to either Question 1(a) or Question 1(b), answer Questions 2 through 4.  If you checked "yes" to Question 1(b), additionally answer Questions 5 through 15.

2. Was the Injured Party exposed to more than one asbestos-containing product outside the Injured Party's occupation or through a Source Individual?    Yes ☐    No ☐

   If "Yes", photocopy this Part and complete the Part for each product exposed to.

3. Product Exposed To:

   (either directly or through Source Individual)

   Brand Name:

   Manufacturer of Product:

   Distributor of Product:

   If you identified a Debtor as the manufacturer of the product, why you believe the product exposed to was a Debtor's product and not another manufacturer's:

   If you rely on another person for your belief that the Injured Party was exposed to a Debtor's product, provide that person's name:

   Last

   First                                MI

   If you rely on another person, has this person been deposed in any asbestos-related personal injury action?    Yes ☐    No ☐

   If the other person has been deposed, attach to this Questionnaire a copy of any and all such depositions.

4. a. Provide the date range and frequency of the Injured Party's product exposure (either direct or through Source Individual):

   Date Range of Exposure:

   From: ☐ Month / ☐ Year

   To: ☐ Month / ☐ Year

   Frequency of Exposure During this Date Range:

   Day(s) per month ☐

   Hour(s) per Day ☐

PART 7:  OTHER EXPOSURE TO ASBESTOS (Continued)

b.  If exposure was not continuous, provide all separate date ranges and frequencies of exposure.  Start with the first date of exposure and finish with the last date of exposure.  If there are more than three date ranges of exposure, photocopy this section before completing it and attach additional pages.

Date Range of Exposure:

From: ☐☐ / ☐☐☐☐
      Month    Year

To:   ☐☐ / ☐☐☐☐
      Month    Year

Frequency of Exposure During this Date Range:

Day(s) per month  ☐☐

Hour(s) per Day   ☐☐

Date Range of Exposure:

From: ☐☐ / ☐☐☐☐
      Month    Year

To:   ☐☐ / ☐☐☐☐
      Month    Year

Frequency of Exposure During this Date Range:

Day(s) per month  ☐☐

Hour(s) per Day   ☐☐

Date Range of Exposure:

From: ☐☐ / ☐☐☐☐
      Month    Year

To:   ☐☐ / ☐☐☐☐
      Month    Year

Frequency of Exposure During this Date Range:

Day(s) per month  ☐☐

Hour(s) per Day   ☐☐

5.  Source Individual's Name (if you checked "yes" to Question 1(b)):

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Last

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐  ☐

First                                              MI

6.  Was the Source Individual exposed to the product in more than one occupation? (Use the Standard Occupational Classification Codes listed in Appendix D.)        Yes ☐  No ☐

If "yes", photocopy this Part and complete the Part for each occupation.

7.  Source Individual's Occupation during exposure (Use Standard Industrial Classification Codes listed in Appendix D.)     ☐☐☐  Specify if "Other" ☐

8.  Source Individual's Industry during exposure (Use the Standard Industrial Classification Codes listed in Appendix E.)    ☐☐☐  Specify if "Other" ☐

**PART 7:  OTHER EXPOSURE TO ASBESTOS (Continued)**

9.  a.  Provide the date range and frequency of the Source Individual's product exposure in the listed occupation and industry.  In addition, for each exposure, describe the Source Individual's exposure type as A, B, C or D as follows:  The Source Individual was:

(A)  a worker who personally worked with asbestos-containing products;
(B)  a worker in a room where other workers were personally working with asbestos-containing products;
(C)  a worker on a floor where other workers were personally working with asbestos-containing products; OR
(D)  a worker at a site where other workers were personally working with asbestos-containing products.

Choose the category that best describes the Source Individual's type of exposure and choose only one category.

| Date Range of Exposure: | Exposure Type: | Frequency of Exposure During this Date Range: |
|---|---|---|
| From: ☐☐ / ☐☐☐☐<br>Month   Year<br>To: ☐☐ / ☐☐☐☐<br>Month   Year | Indicate A, B, C or D per instructions above.<br>☐ | Day(s) per month ☐☐<br><br>Hour(s) per Day ☐☐ |

b.  If the Source Individual's exposure was not continuous provide all separate date ranges and frequencies of exposure.  Start with the first date of exposure and finish with the last date of exposure.  If there are more than three date ranges of exposure, photocopy this section before completing it and attach additional pages.  For each exposure, describe the exposure type as A, B, C, or D per the instructions to Question 9.a.  Choose the category that best describes the Source Individual's type of exposure and choose only one category.

| Date Range of Exposure: | Exposure Type: | Frequency of Exposure During this Date Range: |
|---|---|---|
| From: ☐☐ / ☐☐☐☐<br>Month   Year<br>To: ☐☐ / ☐☐☐☐<br>Month   Year | Indicate A, B, C or D per instructions above.<br>☐ | Day(s) per month ☐☐<br><br>Hour(s) per Day ☐☐ |

| Date Range of Exposure: | Exposure Type: | Frequency of Exposure During this Date Range: |
|---|---|---|
| From: ☐☐ / ☐☐☐☐<br>Month   Year<br>To: ☐☐ / ☐☐☐☐<br>Month   Year | Indicate A, B, C or D per instructions above.<br>☐ | Day(s) per month ☐☐<br><br>Hour(s) per Day ☐☐ |

| Date Range of Exposure: | Exposure Type: | Frequency of Exposure During this Date Range: |
|---|---|---|
| From: ☐☐ / ☐☐☐☐<br>Month   Year<br>To: ☐☐ / ☐☐☐☐<br>Month   Year | Indicate A, B, C or D per instructions above.<br>☐ | Day(s) per month ☐☐<br><br>Hour(s) per Day ☐☐ |

10.  Source Individual's Social Security Number:  ☐☐☐ - ☐☐ - ☐☐☐☐

11.  Source Individual's Gender:  Male ☐   Female ☐

12.  Source Individual's Date of Birth:  ☐☐ / ☐☐ / ☐☐☐☐
(month)   (day)   (year)

**PART 7:  OTHER EXPOSURE TO ASBESTOS (Continued)**

12. Source Individual's Mailing Address:

[ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ]

Street/P.O. Box

[ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ]    [ ] [ ]    [ ] [ ] [ ] [ ] [ ]

City                                            State           Zip

13. Source Individual's Daytime Phone Number:  ( [ ] [ ] [ ] )  [ ] [ ] [ ] - [ ] [ ] [ ] [ ]

14. Source Individual's Relationship to Injured Party
    The Injured Party is the Source Individual's:   [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ]

(Spouse, Son, Daughter, etc.)

**PART 8:  RESIDENTIAL HISTORY**

Provide the following information regarding the INJURED PARTY's past residences, starting with the earliest residence.  For each subsequent residence, including any current residence, photocopy this page and complete the page.

1.  Address:   [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ]

Street

[ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ]    [ ] [ ]    [ ] [ ] [ ] [ ] [ ]

City                                            State           Zip

Date INJURED PARTY began residing at this address:   [ ] [ ] / [ ] [ ] [ ] [ ]

Month        Year

Date INJURED PARTY ceased residing at this address:   [ ] [ ] / [ ] [ ] [ ] [ ]

Month        Year

2.  During the INJURED PARTY's residency, were any asbestos-containing products installed or otherwise brought onto the residence or surrounding areas?   Yes [ ]   No [ ]

3.  During this residency, did the INJURED PARTY live near a plant which processed asbestos and/or asbestos-containing products?   Yes [ ]   No [ ]

Provide information about the INJURED PARTY's residential exposure to asbestos or asbestos-containing products in Part 7.

| PART 9:  THE INJURED PARTY'S LAWSUITS AND CLAIMS |
| --- |

| A.  LAWSUITS |
| --- |

1.  Has a lawsuit been filed by or on behalf of the Injured Party for an asbestos-related personal injury?

Yes [  ]    No [  ]

If "Yes", complete the remainder of Part 9.A as instructed.  If "No", continue to Part 9.B.

2.  Has more than one lawsuit been filed by or on behalf of the Injured Party for an asbestos-related personal injury?

Yes [  ]    No [  ]

If "Yes", photocopy Part 9.A and complete the Part for each lawsuit filed.

3.  Case Caption:

[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

4.  Case Number:

[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

5.  Court Name:

[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

6.  Case Filing Date:  [ ][ ] / [ ][ ] / [ ][ ][ ][ ]
    (month)      (day)      (year)

7.  Did the Injured Party or the Personal Representative of the Injured Party respond to any interrogatories in this lawsuit?

Yes [  ]    No [  ]

If "yes," attach to this Questionnaire a copy of any and all such interrogatory responses.

8.  Were the Injured Party or the Personal Representative of the Injured Party deposed in this lawsuit?

Yes [  ]    No [  ]

If "yes," attach to this Questionnaire a copy of any and all such depositions.

9.  a.  Was the lawsuit dismissed?                                    Yes [  ]    No [  ]
    b.  If "yes," the basis for dismissal:

    [                                                                                    ]

10. a.  Has a judgment or verdict been entered in this lawsuit?       Yes [  ]    No [  ]
    b.  If "yes," against what defendant(s) and in what amount(s)?  If against more than five defendants, photocopy this
        question before completing it and complete it for all defendants against whom a judgement or verdict was entered.

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  $ [ ][ ][ ][ ][ ][ ],[ ][ ]
              (Defendant)                              (amount)

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  $ [ ][ ][ ][ ][ ][ ],[ ][ ]
              (Defendant)                              (amount)

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  $ [ ][ ][ ][ ][ ][ ],[ ][ ]
              (Defendant)                              (amount)

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  $ [ ][ ][ ][ ][ ][ ],[ ][ ]
              (Defendant)                              (amount)

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  $ [ ][ ][ ][ ][ ][ ],[ ][ ]
              (Defendant)                              (amount)

PART 9: THE INJURED PARTY'S LAWSUITS AND CLAIMS (Continued)

A. LAWSUITS (Continued)

11. a. Was a settlement agreement reached in this lawsuit?    Yes ☐    No ☐

b. If "yes," with what defendant(s) and in what amount(s)?   If against more than five defendants, photocopy this question before completing it and complete it for all defendants with whom a settlement was reached.

| | |
|---|---|
| (Defendant) | $ _____ . __ (amount) |
| (Defendant) | $ _____ . __ (amount) |
| (Defendant) | $ _____ . __ (amount) |
| (Defendant) | $ _____ . __ (amount) |
| (Defendant) | $ _____ . __ (amount) |

c. If a settlement agreement was reached with US GYPSUM or another DEBTOR, have any settlement amounts been paid?

Yes ☐    No ☐

d. If "yes," by what DEBTOR(s) and in what amount(s)?  If by more than two DEBTORS, photocopy this question before completing it and complete it for all DEBTORS who paid a settlement amount.

| | |
|---|---|
| (Debtor) | $ _____ . __ (amount) |
| (Debtor) | $ _____ . __ (amount) |

| PART 9:  THE INJURED PARTY'S LAWSUITS AND CLAIMS (Continued) |
|---|

| B.  BANKRUPTCY CLAIMS |
|---|

1.  Has a claim been submitted by or on behalf of the INJURED PARTY for an asbestos-related personal injury in another bankruptcy case ("Other Bankruptcy") or against a trust established pursuant to a plan of reorganization or liquidation in another bankruptcy case ("Bankruptcy Trust")?

Yes [ ]   No [ ]

If "Yes", complete the remainder of Part 9.B as instructed.

If "No", continue to Part 10.

2.  Has more than one bankruptcy claim been filed by or on behalf of    Yes [ ]   No [ ]
the INJURED PARTY for an asbestos-related personal injury?

If "Yes", photocopy Part 9.B and complete the Part for each bankruptcy claim filed.

3.  Other Bankruptcy or Bankruptcy Trust in which the claim was submitted:

[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

4.  Date the claim was submitted:  [ ][ ] / [ ][ ] / [ ][ ][ ][ ]
                                   (month)   (day)    (year)

5.  Description of the claim:

[                                                                    ]

6.  Did the INJURED PARTY or the PERSONAL REPRESENTATIVE OF THE INJURED PARTY submit any written claim, including but not limited to a proof of claim form, in the Other Bankruptcy or against the Bankruptcy Trust?

Yes [ ]   No [ ]

If "yes," attach to this Questionnaire a copy of any and all such written claims.

7.  a.  Was the claim paid?

Yes [ ]   No [ ]

b.  If "yes," the payment amount:

$ [ ][ ][ ][ ][ ][ ][ ] . [ ][ ]

8.  a.  Was the claim dismissed or otherwise disallowed or not honored?

Yes [ ]   No [ ]

b.  If "yes," the basis for dismissal:

[                                                                    ]

**PART 10:  THE SOURCE INDIVIDUAL'S LAWSUITS AND BANKRUPTCY CLAIMS**

**A. LAWSUITS**

If you answered "Yes" to Question 1(b) in Part 7 regarding the INJURED PARTY's exposure to asbestos through a Source Individual, complete this Part as instructed.

If you answered "No", continue to Part 11.

1.  Has a lawsuit been filed by or on behalf of the Source Individual for an asbestos-related personal injury?

    Yes [    ]    No [    ]

    **If "Yes", complete the remainder of Part 10.A as instructed.**

    **If "No", continue to Part 10.B.**

2.  Has more than one lawsuit been filed by or on behalf of the Source Individual for an asbestos-related personal injury?

    Yes [    ]    No [    ]

    **If "Yes", photocopy Part 10.A and complete the Part for each lawsuit filed.**

3.  **Case Caption:**

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

4.  **Case Number:**

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

5.  **Court Name:**

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

6.  **Case Filing Date:** [ ][ ] / [ ][ ] / [ ][ ][ ][ ]
                            (month)    (day)      (year)

7.  Did the Source Individual respond to any interrogatories in this lawsuit?    Yes [    ]   No [    ]
    **If "yes," attach to this Questionnaire a copy of any and all such interrogatory responses.**

8.  Was the Source Individual deposed in this lawsuit?    Yes [    ]   No [    ]
    **If "yes," attach to this Questionnaire a copy of any and all such depositions.**

9.  a.  Was the lawsuit dismissed?    Yes [    ]   No [    ]
    b.  If "yes," the basis for dismissal:

    [                                                                              ]

10. a.  Has a judgment or verdict been entered in this lawsuit?    Yes [    ]   No [    ]
    b.  If "yes," against what defendant(s) and in what amount(s)?   If against more than five defendants, photocopy this question before completing it and complete it for all defendants against whom a judgement or verdict was entered.

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  $ [ ][ ][ ][ ][ ][ ][ ].[ ][ ]
                    (Defendant)                        (amount)

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  $ [ ][ ][ ][ ][ ][ ][ ].[ ][ ]
                    (Defendant)                        (amount)

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  $ [ ][ ][ ][ ][ ][ ][ ].[ ][ ]
                    (Defendant)                        (amount)

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  $ [ ][ ][ ][ ][ ][ ][ ].[ ][ ]
                    (Defendant)                        (amount)

    [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]  $ [ ][ ][ ][ ][ ][ ][ ].[ ][ ]
                    (Defendant)                        (amount)

PART 10:  THE SOURCE INDIVIDUAL'S LAWSUITS AND BANKRUPTCY CLAIMS (Continued)

A. LAWSUITS (Continued)

11.  a.  Was a settlement agreement reached in this lawsuit?     Yes ☐     No ☐

b.  If "yes," with what defendant(s) and in what amount(s)?  If against more than five defendants, photocopy this question before completing it and complete it for all defendants with whom a settlement was reached.

| (Defendant) | $ (amount) |
|---|---|

c.  If a settlement agreement was reached with US GYPSUM or another DEBTOR, have any settlement amounts been paid?

Yes ☐     No ☐

d.  If "yes," by what DEBTOR(s) and in what amount(s)?  If by more than two DEBTORS, photocopy this question before completing it and complete it for all DEBTORS who paid a settlement amount.

| (Debtor) | $ (amount) |
|---|---|

> PART 10:  THE SOURCE INDIVIDUAL'S LAWSUITS AND BANKRUPTCY CLAIMS (Continued)

**B.  BANKRUPTCY CLAIMS**

1.  Has a claim been submitted by or on behalf of the Source Individual for an asbestos-related personal injury in another bankruptcy case ("Other Bankruptcy") or against a trust established pursuant to a plan of reorganization or liquidation in another bankruptcy case ("Bankruptcy Trust")?

Yes ☐    No ☐

If "Yes," complete the remainder of Part 10.B as instructed.

If "No" continue to Part 11.

2.  Has more than one bankruptcy claim been filed by or on behalf of the Source Individual for an asbestos-related personal injury?

Yes ☐    No ☐

3.  Other Bankruptcy of Bankruptcy Trust in which the claim was submitted:

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

4.  Date the claim was submitted:    ☐☐ / ☐☐ / ☐☐☐☐
                          (month)  (day)   (year)

5.  Description of the claim: _____

6.  Did the Source Individual submit any written claim, including but not limited to a proof of claim form, in the Other Bankruptcy or against the Bankruptcy Trust?

Yes ☐    No ☐

If "yes," attach to this Questionnaire a copy of any and all such written claims.

7.  a.  Was the claim paid?

    Yes ☐    No ☐

    b.  If "yes," the payment amount:

    $ ☐☐☐☐☐☐☐ , ☐☐☐

8.  a.  Was the claim dismissed or otherwise disallowed or not honored?

    Yes ☐    No ☐

    b.  If "yes," the basis for dismissal:

    _____

| PART 11:  IDENTITY OF DEBTOR |
| --- |

In this section, identify (by marking the appropriate box(es)) the Debtor(s) that you believe are responsible for the Injured Party's asbestos-related personal injury alleged in Part 2.  United States Gypsum Company is one of the Debtors that are parties to this bankruptcy proceeding.  In addition, United States Gypsum Company and the other Debtors have at times owned or been owned by other companies that are no longer related.

☐   **B-R Pipeline Company**      ☐   **United States Gypsum Company**

☐   **USG Corporation**      ☐   **La Mirada Products Co., Inc.**

☐   **USG Interiors, Inc.**      ☐   **USG Industries, Inc.**

☐   **USG Interiors International, Inc.**      ☐   **USG Pipeline Company**

☐   **L&W Supply Corporation**      ☐   **Stocking Specialties, Inc.**

☐   **Beadex Manufacturing, LLC**

---

**PART 12:  CERTIFICATION THAT INFORMATION IS TRUE AND COMPLETE**

---

Make sure that this Questionnaire is certified as true and complete by the CLAIMANT and by any attorney that the CLAIMANT has.  Both the CLAIMANT (either the INJURED PARTY or the PERSONAL REPRESENTATIVE OF THE INJURED PARTY) and any attorney for the CLAIMANT must sign below.

1.  Use the checklist below to indicate which document(s) you are submitting with this Questionnaire.

☐  Medical reports or records regarding a diagnosis alleged in Part 2

☐  Responses to interrogatories in lawsuits indicated in Parts 9 or 10

☐  Radiographic evaluations, such as x-rays or CT scans

☐  Depositions in lawsuits indicated in Parts 4, 9, or 10

☐  Pulmonary function test (PFT) reports, including spirogram tracings, FORCED VITAL CAPACITY (FVC), FORCED EXPIRATORY VOLUME ($FEV_1$), TOTAL LUNG CAPACITY (TLC), and DIFFUSION CAPACITY (DLCO or $D_{CO}$)

☐  Proof of claim forms in bankruptcies indicated in Parts 9 or 10

☐  Written evidence of the authority of the PERSONAL REPRESENTATIVE OF THE INJURED PARTY to act on behalf of the INJURED PARTY (if this Questionnaire is filed by the PERSONAL REPRESENTATIVE)

☐  Death Certificate (if the INJURED PARTY is deceased)

2.  Complete and sign the authorization attached as Appendix A to this Questionnaire authorizing the disclosure and use of the INJURED PARTY's medical records and health information.

☐  The executed release is attached.

3.  Complete and sign the authorization attached as Appendix B to this Questionnaire authorizing the disclosure and use of the INJURED PARTY's earnings information and employment records from the Social Security Administration.

☐  The executed release is attached.

4.  I have reviewed the information submitted on this Questionnaire and all supporting documents submitted with it.  I declare, under penalty of perjury, that, to the best of my knowledge, the information submitted is accurate and complete.

|  |  |  |  |
|---|---|---|---|
| ☐☐ / ☐☐ / ☐☐☐☐ |  |  | _____ |
| (month)    (day)    (year) |  |  | (Signature of CLAIMANT) |

|  |  |  |  |
|---|---|---|---|
| ☐☐ / ☐☐ / ☐☐☐☐ |  |  | _____ |
| (month)    (day)    (year) |  |  | (Signature of CLAIMANT's attorney, if any) |

[End of Questionnaire]

Review your Questionnaire to ensure that it is true and complete and that you have attached all supporting documentation.  This Questionnaire is an official court document that may be used as evidence in any legal proceeding regarding your claim  The penalty for presenting a fraudulent Questionnaire is a fine of up to $500,000 or imprisonment for up to five years, or both  18 U.S.C  §§ 152 & 3571.

## APPENDIX A

### AUTHORIZATION TO DISCLOSE HEALTH INFORMATION PURSUANT TO HIPAA

**I hereby authorize the use or disclosure of my individually identifiable protected health information ("PHI") as described below for the purpose of review and evaluation in connection with a legal claim.** I expressly request that all entities covered under the Health Insurance Portability & Accountability Act of 1996 ("HIPAA") identified below disclose full and complete PHI spanning the time period of my date of birth to the present, including the following: all medical records, correspondence, laboratory reports, notes, radiology films, pharmacy/prescription records, billing records, and insurance records, including but not limited to records pertaining to any alcohol or drug abuse (excepting any records pertaining to treatment for HIV and records pertaining to mental health, psychiatric, or psychological treatment without further express consent from me.) This authorization is effective only to the extent allowed under the applicable state law.

Patient Name: _____

◻◻◻-◻◻-◻◻◻◻          ◻◻/◻◻/◻◻◻◻
Patient Social Security Number          Patient Date of Birth

I authorize you to release the PHI to the law firm of Cooley Godward LLP, its partners, employees and agents.

### Persons/Organizations Authorized to Make the Requested Disclosures:

All physicians and other health care providers who have examined, treated, consulted with, or x-rayed me, and all hospitals, nursing facilities, rehabilitation clinics, laboratories or other health treatment facilities of any kind in which I have been a patient and/or resident.

- I understand that I have the right to revoke this authorization at any time by writing to my health care providers listed above. I understand, however, that actions already taken in reliance on this authorization cannot be reversed, and my revocation will not affect those actions.

- I understand that this authorization is voluntary and that once this information has been disclosed it may be subject to re-disclosure and would no longer be protected by federal privacy regulations.

- I understand that the health care providers to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not I sign this authorization.

- Any facsimile or photocopy of this authorization shall authorize you to release the records described herein.

- This authorization shall expire upon final resolution of the litigation entitled *In re: USG Corporation*, United States District Court for the District of Delaware, Case Nos. 01-02094 (JKF), 04-1559 (JFC) and 04-1560 (JFC).

_____          ◻◻/◻◻/◻◻◻◻
Signature          Date

If the Authorization is signed by a Personal Representative of the individual, a description of such representative's authority to act for the individual:

_____

## APPENDIX B

## AUTHORIZATION FOR RELEASE OF EARNINGS INFORMATION AND EMPLOYMENT RECORDS FROM THE SOCIAL SECURITY ADMINISTRATION

AUTHORIZATION:

I hereby authorize the Social Security Administration to furnish to the law firm of Cooley Godward LLP, its partners, employees and agents ("Cooley Godward"), any and all earnings information and employment records ("SSA Employment Records") pertaining to:

Name:

Other Name(s) Used (Including Maiden Name):

Social Security Number      Patient Date of Birth

I hereby further authorize Cooley Godward to prepare and sign a Request for Social Security Earnings Information (Form SSA-7050-F4) on my behalf in order to permit Cooley Godward to request my SSA Employment Records from the Social Security Administration. I acknowledge that I was provided with a blank copy of a Request for Social Security Earnings Information form (Form SSA-7050-F4) for my reference.

AUTHORIZED PERSONS AND ENTITIES:

This release authorizes Cooley Godward to obtain, receive and use my SSA Employment Records in connection with the litigation entitled *In re USG Corporation*, United States District Court for the District of Delaware, Case Nos. 01-02094 (JKF), 04-1559 (JFC) and 04-1560 (JFC) ("USG Litigation")

DURATION:

This authorization shall become effective immediately and shall expire upon final resolution of the USG Litigation identified above.

SIGNATURE:

Signature      Date

If the Authorization is signed by a Personal Representative of the individual, a description of such representative's authority to act for the individual.

Form Approved
OMB No. 0960-0525

# REQUEST FOR SOCIAL SECURITY EARNINGS INFORMATION

\*Use This Form If You Need

1. **Certified/Non-Certified Detailed Earnings Information**

   Includes periods of employment or self-employment and the names and addresses of employers.

   OR

2. **Certified Yearly Totals of Earnings**

   Includes total earnings for each year but does not include the names and addresses of employers.

---

**DO NOT USE THIS FORM FOR:**

Non-certified yearly totals of earnings

This service is free to the public.

These totals can be obtained by calling 1-800-772-1213 to receive Form SSA-7004, Request for Earnings and Benefit Estimate Statement.

---

**PRIVACY ACT NOTICE:** We are authorized to collect this information under section 205 of the Social Security Act, and the Federal Records Act of 1950 (64 Stat. 583). It is needed so we can identify your records and prepare the statement you request. You do not have to furnish the information, but failure to do so may prevent your request from being processed.

**PAPERWORK REDUCTION ACT:** This information collection meets the clearance requirements of 44 U.S.C. §3507, as amended by Section 2 of the Paperwork Reduction Act of 1995. You are not required to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take you about 11 minutes to read the instructions, gather the necessary facts, and answer the questions.

## INFORMATION ABOUT YOUR REQUEST

• **How Do I Get This Information?**

   You need to complete the attached form to tell us what information you want.

• **Can I Get This Information For Someone Else?**

   Yes, if you have their written permission. For more information, see page 3.

• **Who Can Sign On Behalf Of The Individual?**

   The parent of a minor child, or the legal guardian of an individual who has been declared legally incompetent, may sign if he/she is acting on behalf of the individual.

• **Is There A Fee For This Information?**

   1. **Certified/Non-Certified Detailed Earnings Information**

      Yes, we usually charge a fee for detailed information. In most cases, this information is used for purposes NOT directly related to Social Security such as for a private pension plan or personal injury suit. The fee chart on page 3 gives the amount of the charge.

      Sometimes, there is no charge for detailed information. If you have reason to believe your earnings are not correct (for example, you have previously received earnings information from us

and it does not agree with your records), we will supply you with more detail for the period in question. Occasionally, earnings amounts are wrong because an employer did not correctly report earnings or earnings are credited to the wrong person. In situations like these, we will send you detailed information, at no charge, so we can correct your record.

Be sure to show the year(s) involved on the request form and explain why you need the information. If you do not tell us why you need the information, we will charge a fee.

We will certify the detailed earnings information for an additional fee of $15.00. Certification is usually not necessary unless you plan to use the information in court.

2. **Certified Yearly Total of Earnings**

   Yes, there is a fee of $15 to certify yearly totals of earnings. Cetification is usually not necessary unless you plan to use the information in court.

3. **Method of Payment**

   Enclose a check or money order for the entire fee required. Payment can also be made by credit card. To do so, complete page 4 of this form and return it with your request form.

---

Form SSA-7050-F4 (1-2004)   EF (1-2004)
Destroy prior editions

## REQUEST FOR SOCIAL SECURITY EARNINGS INFORMATION

1. From whose record do you need the earnings information?

Print the Name, Social Security Number (SSN), and date of birth below.

Name _____

Social Security Number _____

Other Name(s) Used
(Include Maiden Name) _____

Date of Birth
(Mo/Day/Yr) _____

2. What kind of information do you need?

☐ **Detailed Earnings Information**
(If you check this block, tell us below
why you need this information.)

For the period(s)/year(s): _____

_____

☐ **Certified Total Earnings For Each Year.**
(Check this box only if you want the information
certified. Otherwise, call 1-800-772-1213 to
request Form SSA-7004, Request for Earnings
and Benefit Estimate Statement)

For the year(s): _____

3. If you owe us a fee for this detailed earnings information, enter the amount due
using the chart on page 3 · · · · · · · · · · · · · · · · · · · · · · · · · · · · **A. $** _____

Do you want us to certify the information?  ☐ Yes  ☐ No

If yes, enter $15.00 · · · · · · · · · · · · · · · · · · · · · · · · · · · · **B. $** _____

ADD the amounts on lines A and B, and
enter the TOTAL amount · · · · · · · · · · · · · · · · · · · · · · · · · · **C. $** _____

- You can pay by CREDIT CARD by completing and returning the form on page 4, or
- Send your CHECK or MONEY ORDER for the amount on line C with the request
  and make check or money order payble to "Social Security Administration"
- DO NOT SEND CASH.

4. I am the individual to whom the record pertains (or a person who is authorized to sign on behalf of that
individual). I understand that any false representation to knowingly and willfully obtain information from
Social Security records is punishable by a fine of not more than $5,000 or one year in prison.

SIGN your name here
(Do not print)  > _____    Date _____

Daytime Phone Number _____
(Area Code)  (Telephone Number)

5. Tell us where you want the information sent. (Please print)

Name _____   Address _____

City, State & Zip Code _____

6. Mail Completed Form(s) To:

**Social Security Administration**
**Division of Earnings Record Operations**
P.O. Box 33003
Baltimore Maryland  21290-3003

Exception: If using private contractor (e.g., FedEx) to mail form(s), use:

**Social Security Administration**
**Division of Earnings Record Operations**
300 N. Greene St.
Baltimore Maryland  21290-0300

Form SSA-7050-F4 (1-2004) EF (01-2004)                    2

## REQUEST FOR SOCIAL SECURITY EARNINGS INFORMATION

How Much Do I Have to Pay For Detailed Earnings?

1.  Count the number of years for which you need detailed earnings information. Be sure to add in both the first and last year requested. However, do not add in the current calendar year since this information is not yet available.

2.  Use the chart below to determine the correct fee.

| Number of Years Requested | Fee | Number of Years Requested | Fee | Number of Years Requested | Fee |
|---|---|---|---|---|---|
| 1 | $15.00 | 15 | $43.75 | 28 | $64.50 |
| 2 | 17.50 | 16 | 45.50 | 29 | 66.00 |
| 3 | 20.00 | 17 | 47.25 | 30 | 67.50 |
| 4 | 22.50 | 18 | 49.00 | 31 | 68.75 |
| 5 | 25.00 | 19 | 50.75 | 32 | 70.00 |
| 6 | 27.00 | 20 | 52.50 | 33 | 71.25 |
| 7 | 29.00 | 21 | 54.00 | 34 | 72.50 |
| 8 | 31.00 | 22 | 55.50 | 35 | 73.75 |
| 9 | 33.00 | 23 | 57.00 | 36 | 75.00 |
| 10 | 35.00 | 24 | 58.50 | 37 | 76.25 |
| 11 | 36.75 | 25 | 60.00 | 38 | 77.50 |
| 12 | 38.50 | 26 | 61.50 | 39 | 78.75 |
| 13 | 40.25 | 27 | 63.00 | 40 | 80.00 |
| 14 | 42.00 | | | | |

**For Requests Over 40 Years, Please Add 1 Dollar for Each Additional Year.**

- **Whose Earnings Can Be Requested**

    **1. Your Earnings**

    You can request earnings information from your own record by completing the attached form; we need your handwritten signature. If you sign with an "X", your mark must be witnessed by two disinterested persons who must sign their name and address.

    **2. Someone Else's Earnings**

    You can request earnings information from the record of someone else if that person tells us in writing to give the information to you. This writing or "authorization" must be presented to us within 60 days of the date it was signed by that person.

    **3. A Deceased Person's Earnings**

    You can request earnings information from the record of a deceased person if you are the legal representative of the estate, a survivor (that is, the spouse, parent, child, divorced spouse of divorced parent), or an individual with a material interest (example-financial) who is an heir at law, next of kin, beneficiary under the will or donee of property of the decedent.

    Proof of death must be included with your request. Proof of appointment as representative or proof of your relationship to the deceased must also be included.

**YOU CAN MAKE YOUR PAYMENT BY CREDIT CARD**

As a convenience, we offer you the option to make your payment by credit card. However, regular credit card rules will apply.
You may also pay by check or money order.

Please fill in all the information below and return this form along with your request to:

    Social Security Administration
    Division of Earnings Record Operations
    P.O. Box 33003
    Baltimore Maryland  21290-3003

**Exception:**
If using private contractor (e.g., FedEx) to mail form(s), use:

    Social Security Administration
    Division of Earnings Record Operations
    300 N. Greene St.
    Baltimore Maryland  21290-0300

| Note: Please read Paperwork/Privacy Act Notice |
| --- |

| | |
| --- | --- |
| **CHECK ONE** | ☐ Visa  ☐ American<br>☐ MasterCard  ☐ Discover  ☐ Diners Card |
| **Credit Card Holder's Name**<br>(Enter the name from the credit card) | First Name, Middle Initial, Last Name |
| **Credit Card Holder's Address** | Number & Street<br>City, State, & Zip Code |
| **Daytime Telephone Number** | Area Code    Telephone Number |
| **Credit Card Number** | |
| **Credit Card Expiration Date** | Month    Year |
| **Amount Charged** | |
| **Credit Card Holder's Signature** | |
| **DO NOT WRITE IN THIS SPACE**<br>**OFFICE USE ONLY** | Authorization<br><br>Name    Date<br><br>Remittance Control # |

**PRIVACY ACT NOTICE**

The Social Security Administration (SSA) has authority to collect the information requested on this form under section 205 of the Social Security Act. Giving us this information is voluntary. You do not have to do it. We will need this information only if you choose to make payment by credit card. You do not need to fill out this form if you choose another means of payment (for example, by check or money order).

If you choose the credit card payment option, we will provide the information you give us to the banks handling your credit card account and SSA's account. We may also provide this information to another person or government agency to comply with federal laws requiring the release of information from our records. You can find these and other routine uses of information provided to SSA listed in the Federal Register. If you want more information about this, you may call or write any Social Security Office.

Form SSA-7050-F4 (1-2004)  EF (1-2004)    4

## APPENDIX C
## COMPANY HISTORY ABOUT PRODUCTS CONTAINING ASBESTOS

United States Gypsum Company is a subsidiary of USG Corporation. United States Gypsum Company was formed in 1901 and is in the business of manufacturing and selling building products. Some of the building products manufactured and sold by United States Gypsum Company from 1920 through 1978 contained asbestos. Products that may have contained asbestos during this period include some wall and ceiling plasters, spray fireproofing, fire-rated ceiling tiles, decorative textures, joint compound, and industrial insulation. Most of these products did not contain asbestos at all times from 1920 through 1978. No product contained asbestos as part of the product formulation after 1978.

A list of trade names of products manufactured by United States Gypsum Company during the period from 1920 through 1978 that may have contained asbestos includes, but may not be limited to, the following:

A-B Tex Texture Paint
ACOUSTONE 120 Ceiling Tiles
ACOUSTONE 180 Ceiling Tiles
AUDICOTE Acoustical Plaster
Aggregated Spray Finish, White
CHINA GLAZE Siding
Column Fire Board
Concrete Ceiling Texture
DURABOND Joint Compound
Exterior Texture Wallboard Finish
Fire Door Coreboard
Hi-LITE Acoustical Plaster
IMPERIAL "QT" (Spray) Texture Finish
KEMIDOL Joint Compound
K-FAC 19 Block Insulation
K-FAC Block Insulation
MAYFAIR Shake Siding
Multi-Purpose Texture Finish
ORIENTAL Exterior Finish Stucco
ORIENTAL Interior Finish
PAC-TEX Texture Paint
PERF-A-TAPE Joint Compound
PYROBAR Mortar Mix
USG "QT" Simulated Acoustical Spray Texture
Ready-Mixed Imperial "QT" Simulated Acoustical
Spray Texture
RED TOP Acoustical Plaster
RED TOP BONDCRETE Plaster-Basecoat
RED TOP Cover Coat Finish Plaster

RED TOP Firecode D Plaster
RED TOP Firecode "V" Plaster
RED TOP Gypsum Plaster
RED TOP Patching Plaster
RED TOP Sanded Wall Plaster
RED TOP Strucolite Plaster
RED TOP Trowel Finish
RED TOP Wood Fiber Plaster
REGENCY Shingles
SABINITE Acoustical Plaster
SHEETROCK Radiant Heat Filler-Machine Application
SHEETROCK Radiant Heat Simulated Acoustical Texture
Simulated Acoustical Spray Texture/Finish
Special Texture Paint
SPRAYDON Powercote
SPRAYDON Standard A
SPRAYDON Standard G
STRUCTOLITE Plaster
Superhard Spray Texture Finish
SUPERTITE Roofing Products
TEXOLITE Block Filler
TEXOLITE Dry Fill
TEXOLITE Drywall Surfacer
TEXTONE Texture Finish
THERMALUX Radiant Heating Panels
USG Joint Compound
Wainscoat Trowel Finish Plaster

United States Gypsum Company also manufactured other products in the following generic categories that may have contained asbestos:

Adhesives                    Joint Compound
Asbestos Board               Pipecovering
Asbestos Paper               Roofing Products
Insulating Cement            Siding Shingles

**USG Corporation** was formed in 1985 and is the parent company of various debtors in this chapter 11 proceeding. USG Corporation has never manufactured or sold any building products. Various subsidiaries of USG Corporation manufactured or sold building products that contained asbestos at various times in the past.

**L&W Supply Company,** a subsidiary of USG Corporation, is a distributor of building materials manufactured by United States Gypsum Company and other companies. L&W Supply Company was created in 1971 as a subsidiary of United States Gypsum Company and, since 1985, has been a subsidiary of USG Corporation. In the 1970s, some of the products distributed by L&W Supply Corporation, primarily joint compound and roofing materials, contained asbestos. Since its formation in 1971, L&W Supply Company distribution centers have operated under different business names in different locations. A list of these business names is available on the USG claims website at *www.usgclaims.com*.

**Beadex Manufacturing, LLC,** a subsidiary of United States Gypsum Company, manufactured and sold joint compound containing asbestos from 1963 through 1978. Distribution of products that contained asbestos is believed to have been limited to Washington, Oregon, Idaho, Alaska, and possibly Colorado.

**USG Interiors, Inc.,** a subsidiary of USG Corporation, was formed in 1986. USG Interiors has manufactured mineral fiber ceiling tiles and suspension systems, mineral fiber insulation, access floors, and wall partition systems. None of the products manufactured or sold by USG Interiors contained asbestos as part of the product formulation.

# APPENDIX D
## STANDARD OCCUPATIONAL CLASSIFICATION CODES[1]

**Building and Grounds Cleaning and Maintenance Occupations**

1    Janitors and Cleaners, Except Maids and Housekeeping Cleaners

### Office and Administrative Support Occupations

2    Office Clerks, General
3    Shipping, Receiving, and Traffic Clerks
4    Stock Clerks and Order Fillers

### Construction and Extraction Occupations

5    Asbestos Removal Workers[2]
6    Boilermakers
7    Brickmasons and Blockmasons
8    Carpenters
9.   Cement Masons and Concrete Finishers
10.  Construction and Building Inspectors
11.  Continuous Mining Machine Operators
12.  Drywall and Ceiling Tile Installers
13   Drywall Finishers (Tapers)
14   Electricians
15.  Elevator Installer & Repairers
16   First-Line Supervisors/Managers of Construction Trades and
     Extraction Workers
17.  Floor Layers, Except Carpet, Wood, and Hard Tiles
18.  Floor Sanders and Finishers
19   Glaziers
20   Hazardous Materials Removal Workers
21   Helpers – Brickmasons, Blockmasons, Stonemasons, and Tile and
     Marble Setters
22.  Helpers – Painters, Paperhangers, Plasterers, and Stucco Masons,
23.  Helpers – Pipelayers, Plumbers, Pipefitters, and Steamfitters
24   Helpers – Electricians
25   Helpers – Extraction Workers
26   Highway Maintenance Worker
27   Insulation Workers
28   Laborers
29   Mine Cutting and Channeling Machine Operators
30   Miner[2]
31   Operating Engineers and Other Construction Equipment Operators
32   Painters, Construction and Maintenance
33   Paperhangers
34   Pipelayers
35   Plasterers and Stucco Masons
36.  Plumbers, Pipefitters, and Steamfitters
37.  Rail-Track Laying and Maintenance Equipment Operators
38   Reinforcing Iron and Rebar Workers
39   Roofers
40   Sandblasters[2]
41   Service Unit Operators. Oil, Gas, and Mining
42.  Sheet Metal Workers
43   Stonemasons
44.  Structural Iron and Steel Workers
45   Terrazzo Workers and Finishers

### Installation, Maintenance, and Repair Occupations

46   Automotive Service Technicians and Mechanics
47   Boilerhouse Mechanics[2]
48   Bus and Truck Mechanics and Diesel Engine Specialists
49   Electrical and Electronics Repairers, Powerhouse, Substation, and
     Relay
50   Heating, Air Conditioning, and Refrigeration Mechanics and Installers
51   Industrial Machinery Mechanics

52   Maintenance and Repair Workers, General
53   Maintenance Workers, Machinery
54   Millwrights
55   Mobile\Heavy Equipment Mechanics, Except Engines
56   Outdoor Power Equipment and Other Small Engine Mechanics
58   Refractory Materials Repairers, Except Brickmasons
59   Riggers
60   Valve Repairers[1]

### Production Occupations

61   Cabinetmakers and Bench Carpenters
62.  Chemical Equipment Operators and Tenders
63   Coating, Painting, and Spraying Machine Sellers, Operators,
     and Tenders
64.  Cutting, Punching, and Press Machine Setters, Operators, and
     Tenders, Metal and Plastic
65   Engine and Other Machine Assemblers
66   Foundry Mold and Coremakers
67   Gas Plant Operators
68.  Lay-Out Workers, Metal and Plastic
69   Machinists
70.  Metal-Refining Furnace Operators and Tenders
71   Mixing and Blending Machine Setters, Operators, and Tenders
72   Molders, Shapers, and Casters, Except Metal and Plastic
73   Petroleum Pump System Operators, Refinery Operators, and
     Gaugers
74.  Pourers and Casters, Metal
75.  Power Plant Operators
76.  Sawing Machine Setters, Operators, and Tenders, Wood
77.  Stationary Engineers and Boiler Operators
78.  Structural Metal Fabricators and Fitters
79   Textile Cutting Machine Setters, Operators, and Tenders
80   Textile Knitting and Weaving Machine Setters, Operators, and
     Tenders
81   Textile Winding, Twisting, and Drawing Out Machine Setters,
     Operators, and Tenders
82   Tool and Die Makers
83   Welders, Cutters; Solderers. and Brazers
84   Welders, Production Line[2]
85   Welding, Soldering, and Brazing Machine Setters, Operators
     And Tenders

### Transportation and Material Moving Occupations

86   Cleaners of Vehicles and Equipment
87   Crane and Tower Operators
88.  Industrial Truck and Tractor Operators
89   Laborers and Freight, Stock, and Material Movers, Hand
90   Loading Machine Operators, Underground Mining
91   Locomotive Engineers
92   Locomotive Firers
93.  Pump Operators, Except Wellhead Pumpers
94.  Rail Yard Engineers, Dinkey Operators, and Hostlers
95   Railroad Conductors and Yardmasters
96.  Railroad Car Inspectors[2]
97.  Sailors and Marine Oilers
98.  Ship Engineers
99.  Shuttle Car Operators
100  Tank Car, Truck, and Ship Loaders
101  Transportation Inspectors
102  Truck Drivers, Heavy and Tractor Trailer
103  Truck Drivers, Light, or Delivery Service

**104. Other (please specify)**

---

[1] Codes are based on U S Department of Labor, Bureau of Labor Statistics, List of Standard Occupation Classifications, found at http://stats_bls.gov/oes/1999/oes_stu.htm unless otherwise indicated

[2] Codes are based on U S Department of Labor, Dictionary of Occupational Titles. Fourth Edition. Revised 1991 found at http://www.oalj.dol.gov/libdot.htm

# APPENDIX E
## STANDARD INDUSTRY CLASSIFICATION CODES[3]

A    Agriculture, Forestry & Fishing

B 1  Mining & Milling (asbestos)
B 2  Mining & Milling (non-asbestos)

C.   Construction

D 1   Manufacturing – Asbestos Containing Products
D 2   Manufacturing – Boilers
D 3   Manufacturing – Chemicals
D 4   Manufacturing – Insulation (asbestos containing)
D 5   Manufacturing – Insulation (non-asbestos containing)
D 6   Manufacturing – Petroleum Refining and Related Industries
D 7   Manufacturing – Plastic Products
D 8   Manufacturing – Rubber
D 9   Manufacturing – Textiles (asbestos containing)
D 10  Manufacturing – Textiles (non-asbestos containing)
D 11  Manufacturing – Transportation Equipment (other than shipbuilding or shipbreaking)
D 12  Manufacturing – Transportation Equipment (shipbuilding or shipbreaking)
D 13  Manufacturing – Other (please specify product)

E 1  Transportation – Electric, Gas, and Sanitary Services
E 2  Transportation – Railroad
E 3  Transportation – Water
E 4  Transportation – Other (please specify)

F.   Wholesale Trade

G.   Retail Trade

H.   Finance, Insurance, and Real Estate

I 1  Services – Automotive Repair
I 2  Services – Miscellaneous Repair
I 3  Services – Other (please specify)

J    Public Administration

K    Military (Non-Navy)

L    Navy

M    Other (please specify)

[3] Codes are based on OSHA, U S  Department of Labor, Standard Industry Classifications, Division Structure, at http://www.osha.gov/oshstats/sicser.html