**EXHIBIT C**

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE

IN RE:                              . Case No.  01-1139 (JFK)
                                    .
                                    .
  W.R. GRACE & CO.,                 . Courtroom A, 54th Floor
                                    . U.S. Steel Tower
                                    . Pittsburgh, PA
              Debtor.               .
                                    . July 19, 2005
. . . . . . . . . . . . . . . . . . . 8:42 a.m.

                       TRANSCRIPT OF HEARING
               BEFORE HONORABLE JUDITH K. FITZGERALD
                 UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:            Pachulski, Stang, Ziehl, Jones &
                            Weintraub, P.C.
                            By:  DAVID CARICKHOFF, ESQ.
                            919 North Market Street, 16th Fl.
                            Wilmington, Delaware  19899

                            Kirkland & Ellis LLP
                            By:  DAVID BERNICK, ESQ.
                                 MICHELLE H. BROWDY, ESQ.
                                 JANET BAER, ESQ.
                                 BARBARA HARDING, ESQ.
                            200 East Randolph Drive
                            Chicago, Illinois  60601



Audio Operator:             Cathy Younker

   Proceedings recorded by electronic sound recording, transcript
                 produced by transcription service.
```

**J&J COURT TRANSCRIBERS, INC.**
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net

(609) 586-2311   Fax No.  (609) 587-3599

1   respect to whether or not they have a claim, but it still has
2   to be liquidated.  Now, it's going to be liquidated under the
3   bankruptcy processes or trust processes, however, that's going
4   to work out.  Hopefully, people who are not impaired are not
5   getting paid large dollars to come into the Trust and trial
6   claims.  And, you know, 118,000 --
7            MR. LOCKWOOD:  Well, that's true.  I mean that's why
8   settlement values are used.  We could in every one of these
9   cases, Your Honor, say, look, settlement value -- we could say
10  we adopt your crazy rule 408 position, and that settlements
11  aren't admissible, and so what have we got to do look?  Well,
12  jury verdicts.  Well, what's the -- well, there's only about,
13  you know, 20 or 80 or 100 or whatever of them, and they're all
14  over the lot, but if you average them out, sure, Grace will
15  have won 50 or 60 or 70 percent of the cases.  I don't know, a
16  good -- much more than the voluntary dismissals in the
17  settlement process.  But the average price for both the cases
18  that they win and they lose that arises from the verdicts they
19  got and the ones that they lost is way higher and --
20           THE COURT:  But, look, all you're arguing for, from
21  what I can see, is this.  If the debtor wants to produce its
22  evidence based on one model, and you want to produce your
23  evidence based on another, do it.  I'll figure out which model
24  has better credibility and makes more sense and doing
25  adjudication.  I mean that's what my job is.  Yours is to

172

1  produce the evidence, the way you think it should come in, and
2  my job is to make rulings based on the evidence you produce,
3  and that's how we'll go.
4             MR. LOCKWOOD:  We accept that, Your Honor --
5             THE COURT:  Okay.
6             MR. LOCKWOOD:  -- but this all goes back to the
7  questionnaire, and what information they're entitled to seek
8  and why they're entitled to seek it.  They are asking for an
9  incredibly burdensome questionnaire that can by definition --
10 the vast bulk of the information contained in it relates to the
11 individual claim.  If what we're doing here is an aggregate
12 estimation, and we're not, as they profess, disallowing claims,
13 and we're not asking for approval of a proof of claim -- I'll
14 tell you their questionnaire is a heck of a lot more detailed
15 than the Manville proof of claim form.  I mean Manville didn't
16 ask about who else's products you were exposed to or -- I mean
17 it doesn't ask for any of this kind of stuff.
18            THE COURT:  Well, we haven't gotten into that detail
19 yet.  I'm not sure that some of that stuff is really relevant.
20 You know, it may be in that if a specific individual plaintiff
21 knows that he or she was exposed to, for example, a Manville
22 product and knows that for a fact for whatever reason, doesn't
23 know whether they were really exposed to a Grace product, but
24 has a reason to surmise that they were, yes, I think it's
25 relevant to say yes, I was exposed to a Manville product.  I

1  disallowed -- again, in my, you know, perfect analysis, and,
2  therefore, the Trust funding doesn't have to include those
3  claims. That's the whole purpose. It's just to get to a
4  bottom line.
5           MR. BERNICK: If I can raise just a point of process,
6  we're now past the amount of time that I took, and I know that
7  Mr. Lockwood was very cautious and said that he wouldn't take
8  anymore time. He couldn't say that he wouldn't take more time
9  than I do. I know that Mr. Frankel is also anxious to address
10 the Court. I know that folks are interested in talking about
11 exclusivity, and if we run into your 4:00 call --
12          THE COURT: It's five I believe.
13          MR. BERNICK: Okay. In any event, I really think
14 that it would be good to know what it is that Your Honor really
15 intends to cover today and maybe hear from other people,
16 because all this is is just a rehash of what's in the briefs.
17          THE COURT: Yes. Look, my --
18          MR. LOCKWOOD: Your Honor, I --
19          THE COURT: My bottom line position is I think a
20 questionnaire, to the extent that the debtor or the other
21 parties want to do discovery is fine. I've said that before.
22 You could do it by interrogatories. You can do it by
23 questionnaires. There is really not much difference. Exactly
24 what use this information will be to extrapolating the evidence
25 to predict the numbers of future claims and at what disease

295

**CERTIFICATION**

We, TAMMY DeRISI and PATRICIA C. REPKO, court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter to the best of our ability.

/s/ Tammy DeRisi                    Date:  July 28, 2005
TAMMY DeRISI


/s/ Patricia C. Repko
PATRICIA C. REPKO

J&J COURT TRANSCRIBERS, INC.

**J&J COURT TRANSCRIBERS, INC.**