# EXHIBIT G

December 9, 1998

Paul S. Lefkowitz, Esq.
Climaco, Climaco, Lefkowitz
  & Garofoli Co., L.P.A.
Ninth Floor, The Halle Building
1228 Euclid Avenue
Cleveland, Ohio  44115-1802

Settlement Agreement with
Owens Corning and Fibreboard Corporation

Dear Mr. Lefkowitz:

   This will set forth the agreement we have reached concerning the
resolution by Owens Corning ("OC") and by Fibreboard Corporation ("Fibreboard") of
certain pending and future asbestos personal injury and wrongful death cases in which the
Plaintiffs are, or shall in the future be, represented by you and/or by your firm
(individually and collectively, "Plaintiffs' Counsel"). Capitalized terms used herein
without definition shall have the meaning specified in Appendix A.

   1. Pending Cases. (a) Attached hereto as Schedule A is a complete list of the
pending cases to be settled with OC and Fibreboard under this Agreement (the "Schedule
A Cases"), including, for each case, the name of the Plaintiff, his or her social security
number, the civil action number, jurisdiction of suit, the asbestos-related disease or
condition for which the Plaintiff seeks compensation, whether his or her case is pending
against OC or Fibreboard or both, and the amount of the settlement payment to be made
to the Plaintiff (except that the amount of the settlement payment may be provided by a
supplemental Schedule A delivered by Plaintiffs' Counsel on or before February 1, 1999).
Schedule A shall include all asbestos personal injury or wrongful death cases pending in
any court in the United States as of November 19, 1998 in which the Plaintiff is
represented by your firm, together with any unfiled cases that were under contract in your



D:\Helen\Kim\Tab 84.wpd

D:\Helen\Kim\Tab 84.wpd

DP-NSPZ 001878

1660001

Paul S. Lefkowitz, Esq.                2                December 9, 1998

office as of November 19, 1998 and had theretofore received a diagnosis of asbestos-related disease. Schedule A shall not include as to OC, any cases previously settled by, or dismissed against, OC, nor shall it include as to Fibreboard, any cases previously settled by, or dismissed against, Fibreboard.

(b)  The disease mix of the Schedule A Cases is approximately as follows:

| Disease | Number of Cases |
|---|---|
| Mesothelioma | 32 |
| Lung Cancer | 64 |
| Other Cancer | 4 |
| Asbestos-related Non-malignant Conditions | 2249 |
| TOTAL | 2349 |

(c)  As used herein, the term "Plaintiff(s)" shall refer to the individual allegedly suffering injury or death as a result of his or her exposure to asbestos-containing OC or Fibreboard products. If more than one lawsuit has been or shall be filed by or on behalf of a single Plaintiff or his estate or heirs, or asserting spousal or familial loss of consortium or other derivative claims in respect of that Plaintiff, all such lawsuits shall be treated as a single case for purposes of this Agreement. Except as expressly provided for in this Agreement, neither OC nor Fibreboard shall be required to make more than one payment in respect of each Plaintiff, provided, however, that the settlement of a Plaintiff's claim shall not foreclose the claim of the Plaintiff's parent, child or spouse for bodily injury resulting from such parent's, child's or spouse's own exposure to asbestos.

2.  Settlement Payments for Pending Cases. (a)  Settlement Amounts. Subject to satisfaction by the individual Plaintiffs of the requirements of Sections 4 and 5 hereof, the Schedule A Cases shall be settled for the combined aggregate amount of $14,673,800. Specific case allocations shall be made by Plaintiffs' Counsel, subject to the approval of OC and Fibreboard, which approval shall not be unreasonably withheld. In the aggregate, these settlement payments shall be apportioned 70% to OC and 30% to Fibreboard as follows:

DP-NSP2 001879

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

Paul S. Lefkowitz, Esq.                    3                    December 9, 1998

<u>Owens Corning</u>                              <u>Fibreboard</u>

$10,271,660                              $4,402,140

In the event that an individual Plaintiff(s) fails to satisfy the requirements of Sections 4 and/or 5 hereof or becomes a Nonparticipating Plaintiff, the settlement amounts set forth opposite such Plaintiff's name(s) on Schedule A shall be deducted from the aggregate settlement payments set forth above.

(b)  <u>Payment Schedule</u>.  Subject to satisfaction by the individual Plaintiffs of the requirements of Sections 4 and 5 hereof, settlement payments for the Schedule A Cases shall be made according to the following schedule:

| <u>Payment Date</u> | <u>OC</u> | <u>Fibreboard</u> |
|---|---|---|
| November 15, 1999 | $5,135,830 | $2,201,070 |
| November 15, 2000 | $5,135,830 | $2,201,070 |

<u>provided, however</u>, (A) that no settlement payment shall be due for any individual Plaintiff until 60 days after the Plaintiff has provided the releases required under Sections 5(a)(i) and 5(b)(i), and (B) that no settlement payments shall be due from Fibreboard until 90 days after the Access Date (as defined in Section 7(b)(ii)).

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

DP-MS92.001880

1660003



Paul S. Lefkowitz, Esq.                    4                    December 9, 1998

3. <u>Additional Settlement Payments</u>. In addition to the settlement payments set forth in Section 2(a) and on Schedule A, all Schedule A Plaintiffs qualifying for compensation under this Agreement for an Asbestos-related Nonmalignant Condition shall be entitled to seek additional compensation from OC and/or Fibreboard under the terms of this Agreement in the event that they develop an asbestos-related Mesothelioma, Lung Cancer or Other Cancer and satisfy the requirements of Sections 4 and 5 pertaining thereto. Any such claims for additional compensation shall be resolved on the same terms and conditions (including, without limitation, settlement payment amounts and payment schedule) as are applicable to Plaintiffs with Future Cases in the same disease category. This section shall provide the sole and exclusive remedy of Plaintiffs initially receiving compensation hereunder for an Asbestos-related Nonmalignant Condition for obtaining additional compensation from OC and/or Fibreboard in the event of their development of a more serious asbestos-related disease or condition. No Plaintiff may receive more than one payment under this section for an asbestos-related malignancy.

4. <u>Disease Definitions</u>. For purposes of the classification of cases for payment under this Agreement, the following terms shall have the following meanings. Sections 4(a)(ii), 4(b)(i), 4(c)(ii), and 4(d) through 4(f) pertain only to Future Cases; the definition of Asbestos-related Nonmalignant Condition set forth in Section 4(g) applies only to Schedule A Cases.

(a) <u>Mesothelioma</u>. (i) In order to qualify for compensation under this Agreement in the Mesothelioma disease category, a Plaintiff must present written medical confirmation from a qualified physician that he or she has or had a primary pleural or peritoneal malignant mesothelioma and that the Plaintiff's mesothelioma is causally *related* to asbestos exposure. Absent exceptional circumstances, a diagnosis of mesothelioma may only be made by a Board-certified Pathologist.

(ii) The parties recognize that the fair settlement value of future mesothelioma claims may vary substantially depending on the facts of the particular case. The Mesothelioma-Extraordinary Claims disease category is designed to recognize these individual variations and to make fair upward or downward adjustments in the settlement payments for claims whose individual circumstances warrant such adjustment. In each calendar year starting with 2001, Plaintiffs' Counsel and OC/Fibreboard may each designate up to three Plaintiffs (up to two Plaintiffs each if the total number of Plaintiffs qualifying for compensation under this Agreement for Mesothelioma for such calendar year is fewer than 12) for negotiation in the Mesothelioma-Extraordinary Claims disease category. In determining whether a case is properly treated in the Mesothelioma-Extraordinary Claims

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

DP-NSF2 001881

Paul S. Lefkowitz, Esq.                    5                    December 9, 1998

disease category, the parties shall consider such factors as the Plaintiff's age at diagnosis, whether the Plaintiff is living or deceased at the time of settlement processing, the Plaintiff's number of dependents, the amount of the Plaintiff's claim for lost wages and medical expenses, the Plaintiff's actual or potential recovery from other defendants, and the extent of the Plaintiff's exposure to asbestos-containing OC or Fibreboard products. For example, a paradigm case for treatment as a Mesothelioma-Extraordinary Claim at the high end of the settlement range would be a living Plaintiff less than 55 years of age on date of diagnosis with several dependents and a substantial wage loss claim. On the other hand, a paradigm case for treatment as a Mesothelioma-Extraordinary Claim at the low end of the settlement range would be a deceased 82 year old Plaintiff with no dependents and no wage loss claim. For another example, a Plaintiff whose sole exposure to asbestos fibers was to asbestos-containing OC and Fibreboard products might be suitable for treatment as a Mesothelioma-Extraordinary Claim at the high end of the settlement range. On the other hand, a Plaintiff with limited exposure to asbestos-containing OC or Fibreboard products barely satisfying the requirements of Sections 5(a)(iii) or 5(b)(iii) might be appropriate for treatment as a Mesothelioma-Extraordinary Claim at the low end of the settlement range.

The settlement range for Mesothelioma-Extraordinary Claims shall be no less than $40,000 and no more than $275,000.

In the event that a dispute arises whether a case is properly classified in the Mesothelioma-Extraordinary Claims disease category, or in the event the parties are unable to reach agreement as to the settlement payment for a Mesothelioma-Extraordinary Claim, the matter shall be resolved by arbitration as provided in Section 12, subject to the settlement payment ranges set forth in this subsection.

(b) Lung Cancer. (i) In order to qualify for compensation under this Agreement as a Lung Cancer--Level One, a Plaintiff must (x) satisfy the requirements for qualification as a Lung Cancer--Level Two under Section 4(b)(ii) and (y) present medical evidence meeting the requirements of Appendix A of either (1) an X-ray reading of 1/1 or higher on the ILO scale from a Certified B-reader acceptable to OC and Fibreboard, or (2) pathological evidence of asbestosis (as defined in Section 2(c) of Appendix A).

(ii) In order to qualify for compensation under this Agreement as a Lung Cancer--Level Two or as a Schedule A Lung Cancer Case, a Plaintiff must present written medical confirmation from a qualified physician establishing that the Plaintiff suffers

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

DP-NSP2 001882

Paul S. Lefkowitz, Esq.                6                December 9, 1998

from a primary cancer of the lung and that the Plaintiff's cancer is causally related to asbestos exposure.

(c) Other Cancer. (i) Other Cancer shall mean asbestos-related colon cancer, asbestos-related esophageal cancer, asbestos-related laryngeal cancer or asbestos-related gastrointestinal cancer. No other alleged asbestos-related cancer shall be compensable as an Other Cancer under this Agreement.

(ii) In order to qualify for compensation under this Agreement as an Other Cancer--Level One, a Plaintiff must (x) satisfy the requirements for qualification as an Other Cancer--Level Two under Section 4(c)(iii) and (y) present medical evidence meeting the requirements of Appendix A of either (1) an X-ray reading of 1/1 or higher on the ILO scale from a Certified B-reader acceptable to OC and Fibreboard, or (2) pathological evidence of asbestosis (as defined in Section 2(c) of Appendix A).

(iii) In order to qualify for compensation under this Agreement as an Other Cancer--Level Two or as a Schedule A Other Cancer, a Plaintiff must present written medical confirmation from a qualified physician establishing that the Plaintiff suffers from a primary Other Cancer (as defined in Section 4(c)(i)) and that the Plaintiff's cancer is causally related to asbestos exposure.

(d) Impaired Nonmalignancy. In order to qualify for compensation under this Agreement for Impaired Nonmalignancy, a Plaintiff must satisfy either

(i) the requirements for proof of Impaired Nonmalignancy set forth in Appendix A hereto; or

(ii) the requirements for qualification as an Exceptional Claim set forth in Section 4(e) hereof.

(e) Exceptional Claims. The Exceptional Claims disease category is designed to cover Plaintiffs with Future Cases who are unable to satisfy the requirements for Impaired Nonmalignancy set forth in Appendix A but who are nonetheless able, through comparably reliable evidence, to demonstrate that they have an asbestos-related impairment, that is substantially comparable to that of individuals who would satisfy the requirements for Impaired Nonmalignancy. The following are non-exclusive examples of the types of claims that might qualify for compensation under this Agreement as Exceptional Claims:

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

1660006

Paul S. Lefkowitz, Esq.                    7                    December 9, 1998

(i)  A Plaintiff who demonstrates a decrease of more than 20 percent of Predicted Value in Forced Vital Capacity or Total Lung Capacity over a period of three years or less as determined by at least two valid Pulmonary Function Testing examinations, for which test results there is no probable causal explanation other than exposure to asbestos; or

(ii)  a Plaintiff who meets the requirements for impaired Forced Vital Capacity set forth in Appendix A and whose disease has a medically recognizable restrictive component but who fails to meet the requirements of Appendix A for FEV$_1$/FVC ratio; or

(iii)  a Plaintiff with DLCO less than 80 percent of Predicted Value, accompanied by an X-ray reading of 1/1 or higher on the ILO scale, for which DLCO test results there is no probable causal explanation other than exposure to asbestos.

Plaintiffs who qualify for compensation under this Agreement as Exceptional Claims shall receive the same settlement payment as Plaintiffs who qualify for compensation as Impaired Nonmalignancy claims.  During any calendar year, the number of Plaintiffs qualifying for compensation under this Agreement as Exceptional Claims may not exceed a number equal to ten percent of the total number of Plaintiffs qualifying for compensation under this Agreement during that same calendar year as Impaired Nonmalignancy claims (excluding Exceptional Claims).

(f)  Material Compliance with ATS Standards.  No Future Case Plaintiff shall qualify for compensation under this Agreement for any Impaired Nonmalignancy disease category (including Exceptional Claims) unless that Plaintiff's claim of impairment is substantiated by Pulmonary Function Testing that is in material compliance with American Thoracic Society standards as referenced in Sections 1G and 1H of Appendix A.  For purposes of this Agreement and Appendix A, Pulmonary Function Testing shall be deemed not to be in material compliance with ATS standards if it fails to meet the requirements set forth in Appendix B hereto.  Subject to the foregoing, no Plaintiff shall be denied compensation under this Agreement solely because of minor or technical deficiencies in Pulmonary Function Testing that do not materially affect the results or reliability of the testing.

(g)  Asbestos-related Non-malignant Condition.  In order to qualify for compensation under this Agreement for an Asbestos-related Nonmalignant Condition, a Plaintiff must submit a report by a Certified B-reader that the Plaintiff has an X-ray reading

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

DP-NSP2 001884

Paul S. Lefkowitz, Esq.                    8                    December 9, 1998

of 1/0 or higher on the ILO scale or pleural plaques or pleural thickening, together with medical evidence that the Plaintiff's nonmalignant condition is causally related to asbestos exposure. Neither OC nor Fibreboard shall be obligated (for purposes of any section of this Agreement) to accept diagnostic reports or x-ray readings from any of the following physicians: Dr. Larry Mitchell, Dr. Ray Harron or Dr. Richard S. Kuebler.

5. Preconditions to Settlement Payments. (a) OC shall have no obligation to make any settlement payments to any Plaintiff (whether a Schedule A Plaintiff or a Future Case Plaintiff) unless that Plaintiff first satisfies the following requirements:

(i) Delivery to OC of a properly executed release and/or dismissal with prejudice of all known and unknown claims (including any potential wrongful death or survival or other derivative claims) satisfactory in form and substance to counsel for OC, provided, however, that the releases executed by Plaintiffs receiving compensation for any nonmalignancy hereunder shall expressly preserve the rights to seek additional compensation set forth in Sections 3 and 9 hereof; and

(ii) Submission to OC of written medical confirmation from a physician qualified under Appendix A establishing that the Plaintiff suffers from the disease or condition for which the Plaintiff seeks compensation and that the Plaintiff's disease or condition is causally related to asbestos exposure, and providing information concerning the Plaintiff's medical condition required to permit the proper classification of the case under Section 4. If so requested by OC, Plaintiff shall provide OC with access to his or her pertinent medical records; and

(iii) Satisfactory evidence of exposure to asbestos-containing OC Kaylo during the period from May 1, 1953 to December 31, 1973 (the "Kaylo Period"), and of compliance with the applicable statute of limitations or statute of repose. As a general rule, an affidavit or comparably reliable evidence (such as deposition testimony) by a Plaintiff (or by a co-worker who regularly worked with the Plaintiff) attesting to the Plaintiff's regular occupational exposure for a period of at least two years (except six months in mesothelioma cases and one year for Schedule A Cases) during the Kaylo Period to asbestos-containing OC Kaylo shall be deemed sufficient to satisfy the product exposure requirements of this section. More detailed exposure information may be required from Plaintiffs alleging exposure at nontraditional worksites (i.e., worksites dissimilar in type and/or function from those at which clients of Plaintiffs' Counsel have typically been exposed -- e.g., an aircraft assembly plant as opposed to a power plant or steel plant or from

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

DP-NSP2 001805

Paul S. Lefkowitz, Esq.                    9                    December 9, 1998

managerial or clerical positions). If so requested by OC, Plaintiff shall provide OC with access to his or her employment records. Plaintiffs asserting household exposure must present satisfactory evidence that (1) the industrial worker (e.g., the Plaintiff's husband or father) who allegedly brought asbestos-contaminated clothes into the household meets the exposure requirements of this Section 5(a)(iii), and (2) the Plaintiff regularly came in contact with, or inhaled asbestos dust on a frequent basis from, the industrial worker's asbestos-contaminated clothing. Nothing in this section shall be interpreted to impose an absolute requirement that a Plaintiff must have a specific minimum duration of exposure to asbestos-containing OC Kaylo in order to qualify for compensation under this Agreement.

(b) Fibreboard shall have no obligation to make any settlement payments to any Plaintiff (whether a Schedule A Plaintiff or a Future Case Plaintiff) unless that Plaintiff first satisfies the following requirements:

(i) Delivery to Fibreboard of a properly executed release and/or dismissal with prejudice of all known and unknown claims (including any potential wrongful death or survival or other derivative claims) satisfactory in form and substance to counsel for Fibreboard, provided, however, that the releases executed by Plaintiffs receiving compensation for any nonmalignancy hereunder shall expressly preserve the right to seek additional compensation as set forth in Sections 3 and 9 hereof; and

(ii) Submission to Fibreboard of written medical confirmation from a physician qualified under Appendix A establishing that the Plaintiff suffers from the disease or condition for which the Plaintiff seeks compensation and that the Plaintiff's disease or condition is causally related to asbestos exposure, and providing information concerning the Plaintiff's medical condition required to permit the proper classification of the case under Section 4. If so requested by Fibreboard, Plaintiff shall provide Fibreboard with access to his or her pertinent medical records; and

(iii) Satisfactory evidence of exposure to asbestos-containing products manufactured or distributed by Fibreboard during the period from January 1, 1928 to December 31, 1971 (the "Pabco Period"), and of compliance with the applicable statue of limitations or statue of repose. As a general rule, an affidavit or comparably reliable evidence (such as deposition testimony) by a Plaintiff (or by a co-worker who regularly worked with the Plaintiff) attesting to the Plaintiff's regular occupational exposure for a period of at least two years (except six months in mesothelioma cases and one year for Schedule A Cases) during the Pabco Period to asbestos-containing Fibreboard products shall be deemed

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

DR-HSF2 001896

Paul S. Lefkowitz, Esq.                10                    December 9, 1998

sufficient to satisfy the product exposure requirements of this section.  More detailed
exposure information may be required from Plaintiffs alleging exposure at nontraditional
worksites (i.e., worksites dissimilar in type and/or function from those at which clients of
Plaintiffs' Counsel have typically been exposed -- e.g., an aircraft assembly plant as opposed
to a power plant or steel plant or from managerial or clerical positions).  If so requested by
Fibreboard, Plaintiff shall provide Fibreboard with access to his or her employment records.
Plaintiffs asserting household exposure must present satisfactory evidence that (1) the
industrial worker (e.g., the Plaintiff's husband or father) who allegedly brought asbestos-
contaminated clothes into the household meets the exposure requirements of this Section
5(b)(iii), and (2) the Plaintiff regularly came in contact with, or inhaled asbestos dust on a
frequent basis from, the industrial worker's asbestos-contaminated clothing.  Nothing in this
section shall be interpreted to impose an absolute requirement that a Plaintiff must have a
specific minimum duration of exposure to asbestos-containing Fibreboard Pabco in order to
qualify for compensation under this Agreement.

     (c)  OC and/or Fibreboard shall notify Plaintiffs' Counsel in writing of any
deficiencies in a Plaintiff's submission of information under Sections 5(a) or 5(b) as quickly
as reasonably possible but in no event later than 90 days after the receipt of such information.
Such notification shall be deemed timely if it is mailed or faxed to your firm within such 90-
day period.  If OC and/or Fibreboard fail to notify your firm of deficiencies in the Plaintiff's
submissions within such 90-day period, then, absent exceptional circumstances, the Plaintiff
shall be deemed to have satisfied the requirements of Sections 5(a)(ii) and 5(a)(iii) and/or
5(b)(ii) and 5(b)(iii) hereof.

     (d)  If the parties disagree with respect to whether any Plaintiff has satisfied
the provisions of Section 5(a) or Section 5(b), counsel shall negotiate in good faith in an
effort to resolve the disagreement.  If counsel are unable to resolve the disagreement, the
issue in dispute shall be referred to binding arbitration as provided in Section 12.

     (e)  The claims of any Plaintiff who fails to satisfy the requirements of Section
5(a)(ii) or Section 5(b)(ii) shall be dismissed without prejudice as to OC or Fibreboard, as the
case may be, and may be reasserted only if there occurs a substantial asbestos-related change
in the Plaintiff's medical condition.  The claims of any Plaintiff who fails to satisfy the
product exposure requirements of Section 5(a)(iii) or Section 5(b)(iii) shall be dismissed
without prejudice as to OC or Fibreboard, as the case may be, and may be reasserted only if
substantial new evidence not previously available is discovered concerning the Plaintiff's
exposure to asbestos-containing OC or Fibreboard products.  In the event of any reassertion

D:\Helen\Kini\Tab 84.wpd

D:\Helen\Kini\Tab 84.wpd

DP-NSP2 001887

Paul S. Lefkowitz, Esq.                    11                    December 9, 1998

pursuant to this section, the reasserted case shall be resolved pursuant to the terms of this Agreement and neither OC nor Fibreboard shall assert the statute of limitations or statute of repose (except as to claims already time-barred as of the date the Plaintiff's initial lawsuit against OC or Fibreboard was filed) as a defense to payment of the claim. The claims of any Plaintiff who fails to satisfy the statute of limitations or repose requirements of Section 5(a)(iii) or Section 5(b)(iii) shall be dismissed with prejudice as to OC or Fibreboard, as the case may be.

　　　　　(f) The parties recognize their mutual obligation to act in good faith concerning the interpretation and application of the requirements of this Section 5 and shall endeavor to resolve any disagreements expeditiously and without unnecessary recourse to arbitration.

　　6. No Admissions. This Agreement represents a compromise of disputed obligations and nothing herein contained shall constitute, or be construed as, an admission of any fact or any principle of law by any of the parties.

　　7. Conditions Precedent. (a) Owens Corning. The parties recognize that this Agreement is part of a program pursuant to which OC intends to negotiate resolution with many of the leading plaintiffs' law firms of their pending asbestos cases and to establish case processing arrangements for their future asbestos cases. It is a condition precedent to OC's obligations under this Agreement (except with respect to the cases which have firm 1998 trial settings and which are so identified in the appendix to Schedule A (the "1998 Trial Cases")) that OC shall have entered into, on or before November 30, 1998, satisfactory written agreements ("Master Agreements") for the resolution of pending asbestos cases and for the processing of future filed asbestos cases with a critical mass of plaintiffs' law firms selected by OC, and that OC shall have access to adequate financing for the performance of its obligations under such Master Agreement.

　　　　　The determination whether or not OC has achieved satisfactory settlements with a critical mass of plaintiffs' firms shall be exclusively the prerogative of OC (OC could, for example, determine that satisfactory settlements with 25 plaintiffs' firms do not constitute the requisite "critical mass" of settlements); Plaintiffs' Counsel shall have no role in this determination. In the event that OC determines that it has not entered into the requisite number of Master Agreements by November 30, 1998, or that adequate financing is not available on satisfactory terms, it may elect, in its sole discretion, to terminate this Agreement by written notice to Plaintiffs' Counsel given no later than December 15, 1998, and Plaintiffs'

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

DP-NSP2 001888

Paul S. Lefkowitz, Esq.          12          December 9, 1998

Counsel shall have no legal basis on which to challenge that termination. Upon such termination, OC shall have no further rights or obligations under this Agreement, except that the provisions of the Agreement pertaining to settlement of the 1998 Trial Cases by OC only shall survive such termination.

    (b)  Fibreboard.

        (i)  The parties recognize that Fibreboard is a party to two global class action settlements arising out of lawsuits brought in the United States District Court for the Eastern District of Texas -- Gerald Ahearn v. Fibreboard Corp.  ("Ahearn"), and Daniel Rudd v. Continental Casualty Co. ("Rudd").  The Rudd class action settlement is the subject of a final judgment but will become effective only if the Ahearn class action settlement is disapproved.  The judgment approving the Ahearn class action settlement has been affirmed by the United States Court of Appeals for the Fifth Circuit but the United States Supreme Court has recently granted a petition by objectors for a writ of certiorari to review the Ahearn judgment.  If the Ahearn settlement is finally approved, Fibreboard will be protected from asbestos personal injury and wrongful death lawsuits by a federal court injunction and the responsibility for defending and resolving such lawsuits shall pass to the Fibreboard Asbestos Compensation Trust established under the Ahearn settlement.  The parties recognize that this Agreement is not binding on the Fibreboard Asbestos Compensation Trust, and this Agreement shall automatically terminate as to Fibreboard, and Fibreboard shall have no further rights or obligations hereunder, if the Ahearn class action settlement is finally approved by the courts.  The provisions of this Agreement pertaining to the resolution by Fibreboard of the 1998 Trial Cases shall not survive such termination.

        (ii)  Fibreboard's obligations under this Agreement are further conditioned upon its obtaining access under the Rudd class action settlement to the funds necessary for the performance of its obligations hereunder.  If Fibreboard does not obtain such access by January 1, 2000, either Fibreboard or Plaintiffs' Counsel may terminate this Agreement as to Fibreboard by written notice given to the other and to OC on or before February 1, 2000; provided, however, that neither Plaintiffs' Counsel nor Fibreboard may terminate this Agreement as to Fibreboard for Fibreboard's failure to obtain such access if OC agrees in writing on or before March 1, 2000 that it shall advance to Fibreboard on or before April 1, 2000 the funds necessary for the performance of its obligations hereunder.  For purposes of this Agreement, Fibreboard shall be deemed to have access to such funds on the date (the "Access Date") that it actually receives transfer from the escrow account established under the Ahearn and Rudd class action settlements of funds sufficient to meet its obligations

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

1660012

Paul S. Lefkowitz, Esq.                13                December 9, 1998

under Section 2(a) hereof (taking into account any other Fibreboard settlement obligations with the same or earlier payment dates).

(iii)  In the event that OC exercises its right of termination under Section 7(a), Fibreboard may elect, in its discretion, to terminate its rights and obligations under this Agreement by written notice to Plaintiffs' Counsel given no later than December 10, 1998.

(c)  Separate Agreements.  Except as otherwise provided in Section 7 of this Agreement, the rights and obligations of Fibreboard and OC under this Agreement shall be several and not joint.  The rights and obligations of OC under this Agreement shall survive any termination as to Fibreboard.  The rights and obligations of Fibreboard under this Agreement shall survive any termination as to OC (except as provided in Section 7(b)(iii)).

8.  Future Case Procedures.  (a) Claims Covered.  As used in this Agreement, the term "Future Case" shall include all asbestos-personal injury or wrongful death claims or lawsuits on whatever theory of liability asserted in which:

(i)  The Plaintiff is represented by any of the attorneys signatory to this Agreement, or by Climaco, Climaco, Lefkowitz & Garofoli Co., L.P.A., or by any successor firm thereto  or by any partner or then-current associate of any thereof; and

(ii)  The Plaintiff is neither a Schedule A Plaintiff nor excluded from coverage under this Agreement by the last sentence of Section 1(a).

(b)  Tolling.  All applicable statutes of limitations or statutes of repose shall be tolled as to Future Cases from the date of the earlier of:

(i)  Delivery by Plaintiff to OC and/or Fibreboard, as the case may be, of the Notice of Claim (as defined below) with respect to such Future Case; or

(ii)  The filing of suit by Plaintiff in respect of the Future Case against any other defendant in any state or federal court in the United States, if the filing of such lawsuit is followed within nine months by the delivery to OC and Fibreboard of the Notice of Claim relating to such Future Case.

DP-NFSF2 001890

D:\Helen\Kim\Tab 84.wpd

D:\Helen\Kim\Tab 84.wpd

Paul S. Lefkowitz, Esq.                14                December 9, 1998

      (c)  <u>Notice of Claim</u>.  Plaintiffs asserting Future Cases against OC and/or
Fibreboard shall not file suit against OC and/or Fibreboard in any court but shall instead
deliver to them a written Notice of Claim at the addresses designated in Section 18.  This
Notice of Claim shall state the Plaintiff's name, his or her social security number, the
asbestos-related disease or condition for which the Plaintiff seeks compensation, the principal
worksites at which the Plaintiff alleges exposure to asbestos-containing OC or Fibreboard
products, the jurisdictions in which that exposure occurred and in which the Plaintiff resides,
and the years during which the Plaintiff was exposed to asbestos-containing OC and
Fibreboard products.  If the Plaintiff so elects, the Notice of Claim may be accompanied by
the information required by Sections 5(a)(ii) and (iii) and/or 5(b)(ii) and (iii) hereof.  If the
Notice of Claim is accompanied by such information, OC and Fibreboard shall process the
Future Claim as provided under Sections 5, 8 and 9 hereof.  If the Notice of Claim does not
purport to be accompanied by the information required by Sections 5(a)(ii) and (iii) and/or
5(b)(ii) and (iii), OC and Fibreboard need take no further action with respect to such Notice
of Claim until the Plaintiff elects to submit such information.  By submitting a Notice of
Claim hereunder, a Plaintiff agrees to be bound by the terms of this Agreement.

      (d)  <u>Payment Schedule</u>.  Subject to the limitations of the maximum annual
aggregate payment caps set forth in Section 8(e) hereof, settlement payments to Plaintiffs
with Future Cases shall be due upon the expiration of the following periods of time from the
date on which the Future Case is accepted for payment under Sections 5(a) and/or 5(b):

| Disease Category | Waiting Period for Payment |
|---|---|
| Mesothelioma — Extraordinary Claims | 60 days |
| Mesothelioma | 90 days |
| Lung Cancer (all levels) | 180 days |
| Other Cancer (both levels) | 1 year |
| Impaired Nonmalignancies (both levels) (including Exceptional Claims) | 1 year |

      A case shall be considered to have been accepted for payment hereunder upon
satisfaction of the requirements of Sections 5(a) and/or 5(b), as the case may be.

D:\Helen\Kim\Tab 84.wpd

D:\Helen\Kim\Tab 84.wpd

Paul S. Lefkowitz, Esq.                15                    December 9, 1998

If the funds available for settlement payments under the maximum aggregate annual payment caps of Section 8(e) are insufficient to make payment to all of the Future Case Plaintiffs whose claims become due for payment during a particular calendar year, the available funds for such calendar year shall be paid in the following order of priority be disease category:

        Mesothelioma -- Extraordinary Claims
        Mesothelioma
        Lung Cancer -- Level One
        Lung Cancer -- Level Two
        Impaired Nonmalignancy -- Level One
          (including Exceptional Claims)
        Other Cancer -- Level One
        Impaired Nonmalignancy -- Level Two
          (including Exceptional Claims)
        Other Cancer -- Level Two

In such circumstance, the claims of all Plaintiffs in each prior disease category for that calendar year must be paid before any payment is made to a Future Case Plaintiff in any subordinate disease category. The claims of Future Case Plaintiffs for whom funds are insufficient under Section 8(e) to make payment in a particular calendar year shall be deferred to the next calendar year, in which calendar year they shall receive priority of payment over claims in the same disease category first becoming due for payment in that calendar year.

(e) <u>Maximum Annual Settlement Payments</u>. The parties recognize that the financial resources of OC and Fibreboard available for the payment of asbestos personal injury or wrongful death claims are limited and that there are several hundred thousand pending and anticipated future claims of this type. The parties further recognize that OC and Fibreboard have committed substantial amounts to the resolution of the Schedule A Cases and that OC and Fibreboard require a substantial measure of certainty in estimating their annual cash payments for Future Cases. Accordingly, neither OC nor Fibreboard shall have any obligation (except as provided in Section 20) to make any settlement payment in respect of any Future Cases in excess of the following maximum annual aggregate settlement payment caps:

| Calendar year | Owens Corning | Fibreboard |
|---|---|---|
|  |  |  |

DP-NSF2 001/592

D:\Helen\Kim\Tab 84.wpd

D:\Helen\Kim\Tab 84.wpd

Paul S. Lefkowitz, Esq.                    16                    December 9, 1998

| 1999 | $0 | $0 |
|------|----|----|
| 2000 | $0 | $0 |
| | [to be inserted in coordination with other Master Agreements] | |
| 2001 | -- | -- |
| 2002 | -- | -- |
| 2003 | -- | -- |
| 2004 | -- | -- |
| 2005 | -- | -- |
| 2006 | -- | -- |
| 2007 | -- | -- |
| 2008 - 2013 | -- | -- |

During the years 2001 and 2002, OC and Fibreboard shall have no obligation to make any payments in Future Cases except to

      (i) living Plaintiffs with asbestos-caused malignancy claims and a doctor's declaration that as a result of such asbestos-caused malignancy there is substantial doubt that Plaintiff will survive more than six months from the date of such declaration; or

      (ii) Plaintiffs with other especially exigent Future Cases that have firm and realistic trial dates against other defendants.

    9. <u>Future Settlement Payments and Medical Criteria</u>. (a) <u>Malignancy and Impaired Nonmalignancy Cases</u>. Future Cases satisfying the requirements of Sections 4 and 5 of this Agreement in the following disease categories shall be settled for the following amounts:

| | Per Case Settlement Payment | | |
|--|--|--|--|
| | | | |

D:\HelenKirst\Tab 84.wpd

D:\HelenKirst\Tab 84.wpd

DP-NSP2 001803

Paul S. Lefkowitz, Esq.                    17                    December 9, 1998

| Disease | Owens Corning Only Cases | Fibreboard Only Cases | Combined OC and Fibreboard Cases |
|---|---|---|---|
| Mesothelioma (as defined in Section 4(a)(i)) | $90,000 | $45,000 | $135,000 |
| Mesothelioma -- Extraordinary Claims | | See Section 4(a)(ii) | |
| Lung Cancer -- Level One (as defined in Section 4(b)(i)) | $22,500 | $12,500 | $35,000 |
| Lung Cancer -- Level Two (as defined in Section 4(b)(ii)) | $14,000 | $6,000 | $20,000 |
| Other Cancer -- Level One (as defined in Section 4(c)(ii)) | $12,000 | $6,000 | $18,000 |
| Other Cancer -- Level Two (as defined in Section 4(c)(iii)) | $8,000 | $4,000 | $12,000 |
| Impaired Nonmalignancy (including Exceptional Claims) (as defined in Sections 4(d) and (e)) | $7,000 | $3,000 | $10,000 |

       A substantial majority of asbestos lawsuits filed by Plaintiffs' Counsel have historically been brought in Ohio, and the per case settlement payments set forth in the above table reflect the settlement values appropriate for those jurisdictions. If a substantial number of Future Cases submitted by Plaintiffs' Counsel involve Plaintiffs who reside in, and had substantial exposure to asbestos-containing OC Kaylo or Fibreboard Pabco in, jurisdictions other than Ohio, the parties shall negotiate in good faith to determine whether any

D:\Helen\Kim\Tab 54.wpd

D:\Helen\Kim\Tab 54.wpd

DP-NSPZ 001694

Paul S. Lefkowitz, Esq.                18                December 9, 1998

adjustments should be made for such claims to the per-case settlement values set forth above. Any party dissatisfied with the results of such negotiations may take the matter to arbitration under Section 12. In any such arbitration, however, the per-case settlement payments provided for in this Section shall be presumed to be fair and reasonable, and may be adjusted only upon a showing by the proponent of the adjustment that such per-case settlement payments are clearly inadequate or excessive (taking into account all relevant prior settlement experience of OC and Fibreboard) for the jurisdiction and/or disease category at issue.

(b) Additional Compensation for Impaired Nonmalignancies. Plaintiffs with Future Cases satisfying the requirements of Section 9(a) in any of the Impaired Nonmalignancy disease categories (including Exceptional Claims) shall have the right to receive additional compensation from OC and/or Fibreboard in accordance with the provisions of Section 9(a) in the event of their development of an asbestos-related malignancy satisfying the requirements of that section. This section shall provide the sole and exclusive remedy of Future Case Plaintiffs initially receiving compensation hereunder for any Impaired Nonmalignancy (including Exceptional Claims) for obtaining additional compensation from OC and/or Fibreboard in the event of their development of any malignancy. No Future Case Plaintiff may receive more than one payment under this section for an asbestos-related malignancy.

(c) Cases Not Meeting Medical Criteria. Plaintiffs with Future Cases that do not qualify for compensation under Section 9(a) ("Future Unimpaired Plaintiffs") shall receive a green card providing for the tolling as to OC and Fibreboard of any applicable statute of limitations or statute of repose as provided in Section 8(b) and shall have the right to receive compensation from OC and/or Fibreboard, as the case may be, as provided in Section 9(a) in the event of their development of a more serious asbestos-related disease or condition. Each Future Unimpaired Plaintiff shall be eligible to receive compensation under Section 9(a) once for any Impaired Nonmalignancy (including any Exceptional Claim) and once for an asbestos-related malignancy meeting the requirements of that section. This section shall provide the sole and exclusive remedy of Future Unimpaired Plaintiffs for obtaining compensation from OC and/or Fibreboard in the event of their development of any asbestos-related disease or condition.

10. Settlement Authority, Etc. (a) Plaintiffs' Counsel have carefully reviewed the provisions of this Agreement and have concluded that it is in the best interest of their clients and represents the fairest and most efficient method of compensating their clients for the injuries received. Accordingly, Plaintiffs' Counsel hereby represent that they shall (subject to

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

1660018

Paul S. Lefkowitz, Esq.                    19                    December 9, 1998

the exercise of their independent professional judgment as to the circumstances of individual clients) strongly recommend this Agreement to the Schedule A Plaintiffs and to Plaintiffs with Future Cases. Plaintiffs' Counsel believe that virtually all of their clients will accept this recommendation. However, the parties recognize that the decision whether to participate in this Agreement rests with the individual Plaintiff, and that a certain number of Plaintiffs may reject the settlement ("Nonparticipating Plaintiffs").

      (b)    Plaintiffs' Counsel shall provide written notice to OC and Fibreboard, on or before June 1, 1999, of the identity of any Nonparticipating Plaintiffs listed on Schedule A. If 20 or more of the Plaintiffs listed on Schedule A -- or any of the 1998 Trial Cases -- become Nonparticipating Plaintiffs, OC and/or Fibreboard may, in their sole discretion, elect to terminate this Agreement and shall thereupon be relieved of all rights and obligations hereunder (except, in the case of OC, for those rights and obligations pertaining to the 1998 Trial Cases other than those of Nonparticipating Plaintiffs). OC and Fibreboard shall provide Plaintiffs' Counsel with written notice of their decision to so terminate the Agreement within ten business days of their receipt from Plaintiffs' Counsel of the notice of the identity of Nonparticipating Plaintiffs.

      (c) No later than January 31 of each calendar year for the duration of this Agreement, starting with January 31, 2000, Plaintiffs' Counsel shall provide OC and/or Fibreboard with written notice of the identity of any Nonparticipating Plaintiffs with Future Cases then known to Plaintiffs' Counsel. If in any 12 month period, more than three Future Plaintiffs become Nonparticipating Plaintiffs, OC and Fibreboard may, within ten business days after receipt of such written notice and in their sole discretion, elect to terminate this Agreement in the same manner and with the same effect as a notice of termination provided pursuant to Section 10(b) (except that termination pursuant to this subsection shall not affect the rights and obligations of the parties with respect to cases already paid or accepted for payment hereunder).

      (d) Nothing in this Agreement shall prohibit Plaintiffs' Counsel, in accordance with this Section 10, from representing Nonparticipating Plaintiffs if, in the exercise of their professional judgment, they choose to do so. However, before Plaintiffs' Counsel, or any successor firm or partner or then-current associate of Plaintiffs' Counsel, may represent a Nonparticipating Plaintiff in any trial against OC and/or Fibreboard, the case must first be submitted to mediation. Section 12 of this Agreement shall apply to the mediation, except that the mediation shall be nonbinding. If mediation does not resolve the case, either party may request a settlement conference before the Court to which the case is assigned,

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

DP-NSP2 001895

Paul S. Lefkowitz, Esq.                    20                    December 9, 1998

which conference shall be scheduled at the convenience of the Court. If these efforts to resolve the case are unsuccessful, the case shall be set for trial at a date to be determined by the Court. Additionally, neither Plaintiffs' Counsel, nor any successor firm or partner or then-current associate of Plaintiffs' Counsel, shall (i) seek to accelerate the trial date of a Nonparticipating Plaintiff by attempting to move it into a trial docket slot that would otherwise be occupied by a Plaintiff whose case is to be or has been resolved under this Agreement, or (ii) bring a case to trial against OC and/or Fibreboard without affording OC and/or Fibreboard a reasonable minimum period of time in which to conduct discovery of relevant facts, which period, unless otherwise determined by court order, shall in no event be less than six months from the date of receipt by OC and/or Fibreboard of the notice of non-participation. It is understood that OC and Fibreboard plan to move some or all of the various courts having jurisdiction over the cases settled hereunder for entry of case management orders deferring Nonparticipating Plaintiffs' trials against OC and Fibreboard for a minimum period of two years and limiting the number of trials that may be had in any given year against OC or Fibreboard. If by August 1, 1999 a critical mass of courts, as determined by OC and/or Fibreboard in their sole discretion, have not entered such case management orders, or if any of such orders are subsequently rescinded, withdrawn, or otherwise modified, OC and/or Fibreboard may, in their sole discretion, elect to terminate this Agreement by providing written notice to Plaintiffs' Counsel. Upon such termination, OC and/or Fibreboard, as the case may be, shall have no further rights or obligations under this Agreement, except with respect to cases already paid or accepted for payment hereunder. Plaintiffs' Counsel, in their independent professional judgment, have decided not to oppose such motions at this time, but reserve the right to seek judicial relief from such orders should they determine circumstances so warrant in the future.

(e) In the event that (i) a Nonparticipating Plaintiff represented by Plaintiffs' Counsel or any of them or any of their successors, affiliates, partners or then-current associates, obtains a judgment against OC and/or Fibreboard or (ii) OC or Fibreboard settles the claim of such a Nonparticipating Plaintiff, OC or Fibreboard, as the case may be, shall be entitled to apply any payments made in respect of such judgment or settlement as a dollar-for-dollar credit against the applicable maximum aggregate payment cap under Section 8(e) for the calendar year in which the payments are made. Nothing in this Agreement shall limit the recoveries (if any) of Nonparticipating Plaintiffs against OC or Fibreboard.

11. <u>Cooperation</u>. Plaintiffs and Plaintiffs' Counsel shall assist OC in identifying work sites at which units of OC's former Supply and Contracting Division may have been present and at which Plaintiffs may have been exposed to asbestos fibers generated by Supply

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

DP-HSP2 001897

Paul S. Lefkowitz, Esq.                21                December 9, 1998

and Contracting Division operations, and shall, to the extent reasonably requested, provide
substantiating affidavits and/or testimony.

12. Dispute Resolution. Any and all disputes arising hereunder or in connection
herewith shall be submitted for resolution by an independent attorney arbitrator to be
selected by mutual agreement of the parties. Unless notice in writing to the contrary is
provided by any party prior to commencement of the arbitration in question, the following
arbitrators are acceptable to the parties: Hon. James McMonagle and The Fed-Net Group
(Plaintiffs' Counsel and OC/Fibreboard each reserving a single strike as to the particular
arbitrator(s) designated by the Group). Any such arbitration shall take place in Cleveland,
Ohio and shall be conducted according to American Arbitration Association rules. The
decision(s) by the arbitrator shall be final and binding upon the parties. The costs of the
arbitration (including the arbitrator's fees and expenses) shall be borne equally by the parties
and each party shall bear its own attorney's fees.

13. Confidentiality. The terms of this Agreement shall remain confidential. Except
as required by court order or by applicable law, neither OC nor Fibreboard nor Plaintiffs'
Counsel shall disclose the terms or conditions of this Agreement, except to Plaintiffs, whose
agreement to honor the confidentiality hereof shall be obtained by Plaintiffs' Counsel, to the
Court (under seal), or to the Ethics Expert. A breach of confidentiality involving disclosure
of the per-case or aggregate settlement payments or values hereunder shall be deemed a
material breach of this Agreement entitling the non-breaching parties to terminate the
Agreement.

14. Court Approval. This Agreement shall not become effective until the Court of
Common Pleas for Cuyahoga County, Ohio (the "Court") reviews the Agreement, modified
to conceal the specific financial terms, under seal, and enters an order approving the
settlement and directing that it be performed in accordance with its terms.

15. Ethical Considerations. The parties believe that this Agreement comports in all
respects with applicable ethical requirements and guidelines. However, to avoid any
uncertainty and to eliminate the possibility of any collateral attack upon the Agreement, the
parties shall (i) obtain a legal opinion or report from a mutually agreed upon expert in legal
ethics (the "Ethics Expert") that the provisions of this Agreement are ethical and satisfy the
Code of Professional Responsibility and the Canons of Ethics, and (ii) submit this
Agreement, modified to conceal the specific financial terms, under seal, to the Court for
review of its ethical implications. If either the Ethics Expert or the Court concludes that any
provision of this Agreement is unethical or violative of the Code of Professional

DP-HSP2.001696

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

Paul S. Lefkowitz, Esq.            22            December 9, 1998

Responsibility or Canons of Ethics, the parties shall immediately negotiate in good faith for a mutually satisfactory substitute provision that shall comply with all applicable ethical requirements while preserving in so far as possible the substance of the original provision. This Agreement shall not become effective until both the Ethics Expert and the Court have determined that it complies with applicable ethical requirements.

16.  Choice of Law.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Ohio applicable to contracts made and entirely to be performed within the State.

17.  Parties Bound.  This Agreement shall inure to the benefit of, and shall be binding upon, the Schedule A Plaintiffs and Plaintiffs with Future Cases (other than Nonparticipating Plaintiffs), Plaintiffs' Counsel, OC and Fibreboard, and their respective successors, assigns, estates, heirs and survivors.  No other person or entity shall be a third party beneficiary of this Agreement.

18.  Notices.  All notices, requests, demands, claims and other communications hereunder shall be in writing.  Any notice, request, demand, claim or other communication hereunder shall be deemed duly given if it is sent by registered or certified mail, postage prepaid, or sent by prepaid overnight courier or confirmed telecopier, and addressed to the intended recipient as set forth below:

        If to Owens Corning:

        Clyde M. Leff, Esq.
        Vice President — Asbestos Litigation
        Owens Corning
        2790 Columbus Road, Route 16
        Building 53
        Granville, OH 43023-1200
        Tel:  (740) 321-7960
        Fax:  (740) 321-6935

DP-NSP2 001899

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

Paul S. Lefkowitz, Esq.                23                December 9, 1998

with a copy to:

Mark P. Goodman, Esq.
Debevoise & Plimpton
875 Third Avenue
New York, NY 10022
Tel: (212) 909-7253
Fax: (212) 909-6836

Claims submission information under Sections 5 and 8 need only be sent to
Mr. Goodman.

If to Fibreboard:

Terry Kontonickas, Esq.
Litigation Manager
Fibreboard Corporation
c/o Brobeck Phleger & Harrison LLP
Spear Street Tower
One Market
San Francisco, CA  94105
Tel:  (415) 442-0900
Fax:  (415) 442-1010

with a copy to:

William A. Levin, Esq.
Brobeck, Phleger & Harrison
Spear Street Tower
One Market Plaza
San Francisco, CA 94105
Tel:  (415) 442-0900
Fax:  (415) 442-1010

Claims submission information under Sections 5 and 8 need only be sent to
Mr. Levin.

D:\Helen\Kim\Tab 84.wpd

D:\Helen\Kim\Tab 84.wpd

DP-NSF2 001900

Paul S. Lefkowitz, Esq.                 24                December 9, 1998

If to Plaintiffs' Counsel:

Paul S. Lefkowitz, Esq.
Climaco, Climaco, Lefkowitz
 & Garofoli Co., L.P.A.
Ninth Floor, the Halle Building
1228 Euclid Avenue
Cleveland, Ohio 44115-1802
Tel: (216) 621-8484
Fax: (216) 771-1632

19. Amendments. This Agreement may not be amended or modified orally, but only by a written instrument signed by or on behalf of all of the parties affected by the modification or amendment.

20. Duration. This Agreement shall remain in effect for the period of fifteen years from the date of execution hereof by the last to sign of the listed signatories, and shall be thereafter automatically renewed for each successive twelve-month period unless, prior to commencement of such twelve-month period, any party hereto provides written notice of termination of the Agreement to all other parties. At intervals of five years from such date of execution, the parties shall meet to determine whether any of the provisions of Sections 8 and 9 hereof (other than Section 9(c)) should be modified to take account of changed circumstances. In the event that the parties disagree concerning any such modifications, the party seeking the modification may commence an arbitration under Section 12 to compel the adoption of such modification. In any such arbitration, the party seeking the modification must establish by clear and convincing evidence, in light of all the attendant circumstances (including the financial condition and prospects of OC and Fibreboard), that the modification is consistent with the goals and purposes of this Agreement and is necessary for its fair and efficient operation. Notwithstanding the foregoing, the aggregate maximum annual payment caps set forth in Section 8(e) shall remain inviolate for a period of seven years from the execution date of this Agreement.

21. Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same original.

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

Paul S. Lefkowitz, Esq.                25                December 9, 1998

    22.  <u>Standard Medical Criteria</u>. Owens Corning and Fibreboard represent that they have used substantially the same medical criteria (i.e., the so-called Masonite impairment criteria accompanied by American Thoracic Society standards) in connection with the "futures" provisions of their other settlement agreements being negotiated as part of their national settlement program. As a material inducement to this settlement, Owens Corning and Fibreboard further represent that they shall not enter into any inventory or future case settlement that employs materially different medical criteria for future nonmalignancy cases with any other law firm that represents substantial numbers of asbestos personal injury or wrongful death claimants in the State of Ohio.

DP-NS020010525

D:\HelenKim\Tab 54.wpd

D:\HelenKim\Tab 54.wpd

1660025

Paul S. Lefkowitz, Esq.                    26                    December 9, 1998

     Please indicate your acceptance of this Settlement Agreement by signing below and returning the executed copies to  Mark P. Goodman.

                Very truly yours,

                OWENS CORNING

      By:

           Maura J. Abeln
           Senior Vice President
           General Counsel and
           Secretary

      By:

           Clyde M. Leff
           Vice President -- Asbestos
           Litigation

      DEBEVOISE & PLIMPTON

      By:

           Roger E. Podesta

      By:

           Mark P. Goodman

      Outside Counsel to
      Owens Corning

DP-MS2 001503

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

1660026

Paul S. Lefkowitz, Esq.                    27                    December 9, 1998

FIBREBOARD CORPORATION

By:
    Terry Kontonickas
    Litigation Manager

BROBECK, PHLEGER & HARRISON

By:
    William A. Levin

By:
    L. Christopher Vejnoska

Outside Counsel to
  Fibreboard

Accepted and Agreed to
this _____ day of

CLIMACO, CLIMACO, LEFKOWITZ
  & GAROFOLI CO., L.P.A.

By:
    Paul S. Lefkowitz, Esq.

D:\HelenKim\Tab 84.wpd

D:\HelenKim\Tab 84.wpd

1660027