Page 25

1    in the same situation we were before --

2             THE COURT:  Well, let's see.

3             MR. MANUEL:  -- but then we have all these people --

4             THE COURT:  Let's see.  I mean, if what Mr. Krutz

5    says is correct, they all claim -- many of them are going to go

6    away.

7             MR. MANUEL:  Can we have the opportunity before

8    depositions actually start, once we get this -- if they notice

9    them and we get these dismissals, can we have an opportunity to

10   be heard on whether actual depositions need to go forward before

11   they actually do?

12            THE COURT:  I'm going to keep the same rules in

13   effect and Mr. Krutz's clients can notice the depositions.  The

14   plaintiffs, if you've read all the orders -- I'm going to assume

15   all the Plaintiff's Attorneys that are in these 17 cases have

16   read all of the orders that apply to you.

17            MR. MCMURTRAY:  Yes, your Honor.

18            THE COURT:  And that means at time of deposition,

19   you have to know -- you have to give everybody notice well in

20   advance of what defendants you actually have a cause of action

21   against.

22            MR. MCMURTRAY:  Yes, your Honor.

23            THE COURT:  And I think that may shake you out a lot

24   of the problems that you're concerned about.

25            MR. MANUEL:  We're just concerned --

1              THE COURT:  And I'm not trying to keep jurisdiction

2     over something I don't have jurisdiction over, except sometimes

3     I do.  I think it may be somewhat more efficient for everybody

4     to do it this way.  And I understand your argument.  It's a good

5     argument, and it was very well presented.

6          (Laughter)

7              MR. MANUEL:  Thank you, your Honor.

8              MR. ATWOOD:  Your Honor, on the Adams case --

9              THE COURT:  Yes, sir.  Just one moment.

10         Go ahead.  Yes, sir?

11             MR. ATWOOD:  On the Adams case, Roy Atwood, your

12    Honor.

13             The Adams case is unique.  It's a Western District

14    of Kentucky case.  It has Defendants in it that are not

15    otherwise involved in this MDL and if the Court wants to

16    entertain discussion on the Adams case at this point, I'd like

17    to show the Court some facts from the Fact Sheets that we have

18    been provided by Plaintiffs that I think bears on your decision

19    with what to do with that case.

20         (Pause)

21             THE COURT:  Unless you want me to treat it

22    differently, I'm putting it with the same group that's going to

23    be deposed.

24             MR. ATWOOD:  I do, your Honor.

25             THE COURT:  Okay.  Go ahead.

1          MR. ATWOOD:  The problem that we have in that case

2    and these folks are from Kentucky and represent some of the

3    Defendants in this case as well, you have non-diverse non-

4    consenting Defendants who are only -- who are sand suppliers,

5    distributors in Kentucky whose only involvement in this MDL is

6    this case.  And under your standing orders in the MDL, they

7    would have an obligation to do disclosures that pending the

8    decision on jurisdiction, when they didn't consent to remand or

9    they didn't consent to removal, they quite frankly want this

10   case back in State Court.

11          The Fact Sheets that have been filed, your Honor,

12   are --

13          THE COURT:  I am -- I should have remembered that.

14   I'm not -- of all these remaining cases, I'm not going to order

15   the Defendant to make any disclosures until after the

16   Plaintiff's depositions.

17          MR. ATWOOD:  Okay.

18          THE COURT:  Does that take care of some of your

19   concern?

20          MR. ATWOOD:  Well, it takes care of some of my

21   concerns, but your Honor --

22          THE COURT:  Well, does anybody in that case, in the

23   Adams case, object to remand?  Anybody?  Any Defendant?  Any

24   Plaintiff?

25          MR. KRUTZ:  Yes, your Honor.  We do.

Exceptional Reporting Services, Inc.       361 949-2988

Page 28

1              THE COURT:  Okay.  Go ahead.

2              MR. ATWOOD:  Your Honor, what you have in this case

3    are 451 plaintiffs.  We've gotten 306 Fact Sheets.  We have zero

4    diagnoses of silicosis on the Fact Sheets.  The B-Reads were all

5    performed by Dr. Ballard with consistent language --

6              THE COURT:  All 451 or the 306 that are --

7              MR. ATWOOD:  306.  We don't know about the --

8              THE COURT:  Okay.  Who is the Plaintiff's attorney

9    for Adams?

10             MR. MCMURTRAY:  I am, your Honor.  Patrick

11   McMurtray.

12             THE COURT:  Where are the fact sheets?  Are those

13   the ones -- are they due Friday or are they already due?

14             MR. ATWOOD:  They are due -- the rest are due

15   Friday.

16             MR. MCMURTRAY:  Yes, your Honor.

17             THE COURT:  And 306 Fact Sheets with zero diagnosis;

18   is that right?

19             MR. MCMURTRAY:  The B-Read language is correct.

20   There is --

21             THE COURT:  No.  Has anybody diagnosed those 306

22   with silicosis?

23             MR. MCMURTRAY:  No, your Honor, other than what Dr.

24   Ballard has said in his B-Reads.

25             THE COURT:  Okay.  So you agree to dismiss those 306

Exceptional Reporting Services, Inc.     361 949-2988

Page 29

1    without prejudice?

2                MR. MCMURTRAY:  Your Honor, I'm happy to discuss

3    that with the Defendants, but at this point --

4                THE COURT:  You need to discuss it with me right

5    now.

6                MR. MCMURTRAY:  Okay.  Well, then, your Honor, if

7    you -- obviously you --

8                THE COURT:  Okay.  Unless you disagree, the premise

9    for all the Plaintiffs, every Plaintiff's case other than I've

10   not asked the Plaintiff's attorneys in these other 70 cases, the

11   premise for all the Plaintiffs is that they all agreed when they

12   came in that they have not -- that they do not have a cause of

13   action unless they have a diagnosis of silicosis.

14               Does any other Plaintiff Attorney disagree with

15   that?

16               MR. HOOPER:  Your Honor, I must not.  I have raised

17   several times to advise the Court that I don't agree with that.

18               THE COURT:  Actually you haven't.

19               MR. HOOPER:  Yes.  I have.

20               THE COURT:  Okay.

21               MR. HOOPER:  It's on the record.

22               THE COURT:  Okay.  You think that your clients don't

23   have to have silicosis to have a cause of action right now?

24               MR. HOOPER:  I clearly argued during the February

25   hearing that Plaintiff's individuals --

Exceptional Reporting Services, Inc.    361 949-2988

Page 30

1        THE COURT:  Not in the February hearing, but before

2   that.  Did you ever raise it before the February hearing?

3        MR. HOOPER:  I'd have to go back and look at the

4   record.

5        THE COURT:  I think you best do that.  Thank you.

6        MR. HOOPER:  Well, I'll say again, your Honor, that

7   individuals who have exposure to silica in significant

8   quantities who do not yet have a diagnosis of silicosis have an

9   injury that's recognized at law.  Everybody who's ever studied

10  this, every scientist, every doctor, would agree with that.

11       THE COURT:  All right.  That was -- you have never

12  said that until the February hearing when your Plaintiffs were

13  going down.

14       MR. HOOPER:  No, your Honor.  I don't think that

15  that's true.

16       THE COURT:  I think you need to go find that in the

17  record because I can assure you that everyone stood up here when

18  we first started this case, including you, and said, "I agree.

19  Every one of my Plaintiffs first have a diagnosis of silicosis,

20  and we agree that without a diagnosis of silicosis, they have no

21  cause of action at this time."

22       You said it.  In fact, Mr. Basile, would you find

23  that in the record, please?

24       (Pause)

25       Yes, sir?

Exceptional Reporting Services, Inc.    361 949-2988

1          MR. MCMURTRAY:  Yes, your Honor.  I understand what

2    you're saying correctly that you ruled before that a simple B-

3    Read without a diagnosis is not a cause of action, did not start

4    the cause of action.

5          THE COURT:  That's why it's called a "screening."

6          MR. MCMURTRAY:  Then, yes, your Honor, I would agree

7    that those cases should be dismissed.

8          THE COURT:  All right.

9          MR. MCMURTRAY:  Without prejudice.

10          THE COURT:  So that's 306 I grant that dismissal

11    without prejudice.  You just need to get me the names.  Then you

12    have what?  94 left or -- that did not have Fact Sheets?

13          MR. ATWOOD:  Well, 100 and -- well, you just

14    dismissed some, so...

15          MR. MCMURTRAY:  Well, my numbers are a little bit

16    different than his, your Honor.

17          THE COURT:  Okay.

18          MR. MCMURTRAY:  And I don't know who is right.  I

19    show 447 Plaintiff's listed.

20          THE COURT:  447?  Well, you ought to know.

21          MR. MCMURTRAY:  Well, I should, but he has an

22    overhead and I don't, your Honor.

23       (Laughter)

24          I'm always impressed by preparation.  My Post-It

25    says, "447" at the top and of those I've already agreed to

Page 32

1   dismiss 26.  I provided 313 Fact Sheets.

2          THE COURT:  And that could be some of those 306 or

3   not?

4          MR. MCMURTRAY:  Well, I don't believe so.  I believe

5   that there is 313 sent of the 447.  26 have already been

6   provided to Forman Perry above and beyond that as cases that

7   should be dismissed and then that left me with 108 Plaintiffs

8   whose Fact Sheets have not yet been filed, which are not yet

9   due.

10         THE COURT:  Okay.

11         MR. MCMURTRAY:   I believe, your Honor.

12         MR. ATWOOD:  Perhaps the question, your Honor, is

13  are the Facts Sheets that are going to be filed between now and

14  next Friday going to have diagnosis of silicosis, because if

15  they're just like the 306 we've gotten, then we can deal with

16  this whole thing at once in a week.

17         THE COURT:  I'm not going to rule in advance, but I

18  mean --

19         MR. MCMURTRAY:  And I believe so, your Honor, but I

20  don't know.  I'm not prepared because those Fact Sheets haven't

21  been finalized.

22         THE COURT:  You don't have them.

23         MR. MCMURTRAY:  And in addition, I would expect that

24  a number of those 108 will ultimately be dismissed.  These are

25  people who have trailed along in the Fact Sheet process, so I

Page 33

1    would expect at least half of those to have been dismissed

2    anyway, but I don't know the answer.

3          MR. ATWOOD:  Then we'll file a Proposed Order based

4    on these 306 we have the Fact Sheets on at this point and we'll

5    follow that up with an order --

6          THE COURT:  Okay.

7          MR. ATWOOD:  -- once the rest of the Fact Sheets are

8    turned in.

9          MR. KRUTZ:  Your Honor, this is what we were trying

10    to point out by saying based on our discussion with Mr.

11    McMurtray and other Plaintiff lawyers, we believe a lot of these

12    cases are about to go away by dismissals and that's why we would

13    prefer not -- for you not to remand anything until we've had an

14    opportunity to either get agreements from them to dismiss the

15    cases because of facts like this, or take some of the

16    depositions of the few people that will be remaining.

17          THE COURT:  Well, I just remanded Wilson versus 3M.

18          MR. KRUTZ:  Yes, ma'am.

19          THE COURT:  That's a single Plaintiff case and

20    everybody agreed to remand it.  Nobody stood up to disagree.

21          I understand your position on the other cases.  I'm

22    not addressing any remands at this time.

23          I'm going to carry that motion -- those motions

24    forward for 60 days.

25          (Pause)

Page 34

1         That leaves Covey versus Union Pacific to do a

2    Scheduling Order, and let's do that at the end.  And I think

3    that takes care of everything in the Exhibit B cases, the still

4    pending cases, except for Alexander versus Air Liquide.

5         MS. SNAPKA:  Your Honor, Mr. Laminack's office

6    indicated that they received their -- the motion on the 10th and

7    would request their full 20 days to respond.

8         THE COURT:  No.  We're going forward with that

9    today.

10        Is Laminack -- O'Quinn Laminack?

11        MS. SNAPKA:  He's here.

12        MR. LAMINACK:  Rick Laminack, your Honor, for

13    Alexander.

14        THE COURT:  Have you all paid your sanction?

15        MR. LAMINACK:  My sanction?  We were discussing that

16    with Mr. Barger this morning.  My understanding is yes.  He

17    tells me his office has not yet received it.  I asked that it be

18    sent over a month ago.  I signed a check personally.  I even got

19    Mr. Barger's bank account number so I could send it.

20        THE COURT:  Did you want to give it to everybody

21    else?

22        MR. BARGER:  I went to Europe.

23        (Laughter)

24        THE COURT:  Well, there you have it, Mr. Laminack.

25        MR. BARGER:  We did talk a month ago.  He said he

Exceptional Reporting Services, Inc.    361 949-2988

1    was sending it out that day.  We're checking on it now, Judge.

2    Obviously, it's not an issue.

3              THE COURT:  All right.

4              MR. LAMINACK:  And your Honor on this --

5              THE COURT:  Well, let me talk to you about the

6    Alexander versus Air Liquide.  If you could take just a moment

7    and pull out the first Petition, the First Amended Petition and

8    the Second Amended Petition?

9              The First Amended Petition did not have proper

10   jurisdictional allegations because citizenship was not pled.

11   Second Petition had proper allegations of citizenship for

12   everybody but one Defendant, and I said, "Please take care of

13   that."

14             The Second Amended Petition was filed and you went

15   back and filed -- somebody did -- filed the First Petition again

16   with no allegations of citizenship, so it's a mess.  If you

17   could just take a minute to pull those three Petitions out and

18   look at them and tell me what you want to do with them, we'll

19   come back to that.  But I have a feeling you couldn't possibly

20   have looked at those yet.

21             MR. LAMINACK:  I haven't seen them and you're

22   probably right, your Honor.

23             THE COURT:  So if you could look at those, I would

24   appreciate it.

25             Is that what you want to talk about?

1          MR. COHEN:  Yes, your Honor.  Joe Cohen for American

2    Optical.

3          And also, your Honor, I note that Mr. Watts filed a

4    Motion to Remand in the Thirsty case in which he said three of

5    the Defendants are Mississippi citizens, in which case if that's

6    so, there couldn't be complete diversity since all the

7    Plaintiffs in this case, or many of them, are from Mississippi.

8    And I'm referring specifically to the -- I don't have the docket

9    number, but it is the Motion to Remand filed in Thirsty, Moore,

10   Large, Greer, and Crowe, in which he says in paragraph --

11   Section E on Page 10, with Kelco (phonetic), Quickfree

12   (phonetic) to Mississippi Valley are Mississippi citizens and if

13   that's so, there isn't complete diversity.

14         THE COURT:  Pardon?

15         MR. COHEN:  I said if that's so, there is not

16   complete diversity.

17         THE COURT:  Right.  Thank you.

18         Did you want to talk about Air Liquide, in the

19   Alexander versus?

20         MR. COHEN:  Your Honor, you've raised precisely the

21   point that we make and that is on the face --

22         THE COURT:  It's a mess.

23         MR. COHEN:  -- of the Second Amended Complaint, it's

24   not demonstrating diversity.

25         THE COURT:  It went back to the First Complaint,

Page 37

1    which was the worst one of all.

2          MR. COHEN:  It appears that way.  They have failed

3    to allege principal place of business for the Defendants, and

4    Statesman Corporation demonstrate diversity.

5          THE COURT:  And that's why I wasn't inclined to give

6    them their 20 days because they've had a year on that same

7    position.

8          MR. COHEN:  This is the third time, your Honor.

9          THE COURT:  It didn't apply the first time and it's

10   not doing well the second time.

11         MR. COHEN:  Correct.

12         THE COURT:  All right.  Thank you, sir.

13         Yes, sir?

14         MR. MULHOLLAND:  Your Honor, Danny Mulholland.

15         I was going to comment on the AO motion.  As you

16   know, I'm sure, in Pretrial Order 29, you suggested a procedure

17   for dealing with AO's objection to subject matter jurisdiction,

18   which was a dismissal of American Optical under 1653 and of

19   course, there's the other issues you've raised as to

20   jurisdiction.

21         THE COURT:  Well, I'm going to give Mr. Laminack a

22   chance to look at those three petition and figure out -- it's

23   American Optical that had the problem with -- that was not

24   properly pled in the Second Petition and First Amended Petition,

25   right?

Page 38

1           MR. MULHOLLAND:  I believe that's correct, your

2   Honor.

3           MR. COHEN:  I believe the First Amended was the last

4   live pleading before the --

5           THE COURT:  Before the messed up one, before the one

6   -- before it reverted back to the original mess.

7           MR. COHEN:  That's what it appears to be, your

8   Honor.

9           THE COURT:  So I'll come back to that issue.

10          So Roman Numeral II, we have discovery motions,

11  Motions to Dismiss for Failure to Comply with Discovery Orders.

12          I don't think I have any jurisdiction to do anything

13  about that.

14          MR. MULHOLLAND:  Your Honor, I think you do.  And

15  there are -- you have to look at this motion through --

16          THE COURT:  Okay.  For failure to comply with my own

17  discovery motions and orders.

18          MR. MULHOLLAND:  Actually it's easier than that.

19  We're talking -- I'm going to filter through your Motion to

20  Remand and put all those cases over here and just talk about

21  what cases are still before you.

22          THE COURT:  The 17.

23          MR. MULHOLLAND:  The 17, plus Alexander.  Now we can

24  talk about Alexander in more detail later, if that's what the

25  Court would like.

Exceptional Reporting Services, Inc.     361 949-2988

Page 39

1          THE COURT:  No.  You can do that now, but I don't

2    want Mr. Laminack having to do two things at one time.

3          MR. LAMINACK:  I'm ready, your Honor.

4          THE COURT:  You're ready?  Okay.

5          MR. MULHOLLAND:  The --

6          MR. LAMINACK:  Or I should say, somebody else is

7    looking at the petitions.

8          THE COURT:  Thank you.

9          MR. MULHOLLAND:  With respect to the McManus case,

10   which was one of the Exhibit B cases, there are after, what I

11   believe to be an Agreed Motion to Dismiss some Plaintiffs --

12         THE COURT:  Speaking of Alexander, too, Mr.

13   Laminack, you -- and we'll get to this later, but you have

14   substituted in -- tried to substitute in, new diagnoses.  You've

15   got 100 Plaintiffs in there and only 86 have a new diagnoses.

16         MR. LAMINACK:  Correct.

17         THE COURT:  So do you want to dismiss the other 14?

18         MR. LAMINACK:  No.

19         THE COURT:  What happened to them?

20         MR. LAMINACK:  Nothing yet.

21         THE COURT:  Well, I think that's why they get

22   dismissed if there's nothing wrong with them.

23         MR. LAMINACK:  I understand, your Honor.

24         THE COURT:  Okay.  Unless you disagree with that? Do

25   you think -- never mind.

Page 40

1          Go ahead.

2          MR. MULHOLLAND:  The McManus case, it started out

3   with 60-some-odd Plaintiffs and I think by the end of the

4   motions this morning, the Agreed Motions, we'll be down to 29.

5   Just last week, we had 22 Fact Sheets on file, seven of those

6   Plaintiffs did not have Fact Sheets.  We got in the remaining

7   seven Fact Sheets last week, but they're unsigned.

8          Our particular problem with those 29 Fact Sheets, if

9   you count the seven unsigned ones, is this:  We don't have any

10  of the screening information and the --

11         THE COURT:  I'm sorry.  I wasn't following you.

12  Which case was that?  McManus?

13         MR. MULHOLLAND:  McManus.

14         THE COURT:  Okay.

15         MR. MULHOLLAND:  There are going to be 29 Plaintiffs

16  remaining.  Of those, we have 22 Fact Sheets, seven of which we

17  received last week and they are unsigned.

18         THE COURT:  Who's the Plaintiff's Attorney for

19  McManus?

20         MR. CANSLER:  Here, your Honor.  Jason Cansler for

21  the Plaintiffs.

22         THE COURT:  They have to be signed as an Affidavit.

23         MR. CANSLER:  I'm sorry.  I didn't hear your Honor?

24         THE COURT:  How many are unsigned?

25         MR. MULHOLLAND:  Seven.

Page 41

1              MR. CANSLER:  Seven and --

2              THE COURT:  What's the problem?

3              MR. CANSLER:  I would assume that it was just client

4    error, your Honor.  I don't think there's --

5              THE COURT:  Client error?

6              MR. CANSLER:  But we sent these things to them,

7    talked to them, and specifically tell them to sign them --

8              THE COURT:  Didn't you read them?

9              MR. CANSLER:  I think that was left to another

10   lawyer in the firm, which I would assume that they did and I

11   would hope that they would be a little bit more thorough, but it

12   looks like there's a mistake, your Honor.

13             THE COURT:  Well, I don't think you should call it

14   "client error."

15             Many of these cases that I remanded, they may have

16   only one cause of action and it's not against the Defendants.

17             So when are you going to get those ready?

18             MR. CANSLER:  Those seven, your Honor?

19             THE COURT:  Yes.

20             MR. CANSLER:  Immediately.  As soon as we can get

21   back to the office, we will call the seven clients.  I'm sure

22   Mr. Mulholland will be happy to give me the names of the seven

23   unsigned sheets.

24             THE COURT:  You don't know which seven are unsigned?

25             MR. CANSLER:  Your Honor, I do not know off the top

Page 42

1   of the my head know which seven are unsigned.

2            THE COURT:  You'd rely on Mr. Mulholland to tell you

3   how to clean up your case?

4            MR. CANSLER:  No, ma'am.  I can always call Alice

5   Coleman in our Mississippi office to do that.  I just -- he was

6   just standing right here so I thought I'd ask him.

7            THE COURT:  And how many Plaintiffs did you start

8   out with McManus?

9            MR. CANSLER:  67, I believe, your Honor.

10           THE COURT:  And you're down now to 29 Plaintiffs?

11           MR. CANSLER:  That's correct.

12           THE COURT:  Did you dismiss the others?

13           MR. CANSLER:  There's an Agreed Motion to Dismiss

14   before the Court.

15           THE COURT:  Have you got that with you?

16           MR. CANSLER:  I do.  Would you like it?

17           THE COURT:  Please.

18           MR. MULHOLLAND:  I believe there were 61 plaintiffs

19   to start out and we'll be down to 29.

20           THE COURT:  Sorry.

21           MR. CANSLER:  May I approach, your Honor?

22           THE COURT:  Yes, sir.  Thank you.

23       (Pause)

24           Do we have -- how many Defendants do you have?

25           MR. CANSLER:  I'm sorry?

Exceptional Reporting Services, Inc.     361 949-2988

1          THE COURT:  How many Defendants?

2          MR. CANSLER:  I don't have that count right in front

3   of me, your Honor.  I'll take a guess, but I would think no more

4   than 35.  That would be typical.

5          And I apologize, your Honor.  I'm not the lead

6   attorney.  The lead attorney, Alice Coleman, is with child and

7   could not fly to be here, so I apologize.

8          THE COURT:  So you're not familiar with the case?

9          MR. CANSLER:  No.  I'm not saying that.  I'm just

10  not the lead attorney.

11         THE COURT:  But you don't know how many Defendants

12  or how many Plaintiffs or --

13         MR. CANSLER:  Well, those things --

14         THE COURT:  Those minor problems?

15         MR. CANSLER:  I'm sorry?  Yes, ma'am.

16         MR. MULHOLLAND:  Your Honor, I'm told that there are

17  105 Defendants in the case.

18         THE COURT:  Do you have any attorney from your firm

19  that's familiar with the case?

20         MR. CANSLER:  Alice Coleman would be the most

21  familiar with the case, your Honor.

22         THE COURT:  But you are not?

23         MR. CANSLER:  No.

24         THE COURT:  Apparently.

25         MR. CANSLER:  Apparently not.

Page 44

1  THE COURT: And that is, of course, a requirement to
2  appear for your clients.
3  This order only dismisses Lockheed Martin.  You
4  haven't -- and the Plaintiffs.  Do you have an order that
5  dismisses the --
6  MR. COHEN:  I have it as to without prejudice.
7  THE COURT:  The 32 plaintiffs?
8  MR. COHEN:  The 32 Plaintiffs right here also.
9  THE COURT:  Okay.  Give me that.
10  Anyone oppose this Order Dismissing without
11  Prejudice, the 32 Plaintiffs?
12  MR. MULHOLLAND:  No, your Honor.
13  THE COURT:  As to all Defendants.
14  Okay.  That's granted.  So you have 29 Plaintiffs
15  left and 20 -- and those seven have not -- seven of them have
16  not filed Fact Sheets in a timely manner; is that right?
17  MR. COHEN:  I think they were filed somewhat
18  untimely, your Honor.  That's correct.
19  THE COURT:  Do you have 29 Fact Sheets, Mr.
20  Mulholland?
21  MR. MULHOLLAND:  Yes.  We have -- yes, that's
22  correct, your Honor, seven of which are unsigned.
23  THE COURT:  Okay.  So the 29 remaining have filed
24  some type of Fact Sheets, seven are unsigned.
25  MR. MULHOLLAND:  Correct.  And there's an additional

Page 45

1   problem with those 29 Fact Sheets.

2          THE COURT:  And what is that?

3          MR. MULHOLLAND:  We're aware, based on our own

4   research --

5          THE COURT:  Sir, do you agree that your Plaintiffs

6   have to have a diagnosis of -- have to have silicosis to have a

7   cause of action?

8          MR. CANSLER:  Yes, ma'am.

9          THE COURT:  Okay.  Do they have a diagnosis of

10  silicosis, Mr. Mulholland, in the 22 with the signed Fact Sheets

11  or the 29, including the unsigned Fact Sheets?

12         MR. MULHOLLAND:  Well, facially, they appear to,

13  your Honor.

14         THE COURT:  Who did the diagnosis?

15         MR. MULHOLLAND:  Dr. Segara, but we're going to have

16  real big problems and they're markedly different from what the

17  Court saw in February regarding Dr. Segara's work.  So that's

18  going to be the next -- or another issue that's going to loom in

19  the near future.  It's a completely different view on Dr. --

20         THE COURT:  It's different than what he testified to

21  is what you're saying?

22         MR. MULHOLLAND:  Yes, your Honor.

23         THE COURT:  In what fashion?

24         MR. MULHOLLAND:  Well, as the Court may recall, Dr.

25  Segara testified he always did his own B-Reads.

Page 46

1           THE COURT:  He was a friendly witness to the

2    Defendant, as I recall.

3           MR. MULHOLLAND:  In that proceeding --

4           THE COURT:  In that proceeding.

5           MR. MULHOLLAND:  There will be further proceedings.

6    He testified that he almost always -- I think all but -- he said

7    maybe one occasion did his own reading of X-rays.  We now

8    have --

9           THE COURT:  And he saw the clients in particular and

10   examined them and took either -- he or under his direct

11   supervision, the exposure history, along with the medical

12   history.

13          MR. MULHOLLAND:  Right.  We have a number of reports

14   filed in this case where he has not done that.

15          THE COURT:  Have you talked to Dr. Segara about

16   this?

17          MR. MULHOLLAND:  Not yet, your Honor, but we're

18   looking for an occasion to.  And we would like the opportunity

19   to bring Dr. Segara back.

20          THE COURT:  Would you like to visit with him here?

21          MR. MULHOLLAND:  We would love to visit with him

22   here.

23          THE COURT:  That's no problem.  My court is your

24   court, as you know.

25          (Laughter)

Page 47

1          The Plaintiffs and the Defendants, any time you want

2    it, it's yours.

3          Yes, sir.  Have you talked to Dr. Segara about this

4    diagnoses?

5          MR. CANSLER:  No, ma'am.  I have not.  Not about the

6    -- I've talked to Dr. Segara quite a bit, but not about these

7    particular issues before this Court, no, ma'am.

8          THE COURT:  Did he examine all these patients?

9          MR. CANSLER:  It's my understanding if he did a full

10   examine, that he did examine all the patients, at least that's

11   what we request that he did.

12         THE COURT:  And he's -- where is he located?

13   Mississippi?

14         MR. CANSLER:  Yes, ma'am.

15         THE COURT:  And all your clients are Mississippi?

16         MR. CANSLER:  Yes, ma'am.  Other than the Wisconsin

17   Plaintiff, which we're currently taking care of.

18         THE COURT:  What do you mean, "taking care of?"

19         MR. CANSLER:  We're in correspondence with him.  I

20   think it was just a mistake by, frankly, our office that a

21   Wisconsin Plaintiff got filed in a Mississippi case.  I think

22   it's just a mistake, but we're taking care of that issue.

23         THE COURT:  How?

24         MR. CANSLER:  We are discussing with the Plaintiff.

25   I mean, well, this aside, we'll take care of it, your Honor.

Page 48

1          THE COURT:  I don't know what you mean you'll take

2   care of it.

3          MR. CANSLER:  We're going to make sure that he's

4   ready to go here for this case.  It's kind of an inconvenience

5   with the Wisconsin Plaintiff being in a Mississippi case.  It's

6   our biggest concern.

7          THE COURT:  Well, are you dismissing that Wisconsin

8   Plaintiff?

9          MR. CANSLER:  Potentially.  I can't say that right

10  now for sure.  He's going to get some additional medical relief

11  there.

12         THE COURT:  Is it Segara or Segura?

13         MR. MULHOLLAND:  Segara.

14         THE COURT:  Segara.  Now -- oh, you know in the --

15  in some of the remaining 17, Nix, Douglas, Jackson, and Green,

16  you need to enter an order clarifying -- even though I don't

17  hear anybody objecting to jurisdiction -- well, there are

18  motions to remand.  I need to clarify the citizenship of the

19  Defendants.

20         In Nix, Douglas, Jackson and Green, I'm going to

21  give you two weeks -- Plaintiff's attorneys two weeks to do

22  that.

23         MR. SMITH:  Your Honor, I'm Allen Smith.  I

24  represent the Plaintiffs.

25         THE COURT:  In?

Exceptional Reporting Services, Inc.     361 949-2988

Page 49

1          MR. SMITH:  Nix, Douglas, Green and what was the

2     other one you said?

3          THE COURT:  Jackson.

4          MR. SMITH:  Yes, your Honor.  And Jackson plaintiff.

5          THE COURT:  Can you do that in two weeks?

6          MR. SMITH:  Yes, ma'am.

7          THE COURT:  Thank you, sir.

8      (Pause)

9          Mr. Mulholland, we were on the Motion to Dismiss, I

10     think, right?

11          MR. MULHOLLAND:  Yes, your Honor.

12          THE COURT:  Go ahead.

13          MR. MULHOLLAND:  Now the additional problem with the

14     McManus --

15          THE COURT:  I'll give him -- I'll give McManus seven

16     days to file the appropriate Fact Sheets signed.

17          MR. MULHOLLAND:  One additional glaring problem with

18     those Fact Sheets is this:  We're aware that at least 12 of

19     those 29 are retread, that also have asbestos claims and

20     pursuant to the Court's various orders, six, 12, 14, 25, and 27,

21     documents pertaining to those claims should be filed with the --

22          THE COURT:  You got them out of the Manvel Trust? Is

23     that where you're getting those -- that information, the Manvel?

24          MR. MULHOLLAND:  Partially from the Manvel Trust and

25     partially from the records of the Defendants who have also