Page 80

1   have been remanded, as well.

2          THE COURT:  Do you have any response to that anyway?

3          MS. SNAPKA:  I do not.  I am not familiar with it.  I

4   only know that those -- all the cases that --

5          THE COURT:  Is anybody from the law firm here?

6          MS. SNAPKA:  No, your Honor.  I know that Mr.

7   Foxworth had a family emergency and I was advised of that, I

8   think, yesterday.

9          MR. MULLINS:  His mother has brain cancer.  It's

10  serious.

11         THE COURT:  Thank you.

12         MR. ARGENTO:  Thank you, your Honor.

13         MR. HOOPER:  Your Honor, also on the fact that the

14  20 days haven't expired.  I understand that they had problems

15  filing because the 20 days.  The motion was filed on the 12th.

16         THE COURT:  I don't have those cases before me

17  anyway.  I just thought if anybody was here, they can respond;

18  otherwise, we'll move on.

19         Let's talk about the Motion to Preserve Plaintiff's

20  Original Experts.  I did not grant that motion.  I wanted to

21  hear that on the agenda.  I have great concern because these may

22  be evidence now in not only these cases, but in criminal

23  investigations.  I'm very careful now about what we're going to

24  do with those X-rays.  I don't intend to give them to just one

25  party.

Page 81

1              So what are we going to do about them?

2              MR. ATWOOD:  May I suggest -- Roy Atwood, your

3    Honor.

4              My suggestion is that we keep them right where they

5    are.

6              THE COURT:  Well, who is going to pay for that?

7    They're in a depository?

8              MR. ATWOOD:  They're in Mikal Watts' warehouse.

9              THE COURT:  Well, then somebody needs to pay for

10   them to stay there.

11             Who's going to do that?

12             MR. ATWOOD:  What's the current arrangement?

13             MS. GREEN:  My understanding is nobody has ever paid

14   Mr. Watts anything.

15             THE COURT:  But that doesn't seem quite right.

16             MR. BARGER:  We'll get it worked out with Mr. Watts.

17             MR. ATWOOD:  I mean, if that's the only issue, we

18   can resolve that and I'm confident we can resolve a protocol for

19   use of the X-rays as they become necessary to the cases in

20   Mississippi once they're remanded.  I think the important thing

21   is that they stay in one place.

22             My concern, quite frankly, your Honor, is once the

23   case is remanded, the order takes affect, that someone may just

24   decide, "Well, I want to take mine back to my office."  And you

25   know, "I'll ask forgiveness, not permission."  And I just want

Page 82

1   an order in place that keeps them all there and then we can work

2   out the details of making sure they're available to be used when

3   they need to be used and paid for.

4               THE COURT:  Mr. Hooper, this was your motion?

5               MR. HOOPER:  Yeah, it's actually their Motion to

6   Preserve.  It was our Motion to Withdraw.

7               First, we believe that a Court of competent

8   jurisdiction, when the cases go back to Mississippi should

9   control the X-rays and control the --

10              THE COURT:  That may very well be, but it's not back

11  in Mississippi and in the meantime, I told Liaison Counsel I

12  have had a call from -- I can't remember how long ago, Mr.

13  Barger --

14              MR. BARGER:  About a month ago, Judge.

15              THE COURT:  Pardon?

16              MR. BARGER:  About a month ago.

17              THE COURT:  I had a call from the U.S. Attorney

18  locally about access to discovery in the depository.  First, I

19  explained that he didn't understand it was an ex parte -- he

20  doesn't do civil stuff, so he didn't understand it was an ex

21  parte conversation that I had to disclose to the other parties

22  and so I got Liaison Counsel on the phone and told him that I

23  had received this call.  So once I am told that someone is

24  looking at this information or who wants access to this

25  information from the U.S. Attorney's Office, who have been

Exceptional Reporting Services, Inc.      361 949-2988

1  called, I assume, by the Manhattan, Southern District of New

2  York Office.  I just have to look.  I have to be very careful

3  then about what happens to these documents in the depository,

4  so --

5          MR. BARGER:  And for the record --

6          THE COURT:  -- and so that was my concern, Mr. and

7  I'm not -- I don't think they'll destroy them in any way.  They

8  need to be in one central place, but I don't intend to just let

9  them go back from in there.

10          MR. HOOPER:  Your Honor, I believe -- strongly

11  believe that since the Court doesn't have jurisdiction, that the

12  Court should release its jurisdiction over documents and over

13  the cases.  I also, as I stated in the brief, that I believe

14  when the Court entered its remand order, Order Number 29, it

15  stayed it for 30 days that on the 30th day that the cases were

16  remanded.

17          THE COURT:  Well, you must have thought I had some

18  jurisdiction or you wouldn't have filed a motion to give you

19  back the X-rays, or you would have just walked in and taken

20  them.

21          MR. HOOPER:  I filed that motion during the 30-day

22  stay.  Also, I don't -- the argument that we have is that the X-

23  rays are the Plaintiff's diagnosing X-rays.  The Plaintiffs

24  voluntarily put their X-rays without court order into the

25  document depository.  The Court never ordered us to produce

1   those.  The Court to this date has not ordered us to produce

2   those.

3           So those X-rays that are the basis of the diagnosis

4   -- or the basis of the B-Read, I'm sorry, have never been

5   ordered by the Court and the Court doesn't have jurisdiction to

6   order anything further on those documents.

7           Again, since the -- in my opinion the Court's

8   jurisdiction lapsed on July 30th.  The Court no longer has

9   jurisdiction over those X-rays.

10          THE COURT:  Well, why don't I just turn them over to

11  the U.S. Attorney then?

12          MR. HOOPER:  Your Honor, I don't think that you have

13  jurisdiction to do that.  You don't have jurisdiction to do

14  anything with respect to X-rays that Plaintiffs voluntarily

15  produced now that you have conceded that you don't have

16  jurisdiction.

17          THE COURT:  Thank you.

18          MR. HOOPER:  Let me --

19          THE COURT:  Go ahead.

20          MR. HOOPER:  Judge, just so it's clear and I don't

21  want to be standing in front of you so that there's any

22  misunderstanding.  I acted accordingly with what I just said and

23  proceeded based upon what I just said in relation to my X-rays.

24          THE COURT:  You took them out of the depository?

25          MR. HOOPER:  Yes, I did, your Honor.

1          THE COURT:  Then Mr. Hooper, you will get those back

2    into the depository by 5:00 o'clock today or you will be in

3    contempt of court and you will be held in this courtroom until

4    they are replaced.

5          MR. HOOPER:  Your Honor, I cannot physically --

6          THE COURT:  I denied that motion.  You knew I denied

7    the motion and you call your office and you get them here today.

8    You will physically do that today.

9          MR. HOOPER:  Your Honor, I cannot physically --

10          THE COURT:  If you have to hire a jet to get them

11   here, you will get them here.

12          MR. HOOPER:  Your Honor, I ask that you stay that

13   order so that --

14          THE COURT:  I will not.  You will get them here

15   today.

16          MR. HOOPER:  -- so that I may have a Court of

17   competent jurisdiction review that.

18          THE COURT:  Get them here today, now.

19          MR. HOOPER:  Which X-rays, your Honor?

20          THE COURT:  The X-rays you removed from the

21   depository.  When did you do that?

22          MR. HOOPER:  I removed them once the Court's

23   jurisdiction lapsed.

24          THE COURT:  When did you do that?

25          MR. HOOPER:  The first week of August, Monday,

Page 86

1   whatever the first Monday was.

2           THE COURT:  You call your office and get those X-

3   rays.  Where are they, exactly?

4           MR. HOOPER:  Some of the X-rays are in my office,

5   some of the X-rays are at a doctor's office being reviewed.

6           THE COURT:  You call -- you're excuse right now for

7   30 minutes to get -- to tell me when you can get those X-rays

8   here right now.

9           MR. BARGER:  Judge, I would just add for the record

10  that my office has received an inquiry from the U.S. Attorney's

11  office --

12          THE COURT:  Where is Mr. Watts?  Did he allow those

13  X-rays to leave his depository?

14          MR. GOWEN:  Your Honor, Gregory Gowen for Mr. Watts,

15  plaintiff.  Some will come on either side to do the X-rays and

16  we video it and if they have to check it out for a doctor to

17  look at, then they have sign off on a piece of paper for it, for

18  X-rays to be taken out.

19          THE COURT:  You knew there was a motion before me on

20  this?

21          MR. GOWEN:  Your Honor, the motion that I'm aware of

22  that was denied, I'm not sure of the timing of it as far as --

23          THE COURT:  And the denial was entered when?

24          MR. HOOPER:  The denial was entered before we

25  removed them, Judge.

Page 87

1       THE COURT:  I thought so.

2       Okay.  You're excused for 30 minutes.

3       Marshals, would you accompany him?  Can I get some

4   Marshals here, please, to make his calls, Mr. Hooper.

5       And I assume as Liaison Counsel, Ms. Snapka and Mr.

6   Darrell -- Mr. Barger that you notified Mr. Hooper and all other

7   counsel that the U.S. Attorney was making -- was asking for

8   access to those documents?

9       MS. SNAPKA:  Yes, your Honor.

10      THE COURT:  Thank you.

11      MR. HOOPER:  Your Honor, it's my understanding

12  that --

13      THE COURT:  You're excused, Mr. Hooper.

14      Has anyone other than Mr. Hooper removed X-rays from

15  the depository?

16      MR. GOWEN:  My understanding, your Honor, is that

17  all the X-rays are in the depository right now.  Would you like

18  me to go check?

19      THE COURT:  I think it would be a good idea.

20      MR. GOWEN:  May I be excused for a second?

21      THE COURT:  Thank you.

22      MS. GREEN:  Your Honor, on behalf of Defendants, we

23  previously requested of Mr. Watts a listing of all the X-rays

24  that are in the depository.  We've never received such, so it

25  may be a good idea to have one.

Exceptional Reporting Services, Inc.    361 949-2988

Page 88

1      THE COURT:  It may be a good time to do that.

2      MR. GOWEN:  Your Honor, I think that each of the

3   groups have provided a list of their X-rays that are in the

4   repository and every time that a Defendant has come to review

5   them, they -- my understanding is that they've seen a list of

6   the ones that they need to pull and those have been pulled.  We

7   try to pull them before they get there for them.  Sometimes they

8   ask for more than 1,000 so it's harder to do so, but that's been

9   provided.

10      THE COURT:  Thank you.

11      MS. SNAPKA:  Your Honor, for the record, I want to

12   clarify what I had related to Plaintiff's Counsel was that the

13   U.S. Attorney from Manhattan was looking into the matter.  I'm

14   not sure I specifically said anything about X-rays.  I wanted to

15   make that clarification for the Court.

16      THE COURT:  Well, I wanted -- well, what I told you

17   all very clearly was that the U.S. Attorney from Manhattan had

18   called the local U.S. Attorney for access to discovery documents

19   in the depository, which included the X-rays.  I don't know if I

20   said, "included the X-rays," but I told you the document

21   depository.  You all knew the X-rays were there.

22      Subsequent to that, his motion was filed.  I denied

23   it, and Mr. Hooper has removed the X-rays.  I don't think there

24   are any ifs, ands, or buts about it.  That may be a matter for

25   the U.S. Attorney in Manhattan.

Page 89

1          In fact, would you get Mr. Cusick, the U.S Attorney

2    over here, please?

3          THE CLERK:  Yes, your Honor.

4          THE COURT:  Thank you.

5      (Pause)

6          Roman Numeral III, Omni Litigation Support Services'

7    Opposed Motion for Reimbursement.

8          MR. BARGER:  I think Mr. McKibben is going to tell

9    you they're going to withdraw that for right now.

10          THE COURT:  Somehow I thought that would happen.

11          MR. MCKIBBEN:  That's correct, your Honor.

12          We filed a motion -- unopposed Motion for Leave to

13    make some corrections and virtually every one has paid except

14    for a few and we've kind of worked -- I talked to every one and

15    I think we've got almost everything worked out.  There are a

16    couple of things we may have to resolve by -- I think we talked

17    to people about alternate dispute resolution on some of the

18    items and I don't think we need the Court's assistance, your

19    Honor.

20          THE COURT:  All right.  Then I'll consider that

21    motion withdrawn.

22          MR. MCKIBBEN:  Thank you, your Honor.

23          THE COURT:  And you have some miscellaneous issues,

24    a Motion for Withdrawal and Substitution of Counsel?

25          MR. MULLINS:  Your Honor, we're going to withdraw

Exceptional Reporting Services, Inc.     361 949-2988

Page 90

1     our Motion to Withdraw for Substitution of Counsel, looking at

2     the Court's prior orders, there's some additional steps we can

3     take and we're trying to work with the other attorneys.

4             THE COURT:  Thank you.

5             Then in B under miscellaneous Roman Numeral IV,

6     Motion to Dismiss Certain Plaintiffs without Prejudice?

7             MR. CANSLER:  I think we handled that earlier.  I

8     think those were the orders you just signed.

9             THE COURT:  All right.  Thank you.

10            And C, U.S. Silica's Motion to Dismiss without

11    Prejudice in four cases?

12            MR. RUSSELL:  Your Honor, Steve Russell for U.S.

13    Silica.  I've spoken with Plaintiff's Counsel this morning and

14    we have signed agreed orders --

15            THE COURT:  Thank you.

16            MR. RUSSELL:  -- to present to the Court.

17            THE COURT:  I didn't see anything that they were

18    agreed before, so I put them on the agenda.

19            Would you hand them to Ms. Gano, please, sir?

20        (Pause)

21            Okay.  Those orders are granted.  Thank you, sir.

22            MR. RUSSELL:  Thank you, your Honor.

23            THE COURT:  Then the Defendants placed on the agenda

24    a clarification of the status of the following actions.  These

25    have all been dismissed with Final Judgments.

1           And I think these were all by -- dismissals by

2  agreement.

3           Are these the ones I have to vacate?

4    (Laughter)

5           MR. MULHOLLAND:  Not necessarily.

6           Your Honor, I think, as I recall, Bard and White

7  were dismissed for lack of subject matter jurisdiction.

8           THE COURT:  Okay.  So those --

9           MR. MULHOLLAND:  Just orders.  They were orders that

10  were -- the Bland case was the case where we filed the Motion

11  for Summary Judgment.  The Court dismissed that motion for

12  failure of the Plaintiffs to file Fact Sheets.

13           THE COURT:  Okay.  I have to read -- I have to

14  vacate that, Bland and which other one?

15           MR. MULHOLLAND:  I think that's the only one, Judge.

16           THE COURT:  Weren't these -- a lot of these were

17  filed originally in this Court, but I vacated for lack of

18  subject matter jurisdiction --

19           MS. GREEN:  Yes.

20           THE COURT:  -- but not Bland?

21           MR. MULHOLLAND:  Bland is the exception.  I think

22  the others are subject matter.

23           THE COURT:  Okay.  But Bland, I'm going to vacate

24  that dismissal.

25           MR. MULHOLLAND:  Yes, your Honor.

Page 92

1          THE COURT:  I want to go back -- do you have

2    anything else on that?

3          MR. MULHOLLAND:  Your Honor, before we get too far

4    away from the subject on X-rays, apparently the Alexander

5    plaintiffs had their X-rays re-read in March by a Dr. Altmier.  I

6    don't know if their X-rays were removed from the depository or

7    not or if Dr. Altmier came to the depository.

8          MR. LAMINACK:  Yes, your Honor.  We removed the X-

9    rays.  We had them re-read and then we put them back.

10         THE COURT:  Thank you.

11         MR. LAMINACK:  And that was all before you ever

12   entered the general order.

13         THE COURT:  Thank you.

14         Then I think what's left is -- I'm not going to

15   enter Scheduling Orders on Thirsty, Greer, Moore, Large, Crowe,

16   and McManus -- Adams, Hill, Knight -- I'm sorry, Knight is gone

17   -- or Clay.

18         But I do need to have a Scheduling Order on Covey.

19   So why don't we have suggestions?  How long has that been

20   pending?  I think it was pending for -- is this the one that had

21   the February trial date?

22         MR. FABRY:  It's been pending for a while, your

23   Honor.  Its status has been difficult to ascertain by the

24   transfers, by the removal.  I think any kind of a reasonable

25   Scheduling Order at this point, 12 months before discovery.

Page 93

1          THE COURT:  A trial date in a year, then?

2          MR. FABRY:  Yes, your Honor.

3          THE COURT:  Actually I won't be doing a trial date.

4     I'll just put a Pretrial Conference in a year.

5          MR. FABRY:  Right.

6          THE COURT:  Would you give him a copy of that?

7     (Pause)

8          I can hear a Final Pretrial Conference proposal for

9     September 13 of 2006?

10         MR. FABRY:  That's fine.

11         THE COURT:  And then back tracking, a Joint Pretrial

12    Order, July the 28th at 3:00 p.m.; dispositive motions, May the

13    15th, 2006; Joinder of parties, November 30th, 2005; Amendment

14    of pleadings, February 28th, 2006 -- that's next February, 2006;

15    and discovery ending on May 31st, 2006.

16         MR. FABRY:  That's fine with Plaintiff, your Honor.

17         In case I have to take a test, may I get us a copy

18    of that?

19         THE COURT:  No.  That's it.

20    (Laughter)

21         There will be a short quiz in the morning.

22    (Laughter)

23         No.  You get copies of it.

24    MR. FABRY:  Thank you.

25         THE COURT:  Is that quick enough?

Page 94

1          MR. FABRY:  Yes, your Honor.

2          MS. GREEN:  Yes.

3          THE COURT:  And I think I have Scheduling Orders.

4     (Court Confers With Clerk)

5          I still have motions on Air Liquide.

6          Mr. Laminack, have you had time to look at your?

7          MR. LAMINACK:  I have, your Honor.  If I could

8  enlist --

9          THE COURT:  Do you just want to fall on your sword

10  now or?

11          MR. LAMINACK:  No, but I have a volunteer who would

12  fall on it.

13          You are right.

14          THE COURT:  That's the best way to start.

15     (Laughter)

16          MR. LAMINACK:  And I understand exactly what you're

17  saying.

18          THE COURT:  I can understand you'd want to clean

19  that up, if I give you time?

20          MR. LAMINACK:  A week?  I can tell you --

21          THE COURT:  After I've given you a year?

22          MR. LAMINACK:  I can tell you what happened.

23          THE COURT:  Well, I know what happened.  You used

24  the same --

25          MR. LAMINACK:  You got it.  You figured it out.

Page 95

1          THE COURT: Yes, the computer problem. Now what do

2   you want to do about, however, the American Optical Motion? Do

3   you want to -- can you dismiss them now?

4          MR. LAMINACK: No. I want to respond to it because

5   I haven't had a chance to respond to that yet. There's a -- and

6   that's going to --

7          THE COURT: Yes, we have. I've had -- that has been

8   on this docket for a year.

9          MR. LAMINACK: No. This is a new one. This one

10  complains about the one in the final petition that is fixed,

11  which caused this whole problem to begin with.

12          THE COURT: Well, you fixed it in the second one and

13  then in the next one, you didn't.

14          MR. LAMINACK: No. I did. That's what caused

15  everything to get undone.

16          They complained when we had our second one on file.

17  They complained. So we went back and fixed it, but it changed

18  everything else and went back to the old one, but the AO part

19  stayed the same. That's what they're complaining about, the new

20  fixed job. They are the only ones. And I'd like to respond to

21  that. That is new.

22          MR. COHEN: Your Honor, our -- Joe Cohen for

23  American Optical.

24          Our motion was to the entire complaint. We weren't

25  complaining specifically about American Optical -- yes,

1    inaccuracies about American Optical, but he addressed the

2    immediate issue that you had raised in your last order as to

3    American Optical, he just -- if you read the four corners though

4    of the Second Amended Complaint, he doesn't demonstrate

5    diversity restriction.

6                    THE COURT:  That's true and that's a fact.

7                    MR. LAMINACK:  That's true.  Please let me fix that.

8                    THE COURT:  I'm not sure I'm going to.  I'm going to

9    give you -- first I want the documents on the asbestosis before

10   I decide whether to allow you to amend.  I'm going to carry

11   forward the Motion to Dismiss.

12                   I find that to be absolutely crucial.  And I'm going

13   to give you two weeks to get those documents in on the

14   asbestosis for the people that have made asbestosis claims.

15                   Mr. Mulholland, unfortunately, after you already

16   walked out, he got that information from social security numbers

17   and he'll give you that spreadsheet.  And those are the people

18   you need -- you've got two weeks to find.

19                   MR. LAMINACK:  I understand, your Honor.

20                   THE COURT:  All of those documents.

21                   MR. LAMINACK:  I understand, your Honor.

22                   THE COURT:  And I'd like to know if the experts --

23   the diagnosing people that you've gotten in, know that they've

24   already been diagnosed with asbestosis.

25                   MR. LAMINACK:  To answer that question is no.

Page 97

1          THE COURT:  Thank you.

2          MR. LAMINACK:  It's in the reports that you have.

3          THE COURT:  But you told me you didn't know that

4    that -- oh, I don't think it's all quite there.  If not, make

5    sure it's there.

6          Thank you.

7          MR. LAMINACK:  Can I ask one other question, just a

8    point of clarification?  This involves the X-rays in the

9    depository.

10         As the Court might guess, a lot of us are interested

11   in getting those X-rays re-read so we can take appropriate

12   action in the light of your previous orders --

13         THE COURT:  It might be best if you --

14         MR. LAMINACK:  -- how do we do that?

15         THE COURT:  It might be best to bring your

16   Defendants -- your experts here and let them read them at the

17   depository, considering the way this is progressing.  I

18   certainly have jurisdiction over Alexander.

19         MR. LAMINACK:  I'm not concerned about Alexander.

20   That's done.  But I'm talking about there's a whole bunch of

21   them in there that, I mean, I in light of what's happened am

22   interested in dismissing some cases if people don't have

23   silicosis.  And the way to figure that out is to look at that X-

24   ray.

25         THE COURT:  Right.  Well, it's your Alexander case

1   is the only one you've got, right?  Yes.

2           MR. LAMINACK:  Right.

3           THE COURT:  Yes.  And those you can see right there

4   in the depository.

5           MR. LAMINACK:  I'm not interested in those.  I'm

6   interested in the non-Alexander cases that we would like to have

7   re-read.

8           THE COURT:  How many cases -- I thought -- how many

9   cases do you have?

10          MR. LAMINACK:  There are a number of other cases we

11  have, your Honor.

12          MR. MULHOLLAND:  Between ten and --

13          MR. LAMINACK:  And I'm not the only one in that

14  position.  I think we're all in that position.

15          THE COURT:  Sure.  You can have anybody come and re-

16  read them you want.

17          MR. LAMINACK:  That's a tough deal to have people

18  fly to here to read those, your Honor.

19          THE COURT:  I know.

20          MR. LAMINACK:  Especially when at least with respect

21  to me what's going on is an effort to separate the wheat from

22  the shaft here and get rid of a lot of this stuff.

23          THE COURT:  I understand that.

24          MR. LAMINACK:  And clean this up and I'd like to do

25  that as soon as possible.

Page 99

1          THE COURT:  Well, I can't run the risk of somebody

2    making off with them like Mr. Hooper has done, just assume he

3    just decided unilaterally that I didn't have any jurisdiction to

4    keep them in a depository and make off with them.  So that's the

5    problem.

6          MR. LAMINACK:  I understand the problem.

7          THE COURT:  It's called the "Hooper problem."

8          MR. LAMINACK:  We need some kind of help on that,

9    Judge, I think.

10          THE COURT:  You can talk to the Defendants on that.

11          MR. LAMINACK:  Okay.

12          THE COURT:  Mr. Hooper, what is you -- what have you

13    discovered?

14          Mr. Cusick?

15          MR. CUSICK:  Yes, your Honor.

16          THE COURT:  I asked you here because you had made a

17    call to me about -- on behalf of the U.S. Attorney in the

18    Southern District of Manhattan -- or Southern District of New

19    York over access to the Document Depository?

20          MR. CUSICK:  Yes, your Honor.

21          THE COURT:  And because that was an ex parte call, I

22    had to call Liaison Counsel and tell them, Ms. Snapka and Mr.

23    Barger, that the call had been made and that we wanted to

24    preserve the document depository.

25          Subsequent to that, Mr. Hooper, and he may need his

Page 100

1  own counsel, but Mr. Hooper filed a Motion to Remove all of his

2  client's X-rays, which were the basis of the diagnoses from the

3  document depository.  I denied that motion in early -- in mid-

4  July.  Subsequent to that in the first week of August on his

5  own, he determined that I no longer had jurisdiction over his

6  cases and went in and removed them all.

7            So I have now ordered him to return them forthwith,

8  and he has no intention of doing that, apparently.  So I felt

9  like I needed to tell you about this, and you can report it to

10 whomever.

11           MR. CUSICK:  I'll do that, your Honor.

12           MR. HOOPER:  May I clear up the record?

13           THE COURT:  Yes, sir.  Are you going to return the

14 X-rays?

15           MR. HOOPER:  After I clear up the record.

16           THE COURT:  Are you going to return the X-rays?

17           MR. HOOPER:  Yes, your Honor.

18           THE COURT:  When?

19           MR. HOOPER:  They're scheduled to leave Houston at

20 noon.

21           THE COURT:  All right.  Thank you.

22           MR. HOOPER:  First, the -- I voluntarily produced X-

23 rays not --

24           THE COURT:  You've already said that.

25           MR. HOOPER:  -- not to the document repository, just

Page 101

1   as the Court has clarified, but to an X-ray repository in Mr.

2   Watts' office.  The inquiry -- you just clarified it very

3   clearly.  The inquiry that was discussed with me were documents

4   in the repository.

5                THE COURT:  No.  I said they were all the discovery

6   documents and I said they were in -- as far as I knew X-rays and

7   documents were in Mr. Watts' office.

8                MR. HOOPER:  But the Court is wrong.

9                THE COURT:  Okay.

10               MR. HOOPER:  The documents aren't in Mr. Watts'

11  office.

12               THE COURT:  I know.  They're in your office.

13               MR. HOOPER:  The documents are in the document

14  repository on -- I voluntarily produced X-rays to Mr. Watts'

15  office.  I filed a Motion to Withdraw all X-rays --

16               THE COURT:  And it was denied.

17               MR. HOOPER:  -- which was denied.  The Court entered

18  an order June 30th that said, "I'm remanding the cases in 30

19  days."

20               THE COURT:  And then I stayed the order.

21               MR. HOOPER:  After 30 days --

22               THE COURT:  And then I stayed that order before the

23  end of the 30 days.

24               MR. HOOPER:  No.  You didn't.  You stayed the Order

25  on August 5th.  I removed the X-rays before you stayed the

Page 102

1  cases.  You entered an order on June 30th staying cases for 30

2  days.  After the expiration of those 30 days, after you had

3  ceded your jurisdiction, I removed my client's property from Mr.

4  Watts' office, which had never been ordered by this Court.

5          After that, you entered an order attempting to

6  further stay your order for another 30 days.  I didn't do it

7  when you had an order on file saying that you had jurisdiction.

8  I would not have done anything directly to contravene this

9  Court's jurisdiction.  I thought that this Court --

10          THE COURT:  I understand, Mr. Hooper, but

11  nonetheless I denied your motion and you took the X-rays out,

12  and after being told by Liaison Counsel that the U.S. Attorney

13  in Manhattan was making inquiries about all discovery documents.

14          You may be seated.

15          MR. HOOPER:  No.

16          THE COURT:  You may be seated.  Thank you.

17          MR. HOOPER:  May I -- I may not finish my record?

18          THE COURT:  You may be seated.  Thank you.

19          MR. HOOPER:  You are not allowing me to finish my

20  record?

21          THE COURT:  Mr. Hooper, you may be seated.  Thank

22  you.

23          You may submit anything in writing that you would

24  like to supplement the record.

25          Thank you, Mr. Cusick, very much.

1          You may be seated.  Thank you.

2          All right.  Then we have Alexander versus Air

3    Liquide, I think we have -- I'm going to -- I think I made an

4    order on that?

5               MR. LAMINACK:  Yes, your Honor.

6               THE COURT:  That I'm going to carry forward all

7    those pending motions for two weeks for Mr. Laminack to get you

8    the information about asbestosis on 73 percent of his claimants,

9    all the documents, including X-rays, diagnoses -- I assume

10   they've got Fact Sheets?

11              MR. MULHOLLAND:  Yes, your Honor.

12              THE COURT:  And now we have a Motion to Substitute

13   in a new diagnosing physician?

14              MR. MULHOLLAND:  I will note they filed a motion to

15   that effect, your Honor, but we have submitted a dispute.

16              THE COURT:  Anything else to take up?  Do you need a

17   further meeting date for the 17 cases that I still have?

18         (Pause)

19              MR. BARGER:  We don't have anything else today.

20              THE COURT:  Right, but do you need another meeting

21   date?

22              MR. BARGER:  Yes.  Do you want to do it in a month?

23              THE COURT:  A month is fine.  Do you want a date?

24              Ms. Scotch?

25              THE CLERK:  Monday, September the 26th, 2005 at 9:00

Page 104

1    a.m.

2                    THE COURT:  Is Monday a good day?

3                    MR. BARGER:  I've heard no complaints from anybody

4    about it.

5                    MR. LAMINACK:  Monday is a good day in what respect?

6                    THE COURT:  Well, I don't know, Mr. Laminack.  But

7    9:00 o'clock that's after the first -- should we make it 9:30?

8    Does everybody like to come in the night before, or you want to

9    come at 9:30 and then 9:30 get you in on the first -- isn't that

10   the first flight of the Southwest?  Certainly Continental gets

11   here earlier, but --

12                   MR. BARGER:  I think 9:00 is fine from the Defense.

13                   THE COURT:  9:00 is fine?

14                   MR. BASHLINE:  9:30 for those of us coming out of

15   Houston allows us a breathing period to get from the airport to

16   here.  There's a flight that gets in, your Honor, at 8:35 or

17   something, but --

18                   THE COURT:  Mr. Hooper will fly you in on his X-

19   rays, that's fine.

20       (Laughter)

21                   MR. BASHLINE:  9:30 would be -- any other Houston

22   people like 9:30?

23                   THE COURT:  Two?

24                   MR. BASHLINE:  Come on you wimps, put up your hands.

25                   THE COURT:  Sorry.

1          MR. BASHLINE:  Okay.  0900, Judge, that's fine.

2          THE COURT:  And I don't care if you're late.  We'll

3   track that flight.

4       (Laughter)

5          MR. BASHLINE:  Your Honor, I have absolutely no

6   intention being late unless I'm dead and they can wheel my body

7   back.

8          THE COURT:  Thank you very much for your

9   appearances.

10          You're excused.

11          MR. GOWEN:  I just wanted to give you an update on

12   the X-rays, your Honor.  All the X-rays are there.

13          THE COURT:  Thank you.

14          MR. GOWEN:  And we do have a list of them.

15          THE COURT:  Thank you.  If you could give those?

16          MR. GOWEN:  I'll give them -- I may not have them on

17   me.

18       (Proceeding Adjourned at 11:17 a.m.)

19

20

21

22

23

24

25

Exceptional Reporting Services, Inc.    361 949-2988

Page 106

CERTIFICATION

I certify that the foregoing is a correct transcript
from the electronic sound recording of the proceedings
in the above-entitled matter.

August 23, 2005

Signed                                                    Dated

TONI HUDSON

FEDERALLY-CERTIFIED TRANSCRIBER

Exceptional Reporting Services, Inc.    361 949-2988